IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 19-cv-02594-RPM

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

Plaintiff,

v.

MEDIATRIX CAPITAL INC., BLUE ISLE MARKETS INC. (St. Vincent & the Grenadines),
BLUE ISLE MARKETS LTD., MICHAEL S. YOUNG,
MICHAEL S. STEWART, and BRYANT E. SEWALL,

Defendants,

and

MEDIATRIX CAPITAL FUND LTD., ISLAND TECHNOLOGIES LLC, VICTORIA M.
STEWART, MARIA C. YOUNG, HANNA OHONKOVA SEWALL, MICHAEL C. BAKER,
WALTER C. YOUNG III, ARUAL LP, WEST BEACH LLC, SALVE REGINA TRUST, TF
ALLIANCE, LLC, CASA CONEJO LLC, HASE HAUS, LLC, DCC ISLANDS
FOUNDATION, KEYSTONE BUSINESS TRUST, WEINZEL, LLC, THE 1989
FOUNDATION, MEDIATRIX CAPITAL PR LLC, MEDIATRIX CAPITAL, LLC, and BLUE
ISLE MARKETS INC. (Cayman Islands),

Relief Defendants.

---

**NON-PARTIES' RESPONSE TO MOTION FOR ORDER DIRECTING BROKERS TO
CLOSE POSITIONS AND REQUEST FOR *EXPEDITED* RULING (WITH EXPRESS
RESERVATION OF OBJECTIONS TO PERSONAL JURISDICTION AND CHOICE OF
VENUE CLAUSES)**

---

Non-parties Equiti Capital UK Limited ("Equiti UK") and Equiti Armenia CJSC

("Equiti AM" and together with Equiti UK, "Equiti") provide the following information to the

Court without conceding that the Court has personal jurisdiction over them or the authority to

decide certain issues relating to the instant motion:

**EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE.  EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.**

## INTRODUCTION

Equiti are non-U.S. brokers with which defendant Blue Isle Markets Inc. (St. Vincent and the Grenadines) ("Blue Isle") has customer and license agreements and trading accounts with open foreign exchange ("FX") and metals positions.

On October 24, 2019, the Court received an "unopposed motion" from certain defendants asking it to direct Equiti to, *inter alia*, liquidate open FX and metals positions and convert funds to United States currency (ECF 41, the "Liquidation Motion"). The Liquidation Motion, however, omits significant material facts, fails to address foundational legal issues, and is thus misleading in its attempt to appear simple. As presented, the Liquidation Motion asks the Court to enter an order directing Equiti to engage in transactions that would be contrary to a valid contract and cause Equiti to violate Armenian law. These circumstances, which have been known to **both** the Securities and Exchange Commission ("SEC") and defendants for weeks, have been withheld from the Court. That lack of candor by the parties is extraordinary. It is even more extraordinary that, by keeping the information from the Court, the SEC is supporting a request that this Court order non-parties to violate the laws of another country.

This issue arises because (i) Blue Isle's Equiti UK and Equiti AM accounts cross-collateralize each other pursuant to Armenian law and an express contractual setoff agreement ***signed by one of the movants***, (ii) have been operated as a single account with unitary margin coverage for years, and (iii) under Armenian law the Equiti AM positions (which are currently negative) cannot be closed without setting those positions off using cash from the (currently positive) Equiti UK positions, nor can they remain open if the Equiti UK positions are closed (because that would put the collateral for those positions at risk under the Court's freeze order).

EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE. EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.

The need to address this issue and close the open positions in a coordinated manner that does not expose Equiti to regulatory risk is not news to the SEC or the movants.

Equiti has tried to work with the parties to address the setoff issue.  The parties, however, have refused to engage in meaningful discussions about the issue.  Instead, they have directed Equiti to act in clear violation of the valid, negotiated contract regarding setoff as well as Armenian law.  This simply is untenable and contrary to black-letter United States law, as explained herein.

Under the circumstances presented here, Equiti respectfully submits that the Court should not grant the Liquidation Motion, but should instead select one of the following options:

1. Deny the Liquidation Motion and allow the positions to remain open, with the SEC and movants assuming the risks Equiti has clearly identified to them.

2. Allow Equiti to apply the setoff agreement to close all open Blue Isle positions.  If the Court chooses this option, Equiti will immediately wire the funds remaining after setoff to whatever account is designated by the Court (eliminating the need for any motion practice to accomplish repatriation).[1]

3. Apply the contractual choice of law and venue provisions and refer any disputes regarding the setoff agreement or Armenian law to the UK or Armenian courts for resolution.

Under the circumstances, Equiti submits that these are the only lawful and equitable resolutions of the issues raised by the Liquidation Motion.

---

[1] Because the setoff agreement and course of conduct that apply here pre-date the Court's orders relating to freezing Blue Isle's assets, Equiti does not believe relief under ECF 38 ¶ D is necessary to effectuate them (in particular, neither constitute "tak[ing] action … to interfere with the asset freeze").  To the extent the Court disagrees, Equiti respectfully submits that the facts set forth herein justify relief under ECF 38 ¶ D, particularly given that no parties have presented anything to challenge the legal basis for the setoff despite numerous chances to do so.  Indeed, Equiti's offer to repatriate the net funds after setoff without further action is consistent with the defendants' obligations under ECF 38 Section IV, and defendants' attempts to avoid the setoff and interfere with Equiti AM's obligations under Armenian law (described more fully below) are arguably inconsistent with their obligations to "take such steps as are necessary" to achieve repatriation.

EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE.  EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.

## FACTUAL BACKGROUND

Blue Isle has had accounts with Equiti UK and Equiti AM since 2016.  The accounts have always been treated as a single account for margin and collateralization purposes.  *See* Exhibit 1. There is also a separate contractual setoff agreement that neither the SEC nor defendants have asserted is invalid.  *See* Exhibit 2.  Under Armenian law, if the Equiti AM accounts are liquidated, they must be offset with cash from the Equiti UK accounts, as set forth in the accompanying legal opinions.  *See* Exhibits 3-5.[2]  Neither the SEC nor any defendants have taken issue with that conclusion by presenting a contrary opinion regarding Armenian law.

On September 13, 2019, the Court issued an Order Granting Plaintiff's Emergency Motion for an *Ex Parte* Asset Freeze, Temporary Restraining Order, Order to Show Cause, and other Emergency Relief (ECF 10) (the "Order").  Equiti immediately took steps to prevent Blue Isle from taking any actions with respect to those accounts other than closing open positions in the accounts.

Equiti also took several steps to assist the SEC in pursuing this case.  For several weeks thereafter, Equiti cooperated with the SEC to provide information to the SEC about how the systems Blue Isle used worked.  Before the parties agreed to extend the TRO, Equiti had even offered to have its COO travel to Denver from London (even though neither he nor Equiti UK are subject to this Court's jurisdiction) and have an Equiti US technical support employee travel from Florida to Denver to testify at the preliminary injunction hearing.  Part of this cooperation included a multi-hour telephonic debriefing of Equiti's staff that involved securing the participation of seven

---

[2]      Exhibit 3 also demonstrates that Colorado law would not require a different result even if it could apply, although there is no question that UK and Armenian law govern here.

EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE.  EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.

people in five time zones that spanned 14 hours.  Equiti did this because, it believed, the SEC was dealing with it in good faith, and during that latter call again tried to draw the SEC's attention to the need to resolve the setoff issue.

One of the issues that occupied much discussion was how to address Blue Isle's open positions.  The SEC and Equiti agreed that closing the positions and locking in the current positive value was the right goal, but two issues presented problems.  The first was that the SEC did not want to make decisions about closing FX and metals positions.  The second was that the SEC was uninterested in engaging with Equiti regarding the setoff issue.

On October 2, 2019, Blue Isle made an unopposed motion to permit it to *request* that Equiti close all open positions in Blue Isle's accounts and convert those positions to US Dollars; the Court granted that motion (ECF 27).[3]  After the Court granted that motion, Blue Isle did not immediately ask Equiti to liquidate the open positions in Blue Isle's accounts.  The Liquidation Motion simply is wrong on this issue in its recitation of facts.  The Liquidation Motion asserts that the movants "believed" that having received that order Equiti had closed the open positions.  *See* ECF 41, para. 5.  But ECF 27 only gave Blue Isle permission under the freeze order to ask to close open positions; it did not order positions closed and Blue Isle never asked for positions to be closed.

The Liquidation Motion is wrong on another issue.  It asserts that the SEC told movants that Equiti had demanded a "firm liquidation request" on or about October 9, 2019.  *Id*.  That is false; what Equiti told the SEC during that conversation was that (i) Blue Isle had not closed any positions and (ii) that the setoff issue needed to be resolved to avoid Armenian regulatory risk to

---

[3]     Equiti was not a party to that motion and, is not a party to this litigation, and is not subject to the Court's Order on that motion (as evidenced by the way the motion itself was drafted).

EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE.  EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.

Equiti AM (as noted above).  Indeed, Equiti does not know what a "firm liquidation request" is, did not ask for one, and does not even know whether the term has a recognized meaning.  The parties seem to have invented a new, undefined term of art that has no bearing in this matter to try to support the Liquidation Motion:



Throughout this period, Equiti made numerous good faith efforts to get the SEC to resolve the setoff issue.  Exhibit 6 hereto is a series of emails between the SEC and Equiti's counsel between October 10 and 18, 2019, in which Equiti tried to resolve the setoff issue (including by proposing a stipulation that would have preserved the SEC's right to challenge a setoff while allowing Equiti to close the open positions with no regulatory risk—the SEC declined that proposal).  The last substantive communication from the SEC was on October 15, 2019, and expressed unspecified "concerns" regarding setoff; as the emails make clear, at no time did the SEC dispute Equiti's right to setoff, it simply dodged the issue and expressed a "preference" to take as much money as it could even if "Equiti m[ight] have to cover the losses in some way in the interim to appease the Armenian regulators … ."

The next day, October 16, 2019, Ms. Drohan emailed Equiti's counsel.  Her email referenced an "alleged 'cross-collateralization' agreement," purported to address Armenian law

---

[4]     *See* https://www.google.com/search?client=firefox-b-1-d&q=%22firm+liquidation+request%22.

EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE.  EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.

issues, and asserted that her clients did "not consent" to any setoff.  *See* Exhibit 7.[5]  Equiti's counsel

immediately wrote back to Ms. Drohan attaching a fully-executed copy of the "alleged 'cross-

collateralization' agreement," which is a valid and enforceable contract signed by one of her clients

demonstrating that they in fact ***did*** consent to setoff; to inquire about the basis for her assertions

regarding Armenian law; and ask whether her clients' position was that the fully-executed setoff

agreement attached to the response email was invalid or otherwise ineffective (which would have

required resolution in a UK court under UK law).  *See id*.  <u>Ms. Drohan has never responded to that

email</u>.

On October 17, 2019, Bryant Sewall (one of Ms. Drohan's clients) emailed Equiti to direct

the closing of all open positions; not surprisingly, he made no mention of the setoff agreement.

*See* Exhibit 8.  This was the first actual attempt by Blue Isle to close its positions, despite the

allegations in the Liquidation Motion.  Equiti emailed Mr. Sewall the same day, explaining why,

pursuant to seven specified terms of Blue Isle's account opening documents, Equiti was not

required to accept his instructions, reminding him of the signed setoff agreement, and asking him

to confirm that the operative documents governing the accounts continued in full force and effect

(had he disputed that, the dispute would have had to be resolved in a UK or Armenian court,

depending which document he disputed).  *See id*.  <u>Mr. Sewall has never responded to that email</u>.

No longer knowing who it could trust, Equiti withdrew from discussions with the SEC and

enumerated the risks of the positions the SEC was taking by choosing not even to accept the

---

[5]      Comparing the SEC's October 15 email with Ms. Drohan's October 16 email (for example, an unmatched
quotation mark at the end of Ms. Drohan's email) suggests that the SEC may have had a hand in drafting
Ms. Drohan's email.

EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE
THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING
TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE.  EQUITI UK AND EQUITI AM EXPRESSLY RESERVE
ALL RIGHTS WITH RESPECT TO THOSE ISSUES.

stipulation Equiti had proposed. *See* Exhibit 4 (October 18 email to SEC). That is where matters stood until the Liquidation Motion was filed.

It is now clear that the SEC and Blue Isle are cooperating in this matter to the exclusion of Equiti. ***But it is Equiti that will be harmed if the Court grants the Liquidation Motion***.

## ARGUMENT

As explained herein, the Liquidation Motion appears to challenge the terms of the valid setoff agreement between Equiti UK. Equiti AM, and Blue Isle (although without acknowledging that that is what it is trying to do), and any challenge to the setoff agreement must be resolved by a court in the United Kingdom under United Kingdom law. And to the extent movants challenge Armenian law issues, the relevant Equiti AM account documentation requires such challenges to be addressed by Armenian courts.

To begin, the record contains a fully-executed setoff agreement signed by one of the movants. Despite numerous opportunities to do so, no party has even asserted (let alone offered any evidence or argument) that that agreement is not valid and enforceable. At this point, the Court must accept that it is valid. There simply is no contrary evidence.

Clause 8 of the setoff agreement has well-defined and negotiated choice of law and choice of venue provisions. They state not only that any dispute as to the agreement's meaning will be decided "in accordance with the laws of England and Wales," but also that "any dispute, controversy, or claim" about the agreement shall be "referred to and finally settled by the Courts of the United Kingdom" Exhibit 2, p. 3 (Clauses 8.1 and 8.2).

These provisions must be enforced by this Court. It is black letter law that a contract's "forum clause should control absent a strong showing that it should be set aside." *See Scherk v.*

EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE. EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.

*Alberto–Culver Co.,* 417 U.S. 506, 518–21 (1974) (citing *M/S Bremen v. Zapata Off-Shore Company,* 407 U.S. 1, 10 (1972)).  There are multiple reasons for this rule.  *First,* the choice of forum in a contract is "an indispensable element in international trade, commerce, and contracting." *Id.*  As the Supreme Court explained, it is a "parochial concept that all disputes must be resolved under our laws and in our courts … .  We cannot have trade and commerce in world markets and international waters exclusively on [US] terms, governed by our law, and resolved in our courts." *Id.*

Moreover, disregarding a key term in a contract is tantamount to rewriting its terms:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations.  A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place.  In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain.

*Atlantic Marine Const. Co., Inc. v. U.S. Dist Court for Western Dist. of Texas,* 571 U.S. 49 (2013).

The SEC and the movants ignore any law and instead attempt to use a motion "simplified" by the omission of crucial facts to try to undo valid and enforceable contractual rights.  This is why Blue Isle and its counsel's silence in response to Equiti's emails is deafening.  If Ms. Drohan had challenged the validity of the setoff agreement, it is undisputed that UK law would control that question, which would have to be decided by a UK court.  But her silence, and resulting failure to challenge the validity of the setoff agreement, concedes its validity and dooms the Liquidation Motion.  Likewise for Mr. Sewall's silence in response to Equiti's email to him.

The Liquidation Motion (whether conjured solely by movants or with the SEC's help) attempts to present itself as *a fait accompli* by ignoring—**and failing to inform the Court of**—(i)

EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE.  EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.

the existing setoff agreement and the absence of any challenge to its validity and enforceability and (ii) that the relief movants seek would, without allowing for setoff, cause Equiti AM to violate Armenian law.  The Liquidation Motion is thus misleading and cannot be granted.  If the Court agrees that record shows no challenge to the validity and enforceability of the setoff agreement and explanation of Armenian law, the Court must allow Equiti to apply the setoff agreement in closing Blue Isle's positions.  If the Court is inclined to act consistent with the parties' request because it believes that there is a question regarding the validity or enforceability of the setoff agreement (even though no party has even mentioned it), it must send the parties to the UK for the resolution of that issue.  Exhibit 2, Clause 8.2.[6]  Similarly, if the Court believes there is a dispute concerning Armenian law despite no party's challenge to Equiti's multiple explanations of it, then it would have to send the parties to an Armenian court to resolve that issue.  Neither movants nor the SEC can void key terms of valid contracts on a whim, which is what the parties are attempting to do here.

## CONCLUSION

In light of the full facts, Equiti believes that the Liquidation Motion cannot be granted.  All parties have had numerous chances to refute Equiti's explanation of Armenian law (which is confirmed by Exhibits 3-5) and challenge the validity or enforceability of the setoff agreement, and none have done anything in response to those chances, and so the Court must accept Equiti's

---

[6]    That result would be the same even if the dispute had been initiated by the SEC (which has said nothing other than that it does not oppose the Liquidation Motion).  *See generally Frietsch v. Refco, Inc.,* 56 F.3d 825, 827–28 (7th Cir.1995) (allowing brokerage firm to invoke choice of forum clause in investment contract between foreign investors and trustees of investment pool); *Hasler Aviation, L.L.C. v. Aircenter, Inc.* 2007 WL 2463283, 6 (E.D. Tenn. 2007) (forum selection clause may be enforced against foreseeable non-signatory).  Here the SEC claims to be acting in favor of Blue Isle's investors, and thus is bound by the forum selection clause to the same extent Blue Isle and its investors are.

EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE.  EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.

arguments regarding those issues.  Equiti thus respectfully submits that the Court should deny the

Liquidation Motion and select one of the following options:

1.  Deny the Liquidation Motion and allow the positions to remain open, with the SEC and the defendants assuming the risks Equiti has clearly identified to them.  This would put the risk squarely on the parties.  The net value will go up and down with the markets as the underlying litigation continues.

2.  Allow Equiti to apply the setoff agreement to close all open Blue Isle positions. There is no record evidence to contradict the validity and enforceability of the setoff agreement, and no reason not to allow Equiti to apply it to close out the positions without regulatory risk and as quickly as possible.  And as noted above, if the Court chooses this option Equiti will immediately wire the funds remaining after setoff to whatever account is designated by the Court, eliminating the need for any motion practice to accomplish repatriation.

3.  Apply the contractual choice of law and venue provisions and refer any dispute regarding the validity and enforceability of the setoff agreement to UK courts for resolution under UK law and/or any dispute regarding Armenian law to Armenian courts for resolution.

WHEREFORE, non-parties Equiti UK and Equiti AM respectfully request that the

Court deny the Liquidation Motion in favor of the alternative relief options suggested by Equiti.

Respectfully submitted this 29th day of October, 2019

<div style="margin-left:50%;">

*s/ Douglas W. Henkin*

Douglas W. Henkin (admitted)
Dentons US LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6832
douglas.henkin@dentons.com

Britton Nohe-Braun
Dentons US LLP
1400 Wewatta Suite 700
Denver, CO 80202
(303) 634-4319
britton.nohe-braun@dentons.com

</div>

EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE.  EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.

Of Counsel:

Lisa M. Krigsten (admission motion to follow)
Dentons US LLP
4520 Main Street, Suite 1100
Kansas City, Missouri 64111
(816)460-2554
lisa.krigsten@dentons.com

EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE
THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING
TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE.  EQUITI UK AND EQUITI AM EXPRESSLY RESERVE
ALL RIGHTS WITH RESPECT TO THOSE ISSUES.

12

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of October, 2019, a true and correct copy of the foregoing **NON-PARTIES' RESPONSE TO MOTION FOR ORDER DIRECTING BROKERS TO CLOSE POSITIONS AND REQUEST FOR *EXPEDITED* RULING (WITH EXPRESS RESERVATION OF OBJECTIONS TO PERSONAL JURISDICTION AND CHOICE OF VENUE CLAUSES)** was electronically filed with the clerk of the court using the CM/ECF system, which will send notification of such filing to the following:

Jeffrey Robert Thomas (jthomas@thomaslawllc.com)

Mark L. Williams (williamsML@sec.gov)

Stephen C. McKenna (mckennas@sec.gov)

Thomas Joseph Krysa (tkrysa@bhfs.com)

Vivian Rivera Drohan (vdrohan@dlkny.com)

*s/ Douglas W. Henkin*

**EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE.  EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.**