

# MAALOUF ASHFORD & TALBOT
### A LAW FIRM SERVING GLOBAL CLIENTS

MAALOUF ASHFORD & TALBOT, LLP
40 WALL STREET, 28TH Floor
NEW YORK, NEW YORK 10005
Tel: 212.537.5035 Fax: 212.537.9268
www.maaloufashford.com

writer's direct dial: 212.537.5035
e-mail: john.maalouf@maaloufashford.com

October 25, 2019

*Via electronic mail*
Mario Camara, Esq.
Global Head of Legal & Compliance
Equiti Group Ltd.
Office 33B, AU Gold Tower, Cluster I
JLT, Dubai, United Arab Emirates

Re: Legal Opinion - Right of Set-Off Pursuant to Colorado Law

Dear Mr. Camera:

We are pleased to provide Equiti Group Ltd., Equiti Capital UK Limited, and Equiti Armenia CJSC (hereinafter collectively referred to at times as "Equiti" or, the "Company") with this Legal Opinion, addressing the issue of whether the Company may legally exercise a right of set-off with regard to two (2) accounts maintained by Blue Isle Markets Inc., (hereinafter referred to as "Blue Isle" or, the "Client") with the Company, one of which currently has a positive balance, and the other a negative balance.

In rendering this Opinion, we have examined and relied upon numerous documents and agreements provided by Equiti, as well as correspondence between Equiti and Blue Isle. We have based this Opinion upon the laws of the State of Colorado,

MAALOUF ASHFORD & TALBOT
A LAW FIRM SERVING GLOBAL CLIENTS

including relevant case law and statutes, as well as United States Supreme Court Decisions.

At your request, we are providing this Legal Opinion on an expedited basis.

1.   Documents Reviewed and Relied Upon

For the purposes of this Opinion Letter, we have assumed that: (i) all information contained in all documents reviewed by us is true, complete and correct, (ii) all signatures on all documents reviewed by us are genuine, (iii) all documents submitted to us as originals are true and complete, (iv) all documents submitted to us as copies are true and complete copies of the originals thereof, (v) each natural person signing any document reviewed by us had the legal capacity to do so, (vi) each natural person signing any document reviewed by us in a representative capacity had authority to sign in such capacity. We have analyzed the following documents with regard to rendering this Opinion

    a.   Live Account Application, submitted by Blue Isle in February 26, 2016;

    b.   General Terms and Conditions, between Divisa UK and Blue Isle, dated May 2016, and executed by Michael Stewart on behalf of Blue Isle;

    c.   Memorandum of Understanding, between Divisa US and Blue Isle, dated June 30, 2016, and executed by Michael Stewart on behalf of Blue Isle;

    d.   Equiti AM, General Terms and Conditions, dated December 28, 2018, executed by Michael Stewart on behalf of Blue Isle;

    e.   Trading Account Off-Set Agreement, dated July 25, 2019, between Equiti UK, Equiti AM and Blue Isle;

    f.   Equiti Group Intra-Group Client Migration Form[1], dated November 21, 2018 (unsigned);

    g.   Trading Account Off-Set Agreement, dated July 2, 2019, between Equiti UK, Equiti AM and Blue Isle, (unsigned);

    h.   Client Agreement, between Divisa AM and Blue Isle (unsigned); and

---

[1] Pursuant to which Blue Isle requested the closure of its trading accounts held and maintained with Divisa

MAALOUF ASHFORD & TALBOT
A LAW FIRM SERVING GLOBAL CLIENTS

      i.      Multiple e-mails between Equiti and Blue Isle.

2.     <u>Factual Background</u>

      Equiti Capital UK Limited ("Equiti UK") and Equiti Armenia CJSC ("Equiti AM") are brokers with which defendant Blue Isle has customer and license agreements and trading accounts with open foreign exchange ("FX") positions. Both Equiti UK and Equiti AM are part of the "Equity Group". On September 13, 2019, the United States District Court for the District Of Colorado (hereinafter, the "Court") issued an Order granting the SEC's Emergency Motion for an *Ex Parte* Asset Freeze, Temporary Restraining Order, Order to Show Cause, and other Emergency Relief (hereinafter referred to as, the "Order"). Blue Isle's accounts with Equiti UK and Equiti AM are subject to the Order and Equiti UK and Equiti AM immediately took steps to prevent Blue Isle from taking any actions with respect to those accounts other than closing open positions in the accounts.

      While Blue Isle's positions in those accounts remain open they are subject to fluctuations in value and possible loss of existing value. October 2, 2019, Blue Isle made an unopposed motion to permit it to request that Equiti UK and Equiti AM close all open positions in Blue Isle's accounts and convert those positions to US Dollars; the Court granted that motion (hereinafter referred to as the "Blue Isle Motion").

      It is the position of Equiti UK, and Equiti AM that all of Blue Isle's remaining open positions should be closed as soon as possible. Although liquidating the open positions in the Equiti UK accounts would result in a net positive amount, liquidating the open positions in the Equiti AM accounts would result in a net negative amount. Equiti UK and Equiti AM have received legal advice from two Armenian law firms that, under Armenian law, and specifically the rules of the Central Bank of Armenia (Equiti AM's regulator), the open transactions in the Blue Isle Equiti AM accounts cannot be closed unless there is sufficient cash in those accounts to cover the negative balances that would result from closing those positions.

      Equiti UK and Equiti AM believe that they have both: (i) a contractual right to set off the negative balance in Equiti AM's Blue Isle accounts against cash transferred from Blue Isle's Equiti UK accounts and (ii) a right to accomplish the same result under US law, and have requested this Legal Opinion in that regard.

3.     <u>Laws and Regulations Upon which our Opinion is Based</u>

      In rendering this Opinion, we have examined and relied upon the laws of the State of Colorado, including case law, Colorado Revised Statutes, Title 4, Uniform Commercial Code §4-9-340, as well as United States Supreme Court Decisions.


MAALOUF ASHFORD & TALBOT
A LAW FIRM SERVING GLOBAL CLIENTS

3.1.  Overview - Right of Set-off

It is well established that a financial services firm has a common law right of setoff[2] against funds on deposit with it when the relationship between the firm and the depositor is that of mutual debtor-creditor and the depositor's debt has fully matured.

Typically, the right will be exercised where one account is overdrawn and the other is in credit so that the firm can secure full repayment of overdraft without the need to take any further action with respect to the customer. The broad rationale is that separate numbered accounts are set up for administrative convenience only, but the legal duty upon a firm to "account" to its customers for the sums held by it only extends to the net sum.

In addition to the common law right, the right of set-off may also be established contractually between a firm and its client by inclusion of such a provision in the documents evidencing indebtedness, such as a "Trading Account Off-Set Agreement"

3.2  Common Law Origins - Right Of Set-off

When money is deposited in a financial services firm, the firm becomes the debtor of the client to the extent of the deposit. If the client is indebted to the firm on a matured obligation under a separate financing arrangement, a mutual indebtedness arises which the firm may extinguish by setting off its debt against the amount of the client's debt. The right of set off however, will be allowed only when the debt to the firm has matured.

Common law provides the key features that must be present for set-off to arise are:

a.  Mutuality of debts (each party must be the sole beneficial owner of the debt it is owed and the sole person liable for the debt it owes) and

b.  The claims each party has must be for non-payment of money.

The common law provisions of set-off can be greatly enhanced by the inclusion of a contractual right to set-off (as discussed more fully below) so that set-off is applicable in a greater range of situations.

---

[2] Setoff has been defined as "that right which exists between two parties, each of whom under an independent contract owes an ascertained amount to the other, to set off his respective debt by way of mutual deduction..." BLACK'S LAW DICTIONARY 1538 (4th ed. 1968).



3.3 <u>Contractual Right of Set-off</u>

A contractual right of set-off enhances the common law rights available to a party. A well drafted contractual set-off agreement or clause can be used in order to:

 a. Allow parties to agree when set-off should apply;

 b. Allow parties to agree that set-off should not apply;

 c. Allow parties to set-off claims that are not mutual (e.g. where a party wants to set-off a debt owed to that party by a debtor, against a debt that that party owes to a third party); and/or

 d. Allow parties to set-off claims that are not due and payable at the time.

Including an express set-off provision gives the parties clarity as to what remedies of set-off are available (or not) and when they can be applied, before a dispute arises. Additionally, a contractual provision can be used to give either party set-off rights that otherwise would not be available.

4. <u>Applicable Law</u>

4.1. <u>United States Supreme Court Case Addressing the Right to Set off</u>

*<u>Scammon v. Kimball</u>, 92 U.S. 362 (1875)*

The right of set off was also recognized by the United States Supreme Court well over 100 years ago in <u>Scammon v. Kimball,</u> 92 U.S. 362 (1875). In that case, the Court described the general right of set off, whether in law or in equity, which exists between two parties:

> *"Whether the suit be one at law or in equity, setoff must be understood as that right which exists between two parties, each of whom, under an independent contract, owes an ascertained amount to the other to set off their respective debts by way of mutual deduction, so that, in any action brought for the larger debt, the residue only, after such deduction, shall be recovered."* <u>Scammon v. Kimball</u>, 92 U.S. 362, 367 (1875).

MAALOUF ASHFORD & TALBOT
A LAW FIRM SERVING GLOBAL CLIENTS

An analysis of the facts provided reveals that Blue Isle owes an ascertained amount to Equiti, and that Equiti is attempting to set-off that debt by way of deducting funds from another account of the same client.

4.2. Colorado Supreme Court Cases

The Supreme Court of Colorado long ago recognized the common law right of set-off in the case *Sherberg v. First National Bank*, 122 Colo. 407, 222 P.2d 782, citing American Surety Co. v. de Escalada:

> "The correct rule with respect to the right of set-offs by banks is well stated in the recent case of American Surety Co. v. de Escalada, 47 Ariz. 457, 56 P.2d 665. We quote from paragraph 2 of the syllabus: `Generally, where bank has in its possession assets of debtor, bank may apply these assets to payment of a matured debt or, in case of insolvency of debtor, to an unmatured one, but such right may be controlled by any special agreement which shows a different intent or where circumstances or particular modes of dealing are inconsistent with such right.'"

We note that *Sherberg* recognizes that the common law right of set-off applies with regard to a financial services firm's right to set-off, but that special agreements in place may control this right. As there are special agreements in place which demonstrate the clear intent of the parties, it is therefore necessary to perform an analysis of those agreements. Please see paragraphs 4.5 and 4.6 below, for a detailed analysis of the relevant special agreements which show the intent of the parties with respect to set-off.

4.4. Contractual Right of Set-Off

A contractual right of set-off enhances the common law rights available to a party, and a properly drafted set-off agreement, or set-off clause, can be used to:

a. allow parties to agree when set-off should apply;

b. allow parties to set-off claims that are not mutual (eg where a party wants to set-off a debt owed to that party by a debtor, against a debt that that party owes to a third party); and/or

c. allow parties to set-off claims that are not due and payable at the time.

Including an express set-off provision in an agreement gives the parties clarity as to what remedies of set-off are available (or not) and when they can be applied, before a dispute arises. A contractual provision can be used to give either or both parties set-off rights that otherwise would not be available.

MAALOUF ASHFORD & TALBOT
A LAW FIRM SERVING GLOBAL CLIENTS

4.5.   Offset Agreement, dated July 25, 2019

The Trading Account Off-Set Agreement, dated July 25, 2019, executed between Equiti UK, Equiti AM and Blue Isle (hereinafter referred to as, the "Offset Agreement") states in pertinent part the following:

A. Equiti UK and Equiti AM form part of the Equiti Group Limited ("**Equiti Group**"), which provides online trading platforms for over-the-counter derivatives trading to institutional and retail clients.

B. Blue Isle had entered into a Client Agreement, and related Terms and Conditions with Equiti UK on 12 June 2017 (the "**UK Client Agreement**");

C. Blue Isle had entered into a Client Agreement, and related Terms and Conditions with Equiti AM on 04 March 2016 (the "**AM Client Agreement**");
(the UK Client Agreement and AM Client Agreement shall be referred to jointly as the "**Client** Agreements");

D. **Whereas**, Blue Isle has trading accounts with each of Equiti UK and Equiti AM, and the Parties have agreed to settle partially or in full, or set-off ("netting") existing and future payment amounts from accounts held with any member of the Equiti Group.

The Offset Agreement goes on to explicitly define the parties right to set-off as follows:

**Clause 1: Cross Set-off and Settlement**

1.1   Blue Isle acknowledges and agrees that, pursuant to this Agreement, and without prejudice to any right or remedy of Equiti UK and Equiti AM provided pursuant to the Client Agreements, Equiti UK and Equiti AM shall be entitled (but not obliged), at their absolute discretion, and without the need to notify Blue Isle, to set-off amounts held in any of Blue Isle's trading accounts with any Equiti Group member towards the full or partial settlement of any payment obligations owing by Blue Isle to any Equiti Group member.

1.2   This right of set-off extends, where applicable, to any other entity forming part of the Equiti Group, where needed.

1.3   The right of set-off shall be without prejudice to any finding of an Event of Default or Termination Event under the Client Agreements.

4.6   General Terms and Conditions Agreement

In addition to the Offset Agreement, the Parties also entered into an additional contract entitled: "General Terms and Conditions" (hereinafter referred to as "GT&C

# Maalouf Ashford & Talbot
A LAW FIRM SERVING GLOBAL CLIENTS

Agreement"), dated December 28, 2018, and executed by Michael Stewart on behalf of Blue Isle, which addresses the parties respective rights and obligations regarding off-set.

An "Event of Default" is defined in the GT&C Agreement as follows:

| Event of Default | (a) your failure to make any payment (including any payment of margin) to us or to any Associate in accordance with clause 15 of this Agreement; |
|---|---|
| | (b) your or a Credit Support Provider's continued failure to perform any obligation to us one Business Day after we have given you notice of non-performance; |
| | (c) the initiation by a third party of proceedings for your bankruptcy (if you are an individual) or for your winding-up or for the appointment of an administrator or receiver in respect of you or any of your assets (if you are a company) or (in both cases) if you make an arrangement or composition with your creditors or any other similar or analogous procedure is commenced in respect of you (a Bankruptcy Default); |
| | (d) if you are an individual, your death; |
| | (e) any representation or warranty made by you for a Credit Support Provider is or becomes untrue; |
| | (f) Credit Support Document expires or is no longer in full force and effect before your obligations under this Agreement have been satisfied, unless we agree otherwise in writing; |
| | (g) you are or become unable to pay your debts as and when they fall due. |

Based upon the facts provided, the assets of Blue Isle are wholly insufficient in order to cover its liabilities, and the Client is therefore unable to pay its debts as and when they fall due. An event of default has therefore occurred pursuant to subparagraph (g) of the GT&C Agreement. Additionally, we understand that Blue Isle has failed to make payment to Equiti pursuant to Clause 15 of the GT&C Agreement, evidencing a subsequent event of default. Furthermore, the Colorado proceedings initiated by the U.S. Securities and Exchange Commission may constitute an additional event of Default pursuant to subparagraph (c) of the GT&C Agreement.

As an Event of Default has occurred, we next analyze what remedies are available to Equiti pursuant to the GT&C.

Article 17, "Rights on Event of Default" states in pertinent part the following:

MAALOUF ASHFORD & TALBOT
A LAW FIRM SERVING GLOBAL CLIENTS

> "17.1 Rights: In an event of default occurs at any time then we may exercise the rights set out in this clause"
>
> "17.2.4 to make a claim under, enforce, or exercise any other right or remedy under or in connection with, any Credit Support Document; to enforce any charge, security interest or lien created or otherwise contemplated by this Client Agreement or <u>to exercise our right of set-off provided in this Client Agreement or any other right of set-off or similar right we may have, whether as a matter of contract, under law, or otherwise;</u>" (emphasis added)

Furthermore, paragraph 26.13 states the following:

> 26.13 **Set-off rights:** in addition to any other right to withhold payment, we may at any time and without notice to you, set off any amounts owing between you and us. If we exercise the right of set-off and it shows that the amounts due to us exceed the amounts due to you, we will give you notice of this and you shall immediately pay such excess to us.

As discussed above in paragraph 4.2, the Supreme Court of Colorado in *Sherberg,* expressly recognized the common law right of set-off, subject to special agreements which demonstrate the intent of the parties.

An analysis of the clear and unambiguous language set forth in both the Set-Off Agreement, as well as the GT&C Agreement, paragraphs 17 and 26, clearly demonstrate that it was the contractual intent of the parties to provide Equiti with an extremely broad right of set-off, at its absolute discretion, and without the need to notify Blue Isle.

4.7     <u>Colorado Statutory Law on the Right of Set-off</u>

Lastly, Colorado Revised Statutes, Title 4, Uniform Commercial Code §4-9-340 entitled "Effectiveness of Right of Recoupment or Set-Off Against Deposit Account", addresses the issue of a financial services firm's right of set-off:

> *(a)  Except as otherwise provided in subsection (c) of this section, a bank with which a deposit account is maintained may exercise any right of recoupment or set-off against a secured party that holds a security interest in the deposit account.*

As subsection (c) of §4-9-340 address only the situation where a party has a security interest in the deposit account, which has been perfected by control under § 4-9-104(a)(3), that subsection is inapplicable to this instant situation.

MAALOUF ASHFORD & TALBOT
A LAW FIRM SERVING GLOBAL CLIENTS

5. <u>Legal Opinion</u>

Based upon the foregoing, it is our Opinion that Equiti has both a legal as well as a contractual right to set-off the two accounts of Blue Isle. We base this Opinion on the following factors:

(a) Blue Isle maintained both of the accounts in question with Equiti Group.

(b) The Parties entered into a Set-Off Agreement, dated July 25, 2019, which expressly provides Equiti with a broad contractual right of set-off.

(c) The Parties entered into the agreement, entitled, "General Terms and Conditions", dated December 28, 2018, which also expressly provides Equiti with a broad contractual right of set-off.

(d) Equiti has a Common Law Right of set-off, as recognized by both the United States Supreme Court, as well as the Colorado Supreme Court.

(e) Colorado statute, Title 4, Uniform Commercial Code §4-9-340 entitled "Effectiveness of Right of Recoupment or Set-Off Against Deposit Account", provides for a right of set-off.

Should you have any questions regarding the Opinion stated herein, or require further information, please do not hesitate to contact me.

Very truly yours,

John J. Maalouf
Senior Partner