IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

        Plaintiff,

        v.

MEDIATRIX CAPITAL INC., *et al.*,

        Defendants,

and

MEDIATRIX CAPITAL FUND LTD., *et al.*,

        Relief Defendants.

---

**DECLARATION OF KIMBERLY L. FREDERICK IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION IN SUPPORT OF PROPOSED ORDER**

---

    I, KIMBERLY L. FREDERICK, do hereby declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the following is true and correct, that I am over 18 years of age, and I am competent to testify to the matters stated herein:

    1.    I am an attorney and have been licensed in Colorado since June 12, 2010. I am employed in the Division of Enforcement in the Denver Regional Office of the Securities and Exchange Commission ("SEC") and hold the title of Assistant Regional Director.

    2.    Among other things, the federal securities laws authorize the SEC to conduct

investigations to determine whether the federal securities laws have been violated and to bring civil actions before the United States District Courts to enforce and secure compliance with those laws.

3. As part of my job duties, I am responsible for supervising investigations into potential violations of the federal securities laws.

4. I supervised the investigation into a matter captioned *In the Matter of Mediatrix Capital Inc.* (D-03809) that resulted in the SEC authorizing the filing of this action.

5. In connection with the Defendants' Unopposed Motion Directing Brokers to Close Positions and Request for Expedited Ruling (ECF # 41) filed October 24, 2019, and related filings, including the Court's Minute Order of December 9, 2019, directing "Plaintiff and Defendants to file jointly a proposed order on or before January 9, 2020, or, in the event they are unable to agree on a proposed order, to file proposed orders separately by that date" (ECF # 79), I and other SEC staff reached out, through the SEC's Office of International Affairs, to the Central Bank of Armenia ("CBA") to obtain its position on the "set-off issue" raised by Equiti Capital UK Limited ("Equiti UK") and Equiti Armenia CJSC ("Equiti AM" and together with Equiti UK, "Equiti") (*see* ECF # 44).

6. I and other SEC staff participated in telephonic discussions with staff from the CBA on December 13 and 20, 2019.

7. In addition, through our Office of International Affairs, SEC staff forwarded to the CBA staff copies of the following filings made in this litigation: ECF ## 27, 30, 41, 44 (with exhibits), 50, 51, 53, and 79.

2

8. During the December 20, 2019 call, SEC staff were told that the CBA is in the process of investigating Equiti's compliance with Armenian law, specifically CBA Regulation 4/07, Part 82 ("Part 82"), which was enacted on January 18, 2019; that the purpose of Part 82 was to protect investors; that notice was provided to Equiti of the enactment of Part 82; and that Equiti was required to comply with Part 82 by, at the latest, March 1, 2019.

9. Part 82 provides that: "When providing services related to leveraged transactions, including Forex transactions, investment services providers shall ensure that the loss of the customer is no more than the pre-invested minimum collateral (margin) invested by him or her."

10. During the December 20, 2019 call, SEC staff were told by the CBA staff that while the CBA will not have a final official position until it completes its administrative procedures as to Equiti, which will take some time, at this time, they do not believe that Equiti is or has been in compliance with Part 82 since it was enacted. The CBA staff stated that currently they do not believe the set-off agreement is suitable to meet compliance with Part 82. For that reason, the CBA believes it is irrelevant whether open positions in Equiti UK or Equiti AM remain open or closed and the CBA does not object to Defendants' request to have the positions closed.

11. During the December 20, 2019 call, the CBA staff also stated that because Equiti AM was notified that it was required to comply with CBA Regulation 4/07, Part 82 as of March 1, 2019, it believes, at this time, that the July 25, 2019 set-off agreement, even if it were in compliance with Part 82 when enacted, left Equiti out of compliance from March 1, 2019 until July 25, 2019, to the extent Equiti AM had a negative balance during this time.

12. As part of its initial investigation, the SEC staff obtained brokerage records

including statements and account authority information for the Blue Isle Markets Inc. accounts at Equiti AM, Account Numbers xx013, xx021, xx023, and xx029 (the "Equiti AM Accounts"). The Equiti AM records currently in the staff's possession do not have daily account balances, but only show the total as of the last day of each month.

13. I supervised a SEC Division of Enforcement accountant who analyzed the Equiti AM Accounts.

14. A review of the Equiti AM records currently in the SEC staff's possession shows that the account balance for Equiti AM was negative at least some portion of time between March 1, 2019 and July 25, 2019. These records show that the account balance was negative as of the last day of February 2019 and as of the last day of May 2019.

15. Lastly, during the December 20, 2019 call, the CBA staff stated that even were the Equiti UK accounts acting as collateral for the Equiti AM account, it knew of no reason why the Equiti UK positions could not be closed if the resulting cash remained in the account.

Dated: December 20, 2019

Kimberly L. Frederick
Assistant Regional Director