IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 19-cv-02594-RPM-SKC

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

Plaintiff,
v.
MEDIATRIX CAPITAL INC., BLUE ISLE MARKETS INC. (St. Vincent & the Grenadines),
BLUE ISLE MARKETS LTD., MICHAEL S. YOUNG,
MICHAEL S. STEWART, and BRYANT E. SEWALL,

Defendants,
and
MEDIATRIX CAPITAL FUND LTD., ISLAND TECHNOLOGIES LLC, VICTORIA M. STEWART, MARIA C. YOUNG, HANNA OHONKOVA SEWALL, MICHAEL C. BAKER, WALTER C. YOUNG III, ARUAL LP, WEST BEACH LLC, SALVE REGINA TRUST, TF ALLIANCE, LLC, CASA CONEJO LLC, HASE HAUS, LLC, DCC ISLANDS FOUNDATION, KEYSTONE BUSINESS TRUST, WEINZEL, LLC, THE 1989 FOUNDATION, MEDIATRIX CAPITAL PR LLC, MEDIATRIX CAPITAL, LLC, and BLUE ISLE MARKETS INC. (Cayman Islands),

Relief Defendants.

**RESPONSE BY EQUITI CAPITAL UK LIMITED AND EQUITI ARMENIA CJSC TO NOTICE OF FILING OF [JOINT PROPOSED] ORDER REQUIRING EQUITY UK LIMITED AND EQUITI ARMENIA CJSC TO CLOSE ALL OPEN BLUE ISLE POSITIONS AND DECLARATION OF KIMBERLY L. FREDERICK IN SUPPORT (ECF 93) WITHOUT CONSENT TO PERSONAL JURISDICTION**

Non-parties Equiti Capital UK Limited ("Equiti UK") and Equiti Armenia CJSC ("Equiti AM," and together with Equiti UK "Equiti") respectfully submit this response to the Notice of Filing of [Joint Proposed] Order Requiring Equity UK Limited And Equiti Armenia CJSC To Close All Open Blue Isle Positions and Declaration of Kimberly L. Frederick in Support, filed December 26, 2019 (ECF 93) (the "Joint Submission").

**EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE. EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.**

ECF 79, entered in response to ECF 41 and the filings that followed it, "direct[ed] Plaintiff and Defendants to file jointly a proposed order on or before January 9, 2020, or, in the event they are unable to agree on a proposed order, to file proposed orders separately by that date." That text-only order did not ask for or permit additional substantive submissions of any kind, nor does the Joint Submission identify any authority for responding to ECF 79 with new substantive arguments. Nevertheless, the Joint Submission for the first time in this dispute makes assertions regarding Armenian law, Equiti AM's compliance therewith, and the supposed views of (and what the SEC calls an investigation by) the Central Bank of Armenia ("CBA") of Equiti AM, all based entirely on the hearsay declaration of one SEC attorney (the Declaration of Kimberly L. Frederick ("Frederick Decl.")) but with no documentary support.[1]

That in itself is nearly incomprehensible. In a clear attempt to smear Equiti and cause the Court to doubt the document-based arguments Equiti has made *while cooperating with the SEC*, the SEC has had some sort of discussions with the CBA and used its latest filing here to publicly announce what the SEC claims is a CBA investigation into Equiti AM that (a) Equiti has informed counsel it knows nothing about and (b) the SEC admits has reached no conclusions. Such a public announcement of an incomplete investigation, entirely through hearsay, is unprecedented and should not be tolerated.

---

[1] Although the Joint Submission purports to be "joint," all substantive arguments appear to be made by the SEC.

**EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE.  EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.**

Moreover, the *legal* posture of this case has changed dramatically since the Court entered ECF 79:

- The defendants have moved to dismiss the case for lack of subject matter jurisdiction (ECF 86), arguing that the SEC has no statutory authority to bring the claims in this case. If that is correct, it means that the Court had no authority to issue the freeze order and has no authority to order any entity holding Blue Isle assets to do anything. Consistent with the rule that federal courts must determine whether they have power to act before taking any substantive actions in a case when their subject matter jurisdiction has been questioned, the Court should not enter any order relating to Blue Isle's Equiti accounts until after the defendants' motion to dismiss is fully and finally resolved.

- The SEC has also belatedly tried to wade into matters of Armenian law in an effort to smear Equiti. Even if the SEC's assertions were admissible—they are not—what the SEC has asserted is that the CBA is investigating Equiti now relating to precisely the Armenian law issues Equiti raised months ago. Even if the Court were to give the SEC the benefit of the doubt regarding its latest submission, it should wait for the CBA to finish that "investigation" and only then consider what to do with this dispute, because at that point the parties would have an authoritative resolution of the Armenian law issue from the CBA itself, if not perhaps an Armenian court.

Either way, the Court should not enter any order relating to this dispute at this time.

## I. THE COURT SHOULD MAKE NO SUBSTANTIVE DECISIONS ON CONTESTED ISSUES UNTIL IT HAS RESOLVED THE CHALLENGE TO ITS SUBJECT MATTER JURISDICTION

It is well-established that, as courts whose jurisdiction is limited to disputes specifically vested in them by Congress, federal courts must determine their jurisdiction before addressing other matters in cases before them. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-102 (1988) (holding, *inter alia*, that no case permits a federal court to resolve contested questions of law when its jurisdiction is in doubt); *see generally Ex parte McCardle,* 7 Wall. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is

**EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE. EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.**

US_Active\113933085\V-2

that of announcing the fact and dismissing the cause."). Indeed, the Tenth Circuit has explained that even if a district court had jurisdiction at one point, the loss of that jurisdiction deprives it of power to address later questions in a case and requires those later determinations to be vacated. *See U.S. v. James*, 728 Fed. Appx. 818, 822 (10th Cir. Mar. 29, 2018). Making merits determinations when a court's power to act is in doubt can waste years of court and litigant time. *See generally Hart v. Terminex Intern.*, 336 F.3d 541, 544 (7th Cir. 2003) (Flaum, C.J.) (after eight years of litigation "[w]e therefore must regrettably find that subject matter jurisdiction is lacking in this case, and emphasize that this waste of federal judicial resources and delay of justice was avoidable and reiterate our admonitions to future litigants to meticulously review the limits of federal jurisdiction. We VACATE the judgment of the district court and REMAND with instruction to dismiss for want of jurisdiction.").

Courts have granted motions to dismiss claims brought by the SEC for lack of subject matter jurisdiction.[2] Now that the defendants have formally challenged the SEC's statutory authority to bring claims relating to the funds Blue Isle traded through Equiti (ECF 86 at 2 & 7-18), they have called into question the Court's power to issue any orders relating to Blue Isle's Equiti accounts (which are precisely the sorts of accounts the defendants have argued are not within the SEC's jurisdiction). If the defendants are correct, then the Court has no authority to

---

[2]  *See SEC v. Founding Partners Cap. Mgmt.*, 639 F. Supp. 2d 1291 (M.D. Fl. 2009); *SEC v. Alejandro Duclaud Gonzalez de Castilla*, 184 F. Supp. 2d 365, 382 (S.D.N.Y. 2002); *see also SEC v. Norton*, No. 95 Civ. 4451, 1997 WL 611556, at *4-6 (S.D.N.Y. Oct. 3. 1997) (dismissing claims not related to securities transactions for lack of subject matter jurisdiction).

**EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE. EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.**

decide issues relating to Blue Isle's Equiti accounts and ECF 41 would be moot. *See generally Hart*, 336 F.3d at 541-42 ("After eight years in federal court and consideration by four federal judges … this case comes before us on appeal. This substantial consumption of federal resources makes it all the more regrettable that we must now order the dismissal of the case for lack of subject matter jurisdiction rendering everything that has occurred in those eight years a nullity."). As such, the Court should not make any decisions regarding Blue Isle's Equiti accounts until and unless it is determined that it has the power to do so.

## II. THE COURT SHOULD NOT MAKE ANY DECISIONS REGARDING ISSUES ARISING UNDER ARMENIAN LAW

Long after Equiti first raised issues regarding Armenian law and the CBA with the SEC—indeed, after the SEC submitted a lengthy "response" to a motion by the defendants that it had not opposed and after this Court ordered the SEC to submit a proposed order (not new briefing)—the SEC apparently reached out to the CBA about these issues for the first time. *See* Frederick Decl. ¶¶ 6, 8-11, 15 (discussing calls between the SEC and CBA on December 13 and 20, 2019). The SEC includes no documentary evidence with its latest submission, and the statements in the Frederick Declaration regarding telephone calls between the SEC and the CBA are inadmissible hearsay. *See* Fed. R. Evid. 801(c); 802. Indeed, even when the Frederick Declaration purports to discuss the SEC's examination of Blue Isle records, it does not include actual documents, it simply repeats statements apparently made to Ms. Frederick by other SEC employees. *See* Frederick Dec. ¶¶ 12-14. That is also hearsay, *see* Fed. R. Evid. 801(c); 802, and it is noteworthy that although Equiti has always submitted to this Court written communications, signed contracts, and legal

**EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE. EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.**

opinions that no one has denied the authenticity of, the SEC responded first with *ipse dixit* and now with hearsay.

The critical issue here is this:  Even if the Court were to wish to give the SEC's belated and unsubstantiated hearsay submissions some sort of benefit of the doubt, the only thing those submissions do is confirm that with respect to the Armenian law issues Equiti has raised, those issues should be resolved under Armenian law by Armenian regulators and courts, and this Court should not take action that might be wrong and might subject Equiti to penalties under Armenian law.  Just as the Court should not rush to take action that it might not have statutory authority to take, it should not take action in favor of the SEC based on belated hearsay evidence the Court did not even give the SEC permission to submit.  *If* the CBA is conducting the sort of investigation the SEC claims, then the best answer is to wait for it to be completed before taking any action, at which point the uncertainties will be resolved.

Nearly every aspect of how the SEC has proceeded with respect to Equiti is troubling.  Equiti alerted the SEC to issues regarding Armenian law and the CBA in September 2019.  The SEC apparently failed to investigate these issues until December 2019, after the Court entered ECF 79.  Now it improperly tries to raise these issues, without leave of the Court, to distract from its prior failure to take this issue seriously, by smearing Equiti.  The Joint Submission discloses information about what is, according to the SEC, an incomplete CBA investigation of whether Equiti violated the Armenian law Equiti raised with the SEC months ago.  And by disclosing this information via its Joint Submission with the defendants, it raises questions about what other

**EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE.  EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.**

confidential information the SEC shared with the defendants. This is not how federal agencies conduct investigations, especially international investigations.[3] As an entity that voluntarily cooperated with the SEC before the SEC even commenced this matter, Equiti is at a loss as to why the SEC would seek to rely on information that not only fails to advance its position, but confirms that the Armenian law issues Equiti raised should be resolved under Armenian law by Armenian regulators and courts.

Equally troubling, the SEC's hearsay statements relate to a presumably confidential discussion between the SEC and the CBA about an undisclosed and unfinished investigation by the CBA. The disclosure of cherry-picked statements derived from conversations between two regulators takes unfair advantage of the SEC's position and the U.S.'s relationship with Armenia: Had a private litigant contacted a foreign regulator, there is no chance it would have been told about an undisclosed and unfinished investigation.

Moreover, we only know what the SEC chose to divulge about its conversations with the CBA. We do not know everything it told the CBA, everything the CBA told it, whether the CBA had sufficient information to make whatever statements it made, or whether the SEC even correctly understood whatever it claims the CBA told it. That the SEC only provided the Court with its own (hearsay) description raises even more questions, including whether the CBA was asked to and

---

[3]   *See* https://www.sec.gov/enforce/how-investigations-work.html ("All SEC investigations are conducted privately."); *see also Federal Judicial Center International Litigation Guide*, MUTUAL LEGAL ASSISTANCE TREATIES AND LETTERS ROGATORY: A GUIDE FOR JUDGES at 23 ("*Courts should be aware that information gathered in the informal manner described in this section may be incomplete* and is not always tendered to prosecutors … .") (2014) (emphasis added).

**EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE. EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.**

declined to provide a declaration of its own. If the Court ever needs to address these issues, it should compel the SEC to provide a full accounting of its interactions with the CBA.

Finally. the thrust of the SEC's new arguments is that with respect to CBA Regulation 4/07, Part 82, Equiti's concerns are much ado about nothing because Equiti AM *may* have been out of compliance with that regulation at some time or times between March 1, 2019 and July 26, 2019 (the date that the set-off agreement was signed by Blue Isle). *See* Frederick Decl. ¶¶ 8-14. If the CBA is investigating that topic—Equiti has informed counsel that it has received no confirmation of that from the CBA—then it may not be aware of the history of Equiti's interactions with Blue Isle, which are directly related to this issue.

Equiti and Blue Isle began discussing moving all positions from Equiti AM to Equiti UK in 2018, before Part 82 was enacted and before it became effective. *See* ECF 53-6 (October 2018 email discussing plans to move all positions to Equiti UK, which would have eliminated any potential Armenian law issue). Assuming the CBA is actually investigating what the SEC asserts it is, the details of that plan are something Equiti AM will most certainly raise with the CBA. But again, in that event, it would not be for this Court to preempt the CBA's consideration of all relevant circumstances. This too counsels against the Court taking any action until these issues have been resolved by the appropriate entities.

## Conclusion

For the reasons set forth above, the Court should take no action regarding ECF 41 until the issues identified above have been resolved. If the defendants' motion to dismiss is granted, then

**EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE. EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.**

ECF 41 would be moot as the Court would have no power to assert control over Blue Isle's Equiti accounts.  If the motion to dismiss is denied and the CBA addresses the issues raised by Equiti, then the Court will have the benefit of that resolution.  Either way it will eliminate the possibility of the Court acting in the absence of jurisdiction or in a manner inconsistent with Armenian law.

Respectfully submitted this 3rd day of January, 2020.

>*/s Britton C. Nohe-Braun*
>Britton C. Nohe-Braun
>Dentons US LLP
>1400 Wewatta Street, Suite 700
>Denver, CO  80202
>(303) 634-4319
>britton.nohe-braun@dentons.com
>
>Of Counsel:
>
>Douglas W. Henkin
>Dentons US LLP
>1221 Avenue of the Americas
>New York, New York  10020
>douglas.henkin@dentons.com
>(212) 768-6832
>
>Lisa M. Krigsten
>Dentons US LLP
>4520 Main Street, Suite 1100
>Kansas City, Missouri  64111
>lisa.krigsten@dentons.com
>(816) 460-2554

**EQUITI UK AND EQUITI AM ARE NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM AND THE POWER TO DECIDE ANY DISPUTES RELATING TO OR ARISING FROM AGREEMENTS BETWEEN EQUITI UK, EQUITI AM, AND BLUE ISLE.  EQUITI UK AND EQUITI AM EXPRESSLY RESERVE ALL RIGHTS WITH RESPECT TO THOSE ISSUES.**