**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 19-cv-02594-RM-SKC

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

        v.

MEDIATRIX CAPITAL INC., *et al.,*

        Defendants,

and

MEDIATRIX CAPITAL FUND LTD., *et al.,*

        Relief Defendants.

---

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANT SEWALL'S MOTION TO STAY THE FORECLOSURE SOUGHT BY NON-PARTY KENNETH B. RINEY UPON A FROZEN ASSET**

Plaintiff United States Securities and Exchange Commission ("SEC") responds in partial opposition to Defendant Bryant Sewall's request to stay the foreclosure of 1199 Lloyd's Road, Denton County, Texas (the "Property"), or in the alternative, that assets be unfrozen sufficient to pay the back debt owed on the Property (Doc. # 108) (the "Motion"). Though the SEC takes no position on Defendant's request to stay the foreclosure of the Property (or the timeliness of that request), it does object to unfreezing money to pay the outstanding amount due and owing on the note securing the Property because it is believed to have negative equity (*i.e.*, is "underwater").

## BACKGROUND

The SEC has alleged that Defendants operated a large-scale fraud whereby they raised more than $125 million from investors upon representing that the monies would be invested using Defendants' allegedly highly profitable algorithmic trading strategy, which Defendants claimed had never had an unprofitable month and had returned a profit of more than 1,600%. In reality, Defendants misappropriated more than $35 million of investor monies and their trading consistently lost money. Defendants concealed their misappropriation and losing trades through falsified account statements that showed phantom profits along with Ponzi-like payments to investors who opted to cash out those "profits." Though Defendants' represented their successful trading strategy had enabled them to accumulate assets under management of $225 million as of the end of 2018, they managed only a fraction of this amount. In fact, though investors invested more than $125 million into Mediatrix Capital, the approximately $12.8 million held in the Equiti UK accounts – along with approximately $900,000 frozen in another brokerage account – encompass the only assets the SEC has identified that remain under Mediatrix's management. The losses to Defendants' victims are staggering.

The SEC understands that while Defendant was operating his fraud, on or about January 2, 2019, he purchased the Property for $1.5 million and executed a promissory note for $1,150,000 (the "Note"), which is secured by the Deed of Trust on the Property.[1] See Doc. # 105-1. The SEC understands that Defendant was required to pay approximately $9,100 per month until the Note matured on January 2, 2024 (at which time the entire principal amount

---

[1] Defendant made the down payment on or about December 4, 2018, from his Banco Popular of Puerto Rico Account, which was entirely funded with misappropriated monies from Mediatrix Capital investors.

would be due), Defendant ceased making payments after this Court entered a Temporary Restraining Order freezing his assets (*see* Doc. # 10), approximately $63,700 is outstanding due to missed payments, and $1,140,430.64 is still owing on the Note. The SEC further understands that the value of the Property was – and remains – substantially less than amount owing on the Note.[2]

## ARGUMENT

First, the Court should decline to unfreeze money to sustain an asset that has negative equity. Because the $1,140,430.64 Note is believed to be substantially more than the fair market value of the property, the Court should decline to unfreeze monies to bring the Note up to date absent a showing by Defendant that the Property has a market value exceeding the outstanding balance on the Note (along with all other interest and fees currently owed). Absent such a showing, the Court should decline to permanently remove money from the corpus of frozen assets available to compensate defrauded investors, which would only delay the eventual foreclosure on the Property. To date, Defendant has not denied that he paid substantially more than the Property's market value and that it currently has negative equity, neither Defendant nor his co-defendants have offered any credible evidence that they did not engage in the largescale fraud as alleged, and there should be no dispute that the investor-victims are owed substantial sums of money that far exceeds the corpus of frozen assets. On these facts, the Court should

---

[2] During conversations with counsel for non-party Kenneth B. Riney, it was represented that the Property is believed to be worth approximately $750,000 and that Defendant paid a premium because he was attempting to purchase several adjoining properties in the area. During subsequent conversations with Defendant's counsel, it was acknowledged that the Property was worth less than the amount owing on the Note.

decline Defendant's request to essentially throw good money after bad and release more than $60,000 to simply delay the eventual foreclosure on the Property.[3]

Second, Defendant does not provide adequate justification for the extraordinary request of releasing money to sustain an asset with negative equity to the detriment of Defendant's victims. If Defendant believes a foreclosure would be inappropriate in the current environment, he should make those arguments to the court or tribunal who will oversee the foreclosure process. There is no reason for this Court to use its equitable powers of unfreezing monies to temporarily sustain this asset given that Defendant does not live at the Property, as he is outside the United States and may well never return. Though Defendant claims that his mother resides at the Property, the SEC understands that his mother owns another home a few miles away and Defendant owns another multi-million dollar property a few blocks away. *See, e.g.*, Doc. # 10 at 7 (TRO freezing 1201 Lloyds Road, Little Elm, Texas 75068); Doc. ## 109-1–109-4. This may be why Defendant did not file an opposition to non-party Kenneth B. Riney's original request to foreclose on the property.

Lastly, even were the Court inclined to release monies to temporarily sustain this asset, it should do so on a much more fulsome record. Defendant does not explain why his mother or sister cannot pay the amounts owed when they are the people allegedly residing in or using the Property, and Defendant provides no information about actual harm that will result if this Court

---

[3] Courts unquestionably have discretion to decline to release monies frozen monies during the pendency the litigation, and in fact have discretion to order the liquidation of frozen assets over the objection of defendants and third parties. *See, e.g.*, *Smith v. SEC*, 653 F.3d 121, 129 (2d Cir. 2011) (recognizing district court had authority to authorize interlocutory liquidation of a vacation home in the name of a relief defendant – and over relief defendant's objection – that was diminishing in value).

declines to unfreeze assets aside from a general claim of "anxiety and stress" being placed on his mother. Motion at ¶ 5. Given the harm already inflicted on investor-victims, which would be exacerbated through the release of monies, the Court should require an actual showing of harm before unfreezing monies.

## CONCLUSION

In sum, the Court should decline Defendant's alternative request of releasing more than $60,000 in frozen funds to retain an asset that has no value.

Respectfully submitted this 16th day of April, 2020.

s/ Mark L. Williams
Stephen C. McKenna
Mark L. Williams
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
(303) 844-1036 (McKenna)
McKennaS@sec.gov
WilliamsML@sec.gov

## Certificate of Service

      I hereby certify that on April 16, 2020, I caused the foregoing to be electronically filed by using the CM/ECF system. I further certify that a copy of the foregoing was served upon the following counsel of record via the Court's CM/ECF system:

Vivian Drohan
Drohan Lee
680 Fifth Avenue
10th Floor
New York, NY 10019
Email: vdrohan@dlkny.com

Jeffrey R. Thomas
Thomas Law LLC
3773 Cherry Creek North Dr., Suite 700
Denver, CO 80209
Email: jthomas@thomaslawllc.com

*Counsel for Defendants Mediatrix Capital Inc., Blue Isle Markets Inc. (St. Vincent & the Grenadines), Blue Isle Markets Ltd., Michael S. Young, Michael S. Stewart, and Bryant Sewall and Relief Defendants Victoria M. Stewart, Maria C. Young, and Hanna Ohonkova*


Thomas J. Krysa
David B. Meschke
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Email: tkrysa@bhfs.com

*Counsel for Relief Defendant Arual LP*


Tamera D. Westerberg
Wheeler Trigg O'Donnell LLP
370 17th Street, Suite 4500
Denver, CO 80202
Email: westerberg@wtotrial.com

*Counsel for Relief Defendant Walter C. Young III*

John Andrew Chanin
Foster Graham & Calisher LLP
360 South Garfield St., Ste. 600
Denver, CO 80209
Email: jchanin@fostergraham.com

*Counsel for Interested Party UBS Bank USA*

Douglas W. Henkin
Denton US LLP- New York
1221 Avenue of the Americas, 24th Floor
New York, NY 10020
Email: douglas.henkin@dentons.com

Britoon Charlotte Nohe-Braun
Dentons US LLP- Denver
1400 Wewatta St., Ste. 700
Denver, CO 80202
Email: britton.nohe-braun@dentons.com

*Counsel for Interested Parties Equiti Armenia CJSC and Equity Capital UK Limited*

Lee Frederick Johnston
Haynes & Boone LLP- Denver
1050 17th St., Ste1800
Denver, CO 80263
Email: lee.johnston@haynesboone.com

*Counsel for Movant Kenneth Riney*

                                                s/ Mark L. Williams