**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 19-cv-02594-RM-SKC

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

        v.

MEDIATRIX CAPITAL INC., *et al.*,

        Defendants,

and

MEDIATRIX CAPITAL FUND LTD., *et al.*,

        Relief Defendants.

---

**PLAINTIFF'S UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANTS' MOTION TO PERMIT THE UNFREEZING OF CERTAIN ASSETS FOR THE PAYMENT OF ATTORNEYS FEES AND EXPENSES OF THE INDIVIDUAL DEFENDANTS**

---

Plaintiff United States Securities and Exchange Commission (the "SEC") submits this Opposition to Defendants' Mediatrix Capital Inc., Blue Isle Markets Inc. (St. Vincent & the Grenadines), Blue Isle Markets Ltd., Michael S. Young, Michael Stewart and Bryant Sewall (collectively, "Defendants") motion to unfreeze assets for purported living expenses and attorneys' fees (Doc. # 111) ("Motion"). As explained more fully below, the Court should not permit Defendants to make personal use of even more money that they fraudulently raised from their investor victims, especially when those monies will be needed to recompense those victims, even if only partially. The Motion should be denied in its entirety.

## BACKGROUND

The SEC has produced substantial evidence that Defendants operated a large-scale fraud, raising over $125 million from investors by representing that the investors' monies would be invested using Defendants' allegedly highly-profitable algorithmic trading strategy, which Defendants claimed had never had an unprofitable month and had returned a profit of more than 1,600%. *See, e.g.*, Doc. ## 4; 5. In reality, Defendants misappropriated more than $35 million of investor monies and their trading consistently lost even more money. Defendants concealed their misappropriation and losing trades through fictitious account statements that showed phantom profits, along with Ponzi-like payments to investors who opted to cash out those "profits." Although investors invested more than $125 million into Mediatrix Capital and were consistently lead to believe Defendants' trading was generating profits, the approximately $12.8 million held in the Equiti UK accounts – along with approximately $900,000 frozen in another brokerage account – encompass the only assets the SEC has identified that remain under Mediatrix's management. Though the SEC has also frozen other assets held in the names of (or entities under the control of) Defendants and Relief Defendants from which investor losses may be recovered, losses are nonetheless expected to run into the tens of millions. The SEC is endeavoring to preserve any and all remaining assets for the benefit of Defendants' victims.

The SEC has met its burden that it is likely to prevail on the merits of its claims, and to date no Defendant has formally contested that they engaged in an extensive fraud on Mediatrix's investors. *See* Doc. ## 10; 35. Despite this, Defendants now request that they be permitted to use even more money raised from investors for personal expenditures. Most notably, Defendants do not even claim that they are seeking monies that were not obtained through – or tainted by – their

extensive fraud. The Court should decline to sanction further misappropriation of investor monies.

## RELEVANT CASE LAW

The purpose of an asset freeze is to facilitate enforcement of any disgorgement remedy ordered upon a finding that defendants violated the securities laws. *See, e.g., SEC v. Infinity Group Co.*, 212 F.3d 180, 197 (3d Cir. 2000) ("A freeze of assets is designed to preserve the status quo by preventing the dissipation and diversion of assets.") (citation omitted). The court has broad authority in civil enforcement actions brought by the SEC to fashion appropriate relief and take actions necessary to protect defrauded investors. *See SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990); *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1103 (2d Cir. 1972). The court must balance the interests of investors in preserving the assets for possible later restitution with the interests of the parties seeking release from the freeze. *Id.* at 1106.

"To persuade a court to unfreeze assets, the defendant must establish that the funds he seeks to release are untainted and that there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established at trial." *SEC v. Stein*, 2009 WL 1181061, at *1 (S.D.N.Y. Apr. 30, 2009). The touchstone of the inquiry is equity: "the disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief." *Manor Nursing Centers,* 458 F.2d at 1106.

With respect to a request to unfreeze assets to hire criminal counsel, a district court "may impose an asset freeze in a civil case, notwithstanding a companion criminal case, [but] these circumstances dictate that the court pay particular attention to the defendant's Fifth and Sixth Amendment rights." *SEC v. Coates*, 1994 WL 455558, at *3 (S.D.N.Y. Aug. 23, 1994). Courts,

however, have made clear that a defendant has no right to use funds tainted by the fraud to pay legal bills. *See, e.g., id*. ("A defendant is not entitled to foot his legal bill with funds that are tainted by his fraud."); *SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir.1993) ("Just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities markets cannot use the victim's assets to hire counsel who will help him retain the gleanings of crime") (citations omitted). Thus, district courts often employ a three-part test to determine whether to lift an asset freeze to allow a defendant to retain counsel in a parallel criminal action: (1) whether the defendant has demonstrated a need for the relief (*i.e.* whether the defendant's ability to hire criminal counsel depends on the release of assets); (2) if so, whether the defendant has demonstrated that the assets for which release is sought are not traceable to criminal activity; and (3) whether the defendant has shown that the value of the assets sought to be released is reasonable. *See, e.g.*, *SEC v. McGinn*, 2012 WL 1142516, at *3 (N.D.N.Y. Apr.4, 2012). [1]

A civil litigant similarly does not have a right to use tainted monies to pay for counsel. *See, e.g.*, *SEC v. Cherif*, 933 F.2d 403, 417 (7th Cir. 1991), *cert. denied* 502 U.S. 1071, 112 S.Ct. 966, 117 L.Ed.2d 131 (1992) ("A criminal defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney. It would be anomalous to hold that a civil litigant has any superior right to counsel than one who stands accused of a crime.") (internal quotations omitted); *SEC v. Private Equity Mgmt. Grp., Inc.*, No., 2009 WL 2058247, at

---

[1] The *McGinn* court held that assets can "continue to be restrained if traceable to criminal activity but, if not, [can] be released to permit a criminal defendant to retain the counsel of his or her choice." *McGinn*, 2012 WL 1142516 at *3 (citing *Coates*, 1994 WL 455558 at *3). Though Defendant was obligated to identify non-tainted assets in the first instance, the SEC has the "burden of demonstrating taint" as to the specific assets the defendants seek to have released. *Id.* at *4.

*3 (C.D. Cal. July 9, 2009) (denying attorney fees where defendant cannot "demonstrate that the assets he possesses are untainted by the fraud"); *SEC v. Bremont,* 954 F. Supp. 726, 733 (S.D.N.Y.1997) ( "Just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime.") (internal quotations omitted).

Moreover, a defendant does not have a right to unfreeze even those monies he obtained separate and apart from his fraud if they have been commingled with his ill-gotten gains. *See, e.g.*, *SEC v. Byers*, 637 F.Supp.2d 166, 174 (S.D.N.Y. 2009 ("[D]ue to the fungibility of money, any commingling is enough to warrant treating all the funds as tainted."); *SEC v. Lauer*, 2009 WL 812719, at *5 (S.D. Fla. Mar. 25, 2009) (holding that "[b]ecause money is fungible, the government must prove only that the tainted proceeds were commingled with other funds," and that "[w]hen money is commingled, the illicitly-acquired funds and the legitimately- acquired funds . . . cannot be distinguished from each other. . . ") (internal quotations omitted); *but see McGinn, 2012 WL 1142516 at *5* (unfreezing some untainted monies "technically commingled" with tainted funds because "they [were] reasonably severable given the nature of a 401–k account.").

## ARGUMENT

Through their Motion, Defendants seek (1) $150,000 for Mr. Young and Mr. Sewall to retain criminal counsel ($75,000 each) and $70,000 in additional funds for Defendants' civil attorneys; and (2) $13,078 and $14,700 (plus $1,502 in VA benefits) to "allow for two months of support" for Mr. Young and Mr. Sewall, and their families, respectively. Motion at ¶¶ 5 -7. Each request should be denied.

A.  The Court Should Decline to Unfreeze Assets for Criminal Attorneys' Fees.

Defendants' request to unfreeze assets to pay criminal counsel fails at every step: they do not make a showing of need; they do not articulate what asset(s) they seek to have released, much less show that the asset(s) were not part of their fraud; and Defendants request for attorneys' fees are facially unreasonable. *See McGinn*, 2012 WL 1142516 at *3.

i.  *Defendants Fail to Meet their Burden of Showing of Need.*

As an initial matter, Defendants cannot make a showing of "need" given that they do not identify any criminal cases they need to defend. Though Defendants argue that "denying the requested release of funds would ignore…their right to counsel" (Motion at ¶ 18), the Sixth Amendment right to counsel exists to "protect the accused during trial-type confrontations with the prosecutor." *United States v. Gouveia,* 467 U.S. 180, 190 (1984).[2] The right attaches only "at or after the initiation of adversary judicial proceedings against the defendant," "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* at 187. Here, Defendants do not assert that they have been indicted or even that they have reason to believe an indictment is imminent. Put simply, Defendants do not have a "need" for criminal counsel – and their Sixth Amendment right to counsel has not attached – because they have not been criminally charged.

Moreover, even had Defendants been criminally charged, they have not demonstrated a need to access frozen funds. In fact, their bare request is woefully lacking. This Court previously granted [Doc. # 103] Defendants' request to open bank accounts that would permit them to "find

---

[2] Defendants argue they "will be denied due process, including their right to counsel" (Motion at ¶ 4) if their request to unfreeze assets is not granted, but the right to counsel is guaranteed by the Sixth Amendment not the Fifth Amendment's Due Process Clause.

employment" and "deposit any salaries or payments made related to new employment" into unfrozen accounts. Doc. # 101 at ¶ 2. Defendants provide no explanation why they cannot pay their criminal counsel with monies that they earn, they provide no financial affidavit or detailed accounting of their income or liabilities, and they do not explain why they cannot rely on friends or family given that they have allegedly done so to date. *See, e.g.*, Motion at ¶ 6 ("With the help of family Mr. Sewall was able to temporarily retain Mr. Harmon with a small retainer…"). Defendants also do not explain whether they have sought appointment of criminal counsel given their claim to need, but to not be able to afford, a criminal attorney.

ii.   *Defendants Do Not Identify Untainted Assets.*

Notably, Defendants do not articulate which assets they seek to have unfrozen because it is unlikely that they can point to any asset that has not been obtained through (or tainted by) their fraud. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to…have the assistance of counsel for his defense." U.S. Const. Amend. VI. As relevant here, the Sixth Amendment "guarantees a [criminal] defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire." *Luis v. United States,* 136 S. Ct. 1083, 1089 (2016) (plurality opinion) (quoting *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624 (1989)). A criminal defendant, however, "'has no Sixth Amendment right to spend another person's money' for legal fees – even if that is the only way to hire a preferred lawyer." *Kaley v. United States,* 571 U.S. 320, 326 (2014) (quoting *Caplin & Drysdale,* 491 U.S. at 626).

The Court should not permit Defendants to use their victims' money to hire criminal counsel. Therefore, before the Court even considers unfreezing assets for this purpose, it should

first require Defendants to identify which asset(s) they seek to have unfrozen so the parties may litigate, and the Court may determine, whether the asset(s) are tainted by – or commingled with the proceeds of – Defendant's fraud.

### iii. *Defendants' Request is Facially Unreasonable.*

Given the bare record, Defendant's request for any amount of criminal attorneys' fees is unreasonable. As a threshold matter, it would be unreasonable to unfreeze and release money for criminal litigation that has not yet occurred (and may never occur). *See McGinn*, 2012 WL 1142516 at *6 (declining to release $300,000 because "[t]here remain[ed] uncertainty as to the number of hours that [would] actually be required"). Moreover, Defendants fail to provide how this money will be used and make no showing that the hourly rates for their respective attorneys are reasonable. Presumably, the $75,000 figure is "a function of the hourly rate charged…multiplied by the number of hours to be expended," which, for purposes of a motion to unfreeze assets for attorneys' fees "is governed by standards of reasonableness, not simply the rate charged by the particular attorney, although the rate charged by the attorney in question must be considered." *McGinn*, 2012 WL 1142516 at *6. Defendants' Motion lacks sufficient information to allow this Court to find that the request is reasonable.

B. <u>The Court Should Decline to Unfreeze Assets to Replenish Counsel's Retainer</u>.

Defendants represent that "Drohan Lee was formerly retained at the commencement of this action but has current outstanding invoices in the amount of $39,553.00" and "requests that $70,000 to replenish the original retainer." Motion at ¶ 7.

"The standard for unfreezing assets to pay legal fees incurred while defending a civil action is different than that utilized for a criminal action." *McGinn*, 2012 WL 1142516 at *10

(citing cases); *see also SEC. v. Stein*, 2009 WL 1181061 (S.D.N.Y. Apr.30, 2009) (holding that the "touchstone of the inquiry [whether or not to unfreeze assets to subsidize attorneys' fees in a civil case] is equity"). Whereas a "criminal action implicates the Fifth and Sixth Amendment rights…to a fair trial and the effective assistance of counsel," civil litigants "do[ ] not enjoy the protections afforded criminal defendants and, therefore, the weight accorded [their] interest[s] in the balancing of interests is correspondingly less." *Id*. Thus, a district court may, within its discretion, forbid or limit payment of attorney fees out of frozen assets." *CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) (citing cases). *See also CFTC v. Co Petro Mktg. Group, Inc.,* 700 F.2d 1279, 1284 (9th Cir.1983) (requiring counsel to return fee received after defendants' assets were frozen for violating futures trading regulations).

  As an initial matter, if Drohan Lee was retained at the commencement of this action – the same time that the Court froze Defendants' assets (*see* Doc. # 10) – then it is unclear how Drohan Lee's retainer could need "replenish[ing]" given Defendants assets have remained frozen since that time. Regardless, as with their request to unfreeze monies for criminal counsel, Defendants neither explain why they cannot or should not pay for their civil counsel, nor articulate what untainted asset they are seeking to unfreeze. Given that their request for criminal counsel – which may implicate rights under the Fifth and Sixth Amendment – is woefully lacking, their request to unfreeze funds for civil counsel should likewise not be rejected on this bare record.

  Moreover, the case law Defendants put forth do not support their arguments. For example, in *SEC v. Dowdell*, 175 F. Supp. 2d 850 (W.D. Va. 2001), the district court modified the asset freeze after finding that were was "no evidence before the court to indicate the

defendants have alternate sources of income or are seeking funds for luxuries, and because the SEC is not opposing the release of some funds for personal expenses…" *Id*. at 854-55. Here, there is evidence that Defendants have alternate sources of income given this Court has permitted them to spend the monies earned from employment, which is presumably why they have not previously sought a modification of the asset freeze. Moreover, Defendants here are seeking luxuries, including nearly $5,000 per month for life insurance premiums and $1,500 per month for credit card expenditures, which the district court in *Dowdell* recognized would, "if permitted, [ ] result in no restriction on the amount or the type of charge [defendant] could make." *Id*. at 854. Additionally, the SEC here *is* opposing the release of monies, given the inadequacies of defendants' request.

Moreover, though the court in *Dowdell* agreed to release monies for attorneys' fees, it was conditioned on those attorneys submitting "reasonable estimates of the fees necessary to take them through the hearing on the preliminary injunction." *Id.* at 856. Here, no estimates have been provided, and the preliminary injunction was entered more than six months ago. *See* Doc. # 35. Defendants citation to *SEC v. Int'l Loan Network, Inc.*, 770 F. Supp. 678 (D.D.C. 1991), *aff'd*, 968 F.2d 1304 (D.C. Cir. 1992) is similarly unavailing because the district court there also modified the temporary restraining order for expenditures and attorneys' fees in anticipation of the preliminary injunction hearing where the SEC's allegations in its application for temporary restraining order and request for a preliminary injunction would be contested. *Id*. at 680. Here, Defendants did not – because they could not – contest the SEC's allegations, and therefore consented to the entry of a preliminary injunction freezing their assets for the pendency of this

litigation. *See* Doc. # 34. The Court should not now release to them money belonging to their victims.

With respect to *SEC v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427 (S.D.N.Y. 2001), the district court specifically denied Defendants' request for the release of monies for living expenses and although it granted them a release of money for attorneys' fees, the district specifically explained it was doing so because "the inference upon which the [asset] freeze was granted may not be supported by the necessary quantum of proof," *id*. at 430, as the district court had earlier denied the SEC's request for a preliminary injunction because it had "not made the 'clear showing' of a likelihood of success necessary to enter an order preliminarily enjoining the defendants from violating securities laws in the future." *SEC v. Gonzalez de Castilla*, 145 F. Supp. 2d 402, 419 (S.D.N.Y. 2001). In other words, it was not clear whether the SEC's allegations would be proved up. Here, Defendants have not even contested the SEC's allegations, much less caused this Court to reconsider its finding that the SEC had made a clear showing of success on the merits.

*CFTC v. Gramalegui*, 2016 U.S. Dist. LEXIS 19001 (D. Colo. Feb. 17, 2016) is similarly distinguishable because there the CFTC had resisted releasing any amount of the "$12,000 in assets" it had frozen despite only offering evidence to the district court that "one investor [ ] believed he had been defrauded…and sought return of [ ] $5,596…" *Id*. at *6. Recognizing "the power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing" and that "there must be a reasonable approximation between the scope of the asset freeze and the defendant's ill-gotten gains," *id*. at *4, the district court "conclude[d] that an ongoing total freeze on [defendant's] assets would be disproportionate to

11

the scope of the potential disgorgement" and therefore released monies to the defendant. *Id.* at *7. Thus, the court did not use its discretion to release monies from a valid asset freeze, but rather found that the asset freeze was too large. Here, there can be no such concern given that the SEC provided unrebutted evidence that Defendants defrauded investors out of more than $125 million and that the corpus of frozen assets is only a fraction of this amount, with investors losses expected to run in the tens of millions.

In sum, though Defendants argue that failing to release money will "deprive them" of an opportunity to contest the SEC's allegations, they ignore that they had a right to put the SEC to its burden at the preliminary injunction hearing but opted not to do so. *See* Doc. # 34 ("WHEREAS Defendants and Relief Defendants no longer request that a preliminary injunction hearing be held and consent to entry of this instant order."). Regardless, given that (1) there is no criminal litigation pending; (2) Defendants have put forth no affidavit, accounting, or other evidence demonstrating they depend on the unfreezing of assets to pay criminal or civil counsel; (3) Defendants have not identified any asset they seek to be unfrozen, much less an asset that is not traceable to (or commingled) the proceeds of their fraud; and (4) there is no information as to how the money they seek to be unfrozen will be used so as to prove the reasonableness of their request, the Court should decline to release monies for either criminal or civil counsel fees, especially when those monies belong to their victims and will be needed to recompense those victims, even if only partially.

C. The Court Should Decline to Unfreeze Assets for Living Expenses.

The Court should decline Defendants' request for $13,078 and $14,700 to "allow for two months of support" for Mr. Young and Mr. Sewall, respectively.

First, as noted above, Defendants do not identify what assets they seek to be unfrozen, much less make a showing that the asset(s) were not procured through (or tainted by) their fraud. Given that this Court entered the asset freeze because, in part, there was evidence Defendants were misappropriating investor monies, this Court should decline Defendants' request that they be permitted to engage in more misappropriation by using more investor monies for personal expenditures, especially when this Court has permitted them to obtain employment and access monies earned through that employment. *See* Doc. # 103.

Second, putting aside that their requests do not match their budget worksheets,[3] Defendants fail to explain whether they have any other sources of income or why they (or their spouses) cannot seek gainful employment, especially given that they have been on notice of this asset freeze for more than seven months. The Court is entitled to such an explanation before even considering releasing funds. *See, e.g.*, *SEC v. Bivona, et al*, 2016 WL 2996903, at *3 (N.D. Cal. May 25, 2016) (denying the defendants' request for "ordinary living expenses" where unemployed defendant failed to show that he was unable to find work);FTC v. IAB Mktg. Assocs., LP, 972 F. Supp. 2d 1307, 1314 (S.D. Fla. 2013), *aff'd*, 746 F.3d 1228 (11th Cir. 2014) ("Absent persuasive evidence to the contrary, the Court can conclude only that [defendants] are capable of working to support their basic necessities."); *FTC v. Health Formulas, LLC*, 2015 WL 4623126, at *2-3 (D. Nev. Aug. 3, 2015) (rejecting the defendants' request for modification of an asset freeze for payment of personal expenses, health insurance, and childcare, and finding that

---

[3] Mr. Young requests $13,078 for two months of support, but his budget worksheet reflects $6,250 per month. *Compare* Doc. # 111 at ¶ 5 *with* Doc. # 111-1. Similarly, Mr. Sewall requests $14,700 for two months of support, but his budget worksheet reflects $7,769.77 per month. *Compare* Doc. # 111 at ¶ 6 *with* Doc. # 111-2.

the court "has provided [the defendants] with more than sufficient time to be able to obtain employment and/or some form of public assistance to address any personal or familial needs").

Third, Defendants' requests are both unsubstantiated and excessive. Defendants put forth no evidence that these are real expenses that they seek to pay. Regardless, asking for more than $6,000 per month, without having a mortgage, car payment, or similar large expenditures that typically consume the bulk of an individual's earnings, is extreme. For example, among other things, Mr. Young seeks $400 per month for cell phone, internet, and cable bills; $3,500 per month for groceries and baby supplies; $1,500 per month for unknown credit card expenditures, and an additional $300 to assist his (or his wife's) mother. *See* Doc. # 111-1. These expenses are far too high, as the Internal Revenue Service 2020 national standard for necessary monthly living expenses for a family of seven is only $2,874. *See* https://www.irs.gov/pub/irs-utl/national_standards.pdf. Regardless, the Court should decline to release money belonging to Mr. Young's victims so Mr. Young can maintain large cable/phone bills and have $1,500 discretionary spending via his credit card. *See, e.g.*, *SEC v. Forte*, 598 F. Supp. 2d 689, 694 (E.D. Pa. 2009) (denying request for release of frozen assets and finding it "astonishing and disturbing that defendant has included ... in his request for 'necessary' living expenses" such things as $400 per month for cellular phones and $200 per month for phone lines and internet).

With respect to Mr. Sewall, he requests more than $7,500 per month despite being a family of three. *See* https://www.irs.gov/pub/irs-utl/national_standards.pdf (reflecting 2020 Allowable Living Expenses National Standards for a family of three as $1,433 per month). Moreover, Mr. Sewall seeks more than $4,900 per month for life insurance and an additional

$1,000 per month for "[m]iscellaneous contingencies" including the care for his mother. Mr. Sewell wholly fails to explain why these are expenses he or his family cannot do without.

## CONCLUSION

In sum, the Court should decline Defendants' request to unfreeze unspecified assets for criminal/civil attorneys' fees and living expenses. Indeed, on this bare record, the Court cannot perform any analysis to determine what assets are being sought, whether they are the direct proceeds of Defendants' fraud, and whether and why such assets are truly needed.

Respectfully submitted this 7th day of May, 2020.

                                          s/ Mark L. Williams
                                          Stephen C. McKenna
                                          Mark L. Williams
                                          Attorneys for Plaintiff
                                          U.S. Securities and Exchange Commission
                                          1961 Stout Street, Suite 1700
                                          Denver, CO 80294-1961
                                          (303) 844-1036 (McKenna)
                                          McKennaS@sec.gov
                                          WilliamsML@sec.gov

## Certificate of Service

I hereby certify that on May 7, 2020, I caused the foregoing to be electronically filed by using the CM/ECF system. I further certify that a copy of the foregoing was served upon the following counsel of record via the Court's CM/ECF system:

Vivian Drohan
Drohan Lee
680 Fifth Avenue
10th Floor
New York, NY 10019
vdrohan@dlkny.com

Jeffrey R. Thomas
Thomas Law LLC
3773 Cherry Creek North Dr., Suite 717
Denver, CO 80209
jthomas@thomaslawllc.com

*Attorneys for Defendants Mediatrix Capital Inc., Blue Isle Markets Inc. (St. Vincent & the Grenadines), Blue Isle Markets Ltd., Michael S. Young, Michael S. Stewart, and Bryant Sewall and Relief Defendants Victoria M. Stewart, Maria C. Young, and Hanna Ohonkova*

Thomas J. Krysa
Foley & Lardner LLP
600 17th St., Ste 2020S
Denver, CO 80202
tkyrsa@foley.com

*Attorneys for Relief Defendant Arual LP*

Tamera D. Westerberg
Wheeler Trigg O'Donnell LLP
370 17th Street, Suite 4500
Denver, CO  80202
westerberg@wtotrial.com

*Attorney for Relief Defendant Walter C. Young III*

Michael C. Baker, Pro Se
*mbaker@hotspotrealestate.com*

                                                                s/ Mark L. Williams