**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 19-cv-02594-RM-SKC

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

      v.

MEDIATRIX CAPITAL INC., *et al.,*

            Defendants,

and

MEDIATRIX CAPITAL FUND LTD., *et al.,*

            Relief Defendants.

**PLAINTIFF'S UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO EQUITI CAPITAL UK LIMITED AND EQUITI ARMENIA CJSC'S MOTION TO EXPEDITE RESOLUTION OF ISSUES RAISED IN ECF 41, 44, 48, 50, 51, 53, 79, 93, AND 96**

Plaintiff United States Securities and Exchange Commission (the "SEC") submits this response to the motion filed by Equiti Capital UK Limited ("Equiti UK") and its affiliate Equiti Armenia CJSC ("Equiti AM") (together, "Equiti") requesting that the Court "expedite" a ruling in Equiti's favor (Doc. # 117) ("Motion"). While the SEC does not object to Equiti's request that the Court issuing a ruling on this dispute, it files this responsive pleading to make clear that it continues to oppose Equiti's request to take what was approximately $3 million – and is now $4.1 million – in frozen assets away from defrauded investors.

## Background

Equiti AM served as the prime broker[1] for defendants Mediatrix Capital Inc., Blue Isle Markets Inc., and Blue Isle Markets Ltd. (collectively "Blue Isle") since early 2016 when Michael S. Young, Michael S. Stewart, and Bryant E. Sewall (the "Individual Defendants" and collectively, with Blue Isle, the "Defendants") began soliciting investments in their purported algorithmic trading program. Defendants later opened accounts with Equiti UK, an Equiti AM affiliate. Equiti AM and Equiti UK are under common control, but each are regulated by the relevant authority in their respective jurisdictions — the Central Bank of Armenia and the UK Financial Conduct Authority, respectively.

On September 13, 2019, the Court granted the SEC's request for a Temporary Restraining Order (Doc. # 10) ("TRO") freezing Defendants' assets so as to preserve all remaining assets for the benefit of the investor-victims in this case. The SEC immediately served the TRO on Equiti, which held accounts on behalf of Blue Isle that contained open trading positions.

Counsel for the SEC, Defendants, and Equiti subsequently engaged in discussions whereby all agreed that Blue Isle's open positions at Equiti should be closed to prevent further investor losses. To alleviate any concerns that closing open positions would violate the Asset Freeze Order, on October 2, 2019, Defendants filed an unopposed motion requesting that the Court enter an order "permitting Equiti Capital UK Limited (United Kingdom) and its affiliate, Equiti Armenia CJSC (Armenia) to close all open positions" in the Equiti UK and Equiti AM

---

[1] A prime broker is the brokerage firm where all investor funds are held and through which all trading is accomplished.

accounts "and convert the same to U.S. Dollars forthwith." Doc. # 27 at 3. That same day the Court entered the order and the SEC understood and believed that Equiti would then close out the positions. *See* Doc. # 30.

On October 10, 2019 ,Equiti communicated to the SEC (and later this Court) that, despite the Court's order, it would not close Blue Isle's open positions in either the UK or Armenia unless it was permitted to "set-off" the accounts by taking approximately $3 million from the Equiti UK account to cover losses in the Equiti AM account. Though the SEC and Defendants were not requesting that any monies be moved, but only that the open positions be closed (*i.e.* the money would remain with Equiti in the Blue Isle accounts), Equiti refused to close *any* position at Equiti UK or Equiti AM unless and until they received an approximately $3 million dollar payment from Equiti UK, claiming to do otherwise would violate Armenian law. *See, e.g.*, Doc. # 44.

On December 9, 2019, the Court directed the SEC and Defendants to file a joint proposed order with respect to Defendants' earlier filed motion requesting that Equiti be ordered to close the Blue Isle positions (Doc. #79), which the parties subsequently did. *See* Doc. # 93. Therein, the SEC notified the Court that it had reached out to the Central Bank of Armenia ("CBA") given Equiti's representations that rules promulgated by the CBA prevented Equiti from closing any Blue Isle position absent Equiti receiving an approximately $3 million payment from Equiti UK. The CBA communicated to the SEC that it had no objection to closing out the Equiti AM positions (much less the Equiti UK positions) without Equiti receiving the $3 million payment it sought. *See* Decl. of K. Frederick, Doc. # 93-1 at ¶ 10.

On January 3, 2020, Equiti filed a responsive pleading putting forth arguments that the declaration submitted by the SEC was "inadmissible hearsay" (Doc. # 96 at 5), and arguing that the Court was without jurisdiction to rule on the issue given Defendants had filed a motion to dismiss the Complaint: "If the defendants are correct, then the Court has no authority to decide issues relating to Blue Isle's Equiti accounts and ECF 41 would be moot." *Id*. at 4-5. Equiti further argued that this Court should delay ruling on this issue until the CBA had finished its investigation: "*If* the CBA is conducting the sort of investigation the SEC claims, then the best answer is to wait for it to be completed before taking any action, at which point the uncertainties will be resolved." *Id.* at 6 (emphasis in original).

On May 22, 2020, Equiti filed the instant Motion, apparently withdrawing its request that this Court delay its ruling and now asking the Court to "expedite" its ruling "in the form requested by Equiti," meaning that it be permitted to immediately take $3 million of frozen Blue Isle assets. Motion at 1, 5.

## Argument

First, the SEC does not object to Equiti's request that the Court issue a ruling on the instant dispute. Indeed, it was only Equiti that had argued this Court should await issuing such a ruling. *See* Doc. # 96.

Second, Equiti's Motion again distorts the dispute at issue. Neither the SEC nor Defendants are requesting that money be taken from the Blue Isle accounts at Equiti or that the Court opine on, much less issue a ruling on, the apparent contractual dispute between Defendants and Equiti. Rather, both the SEC and Defendants request only that the open Blue Isle positions be closed so that the fluctuations in value complained of in Equiti's Motion cease. While Equiti

4

pays lip service to the benefits of the Blue Isle positions being closed – making the inaccurate claim that they have "urged that the positions be liquidated as quickly as possible to avoid the effect of market fluctuations" (Motion at 2) – they continue to refuse to close these positions without an immediate $3 million (and now $4.1 million) payment. In other words, it is *Equiti* that is asking this Court to rule on the instant contract dispute in Equiti's favor by releasing to them frozen monies over the Defendants' and the SEC's objection.

To be clear, the SEC does not dispute that the Equiti AM account is negative to the tune of several million dollars and has been for some time. As Equiti previously stated, prior to this Court's asset freeze the "money was already lost to other traders …" Doc. # 53 at 9. Thus, the *status quo* is that Equiti is covering (and has been for quite some time) the losses in the Equiti AM account. Closing the open positions at Equiti AM does nothing other than lock-in those losses. Given that the CBA is not objecting to the closing of these positions,[2] there is no reason these positions should remain open, especially after Defendants (who own the positions and are Equiti's client) specifically ordered Equity to close the positions nearly eight months ago. *See* Doc. # 44 at 7 (Equiti recognizing that on "October 17, 2019, Defendant Bryant Sewall (one of Ms. Drohan's clients) emailed Equiti to direct the closing of all open positions …").

Equally concerning are the open positions at Equiti UK worth approximately $12.2 million. *See* Motion at 2. Whether or not Equiti is entitled to a portion of these monies to cover their losses stemming from losing trades in the Equiti AM account, these positions should be closed so that their value does not diminish. Equiti has put forth no persuasive argument why

---

[2] The SEC reached out to the CBA, but at as of the time of filing, has not received any further information. Should the CBA change its prior position, the SEC will promptly notify the Court.

these positions remain open after this Court permitted Defendants and Equiti to close the positions nearly eight months ago. Doc. # 30. Indeed, Equiti's instant Motion disclosing over $1,000,000 in losses from the Equiti UK accounts stemming from holding these positions open (from $13.3 million on December 28, 2019, to $12.2 million as of the date of the Motion) and their fear of future decline is precisely why the SEC and Defendants' requested to close these positions in the first place. Motion at 2-3. It was Equiti who resisted this demand, making the farfetched claim that "[f]rozen cash is not as good collateral as the open positions are."[3] Doc. # 53 at 10. Though Equiti now acknowledges that open positions are not as good as cash, they continue to refuse to take this step to close out these position unless they are permitted to immediately take several million dollars.

      Equiti's refusal to close the open Blue Isle positions at Equiti UK appears to be for no other reason than to effectively hold the largest asset within the corpus of frozen assets hostage and subjecting it to market fluctuation in order to pressure the SEC and Defendants to support their request to immediately grab what is now approximately $4.1 million.  Regardless of what should happen with the proceeds, these positions should be closed.

---

[3] This claim was also directly contradicted by the legal opinions Equiti submitted in support of their request. *See, e.g.*, Maalouf Legal Opinion (Doc. # 44-3) at 3 ("…the open transactions in the Blue Isle Equiti AM accounts cannot be closed unless there is *sufficient cash* in [the Equiti UK] accounts to cover the negative balances that would result from closing those positions.") (emphasis added); TK & Partners Legal Opinion (Doc. # 44-4) at ¶ 2.8 (…the open transactions in the Blue Isle Equiti AM accounts cannot be closed unless there is *sufficient cash* in those accounts to cover the negative balances that would result from closing those positions.") (emphasis added).  Moreover, practically speaking, even were Equiti permitted to take a portion of the proceeds from the Equiti UK account to cover losses in the Equiti AM account, it would need to close positions in the Equiti UK account in order to generate the cash.

<u>Third</u>, regardless of how this Court rules, the Court should reject Equiti's request that it be permitted to take Blue Isle monies to cover the more than $1 million in losses that have resulted from Equiti's refusal to close the Blue Isle positions as demanded by Defendants and permitted by this Court. *See* Doc. # 30. As outlined above, and in the prior pleadings on this issue, both Defendants and the SEC have repeatedly requested Equiti close out the Blue Isle positions, warning them that the assets are frozen pursuant to this Court's TRO and that by failing to close the positions the value of the assets could diminish. Equiti refused and now the value has diminished. Equiti – not the victims of fraud – is responsible for these losses.

<u>Lastly</u>, Equiti's recurrent claim that this Court does not have jurisdiction to enter the SEC and Defendants' proposed order – or personal jurisdiction over Equiti – is meritless. As noted above, neither the SEC nor Defendants are requesting the Court issue a ruling on the apparent contractual dispute between Defendants and Equiti. Instead, the SEC and Defendants are asking the Court to order Equiti to close out the positions at Equiti UK (as demanded by Defendants) and hold the remaining monies within the account until further order of the Court. This Court unquestionably has jurisdiction over Defendants and their assets, including those held in the Equiti UK account and no argument to the contrary has ever been put forth.

Moreover, Equiti's jurisdictional argument omits its substantial contacts and business dealings within the United States, including its subsidiary, Equiti US LLC, which operates in the United States with its headquarters and office in Palm Beach County, Florida. Indeed, in defending other federal lawsuits, Equiti has admitted that Equiti US LLC "is a Florida limited liability company" and Equiti Capital UK "is the managing member of Equiti US LLC." *See Motes v. Equiti US LLC, and Equiti Capital UK Limited*, 20-cv-80599 (S.D. Fla.), ECF # 15.

Equiti US LLC – previously known as Divisa US LLC – is the business and platform Defendants engaged to handle their purported algorithm trading. Any claim that Equiti was not operating within United States, or that this fraud was not operated out of the United States, is false.

Furthermore, despite Equiti's recurrent claim that it is "NOT MAKING GENERAL APPEARANCES IN THIS COURT FOR ANY PURPOSE AND DO NOT INTEND TO WAIVE THEIR ARGUMENT THAT THIS COURT LACKS PERSONAL JURISDICTION OVER THEM," it submitted to this Court's jurisdiction long ago when it came voluntarily into court seeking affirmative relief: "Although [non-parties] described themselves as 'specially appearing,' [they] sought an affirmative act by the court that would benefit [them]. The fact that they sought affirmative relief controls, not the form of their appearance, for the distinction between general and special appearances no longer exists in federal courts." *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 786 (5th Cir.), *cert. denied*, 498 U.S. 926 (1990), *abrogated on other grounds*, *Johnson v. Baylor University*, 214 F.3d 630, 633 (5th Cir. 2000) (finding that non-parties' request for affirmative relief subjected them to court's jurisdiction even though non-parties described themselves as "specially appearing").

Here, even if Equiti did not operate within the United States (it did and still does), it has waived any claim that this Court does not have jurisdiction over it through its repeated filings seeking affirmative relief. *See, e.g.*, Doc. ## 44 at 11 ("…non-parties Equiti UK and Equiti AM respectfully request that the Court deny the Liquidation Motion in favor of the alternative relief options suggested by Equiti."); 48 at 3 (…non-parties Equiti UK and Equiti AM respectfully request that the Court deny the Liquidation Motion and enter the attached proposed order"); 53 at 16 (…this Court [should] deny the Liquidation Motion and enter Equiti's proposed order instead,

or simply deny the Liquidation Motion."); 96 at 8-9 ("the Court should take no action regarding ECF 41" because "[i]f the defendants' motion to dismiss is granted, then ECF 41 would be moot as the Court would have no power to assert control over Blue Isle's Equiti accounts. If the motion to dismiss is denied and the CBA addresses the issues raised by Equiti, then the Court will have the benefit of that resolution"); 117 at 5 ("…the Court should grant relief regarding the liquidation of the positions in Blue Isle's accounts, in the form requested by Equiti, on an expedited basis.").

## Conclusion

In sum, the SEC does not object to Equiti's request that the Court issue a ruling on this dispute, and specifically requests the Court enter the proposed order previously submitted by the parties (Doc. # 93-2) that directs the Blue Isle positions be closed as directed by Defendants and the *status quo* otherwise remain. The dispute about who should get the resulting money can await another day.

Respectfully submitted this 12th day of June, 2020.

                                                               s/ Mark L. Williams
                                                               Stephen C. McKenna
                                                               Mark L. Williams
                                                               Attorneys for Plaintiff
                                                               U.S. Securities and Exchange Commission
                                                               1961 Stout Street, Suite 1700
                                                               Denver, CO 80294-1961
                                                               (303) 844-1036 (McKenna)
                                                               McKennaS@sec.gov
                                                               WilliamsML@sec.gov

## Certificate of Service

      I hereby certify that on June 12, 2020, I caused the foregoing to be electronically filed by using the CM/ECF system. I further certify that a copy of the foregoing was served upon the following counsel of record via the Court's CM/ECF system:

Vivian Drohan
Drohan Lee
680 Fifth Avenue
10th Floor
New York, NY 10019
vdrohan@dlkny.com

Jeffrey R. Thomas
Thomas Law LLC
3773 Cherry Creek North Dr., Suite 717
Denver, CO 80209
jthomas@thomaslawllc.com

*Attorneys for Defendants Mediatrix Capital Inc., Blue Isle Markets Inc. (St. Vincent & the Grenadines), Blue Isle Markets Ltd., Michael S. Young, Michael S. Stewart, and Bryant Sewall and Relief Defendants Victoria M. Stewart, Maria C. Young, and Hanna Ohonkova*

Douglas W. Henkin
Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020
Douglas.henkin@dentons.com

Lisa M. Krigsten
Dentons US LLP
4520 Main Street, Ste. 1100
Kansas City, Missouri 64111
Lisa.krigsten@dentons.com

*Attorneys for Non_parties Equiti Capital UK Limited and Equiti Armenia CJSC*

                                                  s/ Mark L. Williams