**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02594-RM-SKC

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

MEDIATRIX CAPITAL INC., et al.,

     Defendants,

And

MEDIATRIX CAPITAL FUND LTD., et al.,

     Relief Defendants.

---

**MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT OF
RECEIVER'S AND PROFESSIONAL'S FEES AND COSTS FROM INCEPTION OF
RECEIVERSHIP ESTATE THROUGH DECEMBER 31, 2020**

---

**TO:  ALL PARTIES AND THEIR COUNSEL OF RECORD:**

    Brick Kane of Robb Evans & Associates LLC, Receiver ("Receiver") hereby moves the

Court for an order approving and authorizing for payment the receivership fees and costs

incurred from the inception of the receivership estate on September 11, 2020 through December

31, 2020 ("First Expense Period").  The Receiver specifically moves the Court for an order: (1)

approving and authorizing for payment the fees of the Receiver and his deputies, and

reimbursement of costs, comprised of: (a) Receiver's fees, including the Receiver's deputies, of

$48,811.20 and Receiver's costs of $306.09, **for a total of $49,117.29**; (b) Receiver's lead

counsel Barnes & Thornburg LLP's ("Barnes & Thornburg") fees of $56,933.90 and costs of

$1,437.53, **for a total of $58,371.43**; and (c) Receiver's Arizona counsel Engelman Berger, P.C.'s ("Engelman") fees of $7,647.50 and costs of $98.54, **for a total of $7,746.04**.

This motion is based on the accompanying memorandum of points and authorities, the Declarations of Brick Kane and Gary Owen Caris filed concurrently herewith, upon the pleadings, records and files of the Court in this case of which the Receiver requests the Court to take judicial notice, including without limitation the Report of Receiver's Activities From September 11, 2020 Through December 31, 2020 (Doc. 215) ("Receiver's First Report"), and such other and further evidence as may be provided by the Receiver in support of the motion. This motion is made pursuant to paragraphs 45-48 of the Order Appointing Receiver (Doc. 153) ("Receiver Order").  Paragraph 45 of the Receiver Order specifically provides for the Receiver to apply for compensation and expense reimbursement on a quarterly basis from Receivership Funds within 75 days after the end of each calendar quarter.

## STATEMENT REGARDING DUTY TO CONFER PURSUANT TO D.C. COLO. LCivR 7.1(a)

Pursuant to paragraph 45 of the Receiver Order, 30 days prior to the filing of this motion, the Receiver served upon counsel for the United States Securities and Exchange Commission ("SEC" or "Plaintiff") a complete copy of this motion, together with all exhibits and relevant billing information in a format approved by the SEC.  The Plaintiff indicates that it has no objection to this motion.  The Receiver has not conferred with any other parties because the relief sought by the Receiver cannot be resolved by the parties as the Court is required to rule on the motion for the payment of the Receiver's fees and expenses and those of its counsel under the Receiver Order and because the Receiver Order provides the specific procedures to be followed in connection with its application for approval and authorization for Receiver's

compensation and expense reimbursement as generally described above and as set forth in detail at paragraphs 45-48 of the Order Appointing Receiver.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION AND STATEMENT OF FACTS

On September 11, 2020, the Court entered the Receiver Order, appointing Brick Kane of Robb Evans & Associates LLC as Receiver over the (1) Entity Defendants; (2) the Receivership Assets of the Individual Defendants; and (3) the Recoverable Assets of the Receivership Relief Defendants, as those terms are defined therein.  (*Id.* at p. 2.) The Receiver Order provides that "[t]he Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the Receivership Defendants and the Receivership Relief Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Federal Rule of Civil Procedure 66." (*Id*. at ¶ 1.)

The Receiver's duties and responsibilities under the Receiver Order require him to, among other things, identify, account for, and preserve and protect receivership assets. To that end, the Receiver Order allows him to "engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities [under the Receiver Order], including, but not limited to … attorneys…" (*Id*. at ¶ 4.F.)

Given the Receiver's need for assistance of counsel, on September 23, 2020, the Receiver filed a Motion for Order Authorizing Employment of Barnes & Thornburg LLP as Counsel for Receiver, which was granted on September 24, 2020. (Docs. 160 and 163.)

In addition, in order to discharge his duties under the Receiver Order, the need arose for the Receiver to employ counsel in the State of Arizona. By way of background, in July 2020, the SEC filed a Notice of Violation of Asset Freeze (Doc.137) ("Notice of Violation"), asserting that certain named parties and at least one third party engaged in various violations of the asset freeze orders previously issued by the Court.  Based on the Notice of Violation, the Receiver determined that it would be necessary to file Notices of Lis Pendens in order to preserve certain real property assets situated in Arizona for the receivership estate. In early October 2020, the Receiver employed Engelman to assist in the preparation and recordation of two Notices of Lis Pendens in connection with two pieces of real property in Maricopa County, Arizona on an urgent basis and to prevent dissipation of these assets. The Receiver also required the assistance of Engelman with respect to taking possession and control of these Arizona properties. The Receiver filed a motion seeking an order permitting the Receiver to retain Engelman *nunc pro tunc* as of October 1, 2020, which was granted on November 6, 2020 (Docs. 183 and 186).

Paragraph 45 of the Receiver Order provides for the Receiver to apply for compensation and expense reimbursement on a quarterly basis from Receivership Funds within 75 days after the end of each calendar quarter.  Paragraph 45 of the Receiver Order further provides that 30 days prior to the filing of such motion, the Receiver is to serve upon counsel for the SEC a complete copy of the motion, together with all exhibits and relevant billing information in a format approved by the SEC, which the Receiver has done.  Paragraph 46 of the Receiver Order provides that all Quarterly Fee Applications will be interim and subject to cost benefit and final reviews at the close of the receivership.  Paragraph 48 of the Receiver Order provides, among other things, that each Quarterly Fee Application comply with the terms of the Billing Instructions provided by the SEC to the Receiver and represent that the fees and expenses were

incurred in the best interests of the Receivership Estate and, with the exception of the Billing Instructions, that the Receiver has not entered into any agreement concerning the amount of any compensation paid or to be paid from the Receivership Estate, or any sharing thereof.  The requisite certifications are contained in the Declarations of Brick Kane ("Kane Declaration") and Gary Owen Caris ("Caris Declaration") which accompany this motion.

This is the initial Quarterly Fee Application pursuant to the Receiver Order, and covers the First Expense Period, from the inception of the receivership on September 11, 2020 through December 31, 2020, a period of approximately three and one-half months.[1] The services of the Receiver and its counsel are summarized separately below and described in the detailed billing records attached as exhibits to the Kane and Caris declarations.

## II.      SUMMARY OF THE RECEIVER'S SERVICES AND ACTIVITIES DURING THE FIRST EXPENSE PERIOD

The Receiver seeks approval and authorization for payment of the Receiver's fees and costs summarized in the Receivership Administrative Report spreadsheet ("Financial Summary") attached as Exhibit 1 to the Kane Declaration in support of this motion, together with the detailed billing records of the Receiver attached collectively to the Kane Declaration as Exhibit 2.[2] During the First Expense Period, the Receiver has incurred fees for the Receiver and his deputies of $48,811.20.  The Receiver's costs during the First Expense Period total $306.09 and are detailed in the Financial Summary.

---

[1]  The Receiver did not file a fee application for the third quarter of last year, because he had only been Receiver for 19 days before the end of that calendar quarter.

[2] As explained in the Caris declaration, the bills have been redacted where appropriate to preserve confidential, sensitive, tactical, strategic, attorney-client privileged and/or attorney work-product information.

The Receiver[3] analyzed the Receiver Order and the powers and duties accorded to him under the Receiver Order to ensure compliance with its terms.  He also reviewed other pertinent pleadings and orders in the case in order to familiarize himself with the status of the case and the assets of the receivership estate.   The Receiver served the Receiver Order on various financial institutions and asset holders in an effort to obtain possession and control of funds and other non-monetary assets of the receivership estate.  As detailed in the Financial Summary, during the First Expense Period, a total of $7,115,570.09 was collected by the Receiver.  As a result of work undertaken by the Receiver and its counsel, Barnes & Thornburg, during the First Expense Period, an additional $1,741,037.38 was brought into the receivership estate in January 2021 from a financial institution holding receivership estate assets.

Throughout the First Expense Period, the Receiver had extensive communications with various parties in interest.  The Receiver communicated with the individual Defendants to discuss real property assets, as well as tangible and intangible personal property assets.  The Receiver had communications with counsel for the Defendants to address, among other things, the turnover of cash assets held by counsel as a result of the liquidation of two parcels of real property in the Bahamas.  The Receiver communicated with counsel for the SEC, other governmental authorities and the Joint Official Liquidators in the Bahamas for Mediatrix Capital Fund Ltd.  It also communicated with counsel for Equiti US LLC, Equiti Capital UK Limited and Equity Armenia CJSC (collectively "Equiti") concerning the Receiver's claim to funds held by Equiti and had telephone conversations with prospective class counsel in connection with potential litigation against Equiti.

---

[3]  Where appropriate, "Receiver" means the Receiver, Brick Kane, and his deputies who have assisted him in discharging his duties as Receiver.

During the First Expense Period, the Receiver began to address, evaluate and take possession and control over substantial amounts of real and personal property assets of the receivership estate, in addition to the cash which was turned over to the Receiver as described above.  As detailed in the Receiver's First Report, the Receiver took possession and control of all known real property of the receivership estate except for personal residences, including two properties in Texas, two properties in Arizona and four lots in Florida.  He obtained preliminary title reports and multiple appraisals on all of the properties, and listed each of those properties for sale as permitted by the Receiver Order. Where necessary, the Receiver addressed delinquent real property taxes and evaluated needed renovation expenses.

The Receiver assisted his counsel in analyzing and successfully opposing three renewed motions for the release of funds and various assets brought by each of the individual Defendants and their spouses who are Relief Defendants.  Finally, the Receiver discharged all of the normal operational duties of a receiver, including maintaining and updating accurate accounting records for the receivership estate and processing and paying ongoing administrative expenses of the receivership.

III.     **SUMMARY OF THE SERVICES AND ACTIVITIES OF THE RECEIVER'S COUNSEL DURING THE FIRST EXPENSE PERIOD**

The Receiver also seeks payment of its counsel's fees and expenses summarized in the Financial Summary, Exhibit 1 to the Kane Declaration, and set forth in the detailed billing records of Barnes & Thornburg, attached collectively as Exhibit 1 to the Caris Declaration and the detailed billing records of Engelman, attached collectively as Exhibit 2 to the Caris Declaration..  During the First Expense Period, the Receiver incurred fees to Barnes &

Thornburg of $56,933.90 and costs of $1,437.53.  During this period, the Receiver incurred fees to Engelman of $7,647.50 and costs of $98.54.

A.      **Barnes & Thornburg**

Barnes & Thornburg analyzed the Receiver Order and other relevant pleadings and orders in order to advise the Receiver.  During the First Expense Period, counsel brought a motion to employ Barnes & Thornburg as counsel for the Receiver and a separate motion to employ Engelman *nunc pro tunc* as local Arizona counsel for the Receiver.  Both motions were granted as requested.

Barnes & Thornburg filed four miscellaneous actions pursuant to 28 U.S.C. §754 in the Arizona District Court, the Eastern and Northern Districts of Texas and the Puerto Rico District Court in order to obtain jurisdiction and control of all receivership property located in those districts.  In order to prevent the further improper transfer or encumbrance of two properties in Arizona, Barnes & Thornburg, working with local counsel Engelman, assisted in the preparation of two Notices of Lis Pendens.

Working with the Receiver, Barnes & Thornburg prepared three separate oppositions to three renewed motions for the release of funds and various assets brought by each of the individual Defendants and their spouses who are Relief Defendants.  Each of the motions was denied as urged by the Receiver and the SEC.

Throughout the First Expense Period, counsel for the Receiver had extensive communications with counsel for various parties in interest.  This included numerous communications with counsel for the SEC; the Receiver's counsel in Arizona, Engelman; Defendants' counsel; and prospective class counsel against Equiti.  Communications with counsel for the Defendants included responding to requests for information as well as assisting

- 8 -

the Receiver in successfully demanding the turnover of sales proceeds in connection with the consummated sale of two properties in the Bahamas.  Communications with class counsel assisted Barnes & Thornburg in beginning to assess potential claims against Equiti.

Barnes & Thornburg further assisted the Receiver in responding to and addressing demands brought by the Denton County, Texas property tax assessor.  Finally, as to two financial institutions who were slow in responding to the Receiver's demand for the turnover of receivership funds and other assets pursuant to the Receiver Order, Barnes & Thornburg assisted the Receiver in getting all required funds remitted to the Receiver without continued delay and without the need to bring any action before this Court to compel compliance.  This resulted in the turnover of funds in excess of $2.1 million from these two financial institutions.

**B.**     **Engelman**

As set out above, Engelman has served as Arizona counsel for the Receiver principally in connection with two parcels of real property in Scottsdale, Arizona.  It assisted Barnes & Thornburg in preparing two Notices of Lis Pendens for those properties, in order to ensure compliance with Arizona law.  Engleman recorded the two Notices of Lis Pendens in Maricopa County, Arizona. In addition, Engelman, principally through one of its paralegals, assisted in taking possession and control of both of those properties, by coordinating the changing of locks at the properties, taking pictures and assessing the condition of the properties, and installing lock boxes at the properties.

**IV.**     **THE FEES AND COSTS OF THE RECEIVER AND ITS COUNSEL ARE REASONABLE AND SHOULD BE ALLOWED FOR PAYMENT**

It is a fundamental tenet of receivership law that expenses of administration incurred by the receiver, including those of the receiver, his counsel and others employed by him, constitute

priority expenses for which compensation should be paid from the assets of the receivership. As explained in the leading treatise *Clark on Receivers:*

> The obligations and expenses which the court creates in its administration of the property are necessarily burdens on the property taken possession of, and this, irrespective of the question who may be the ultimate owner, or who may have the preferred lien, or who may invoke the receivership. The appointing court pledges its good faith that all duly authorized obligations incurred during the receivership shall be paid.

2 Clark, Ralph Ewing, *A Treatise on the Law and Practice of Receivers* § 637, p. 1052 (3rd ed. Rev. 1992).

The Receiver is an officer of the Court charged with a myriad of duties under the Receiver Order.  Many of those duties, particularly at the outset of the case, do not lead to the direct and immediate recovery of assets or increase in the funds available for distribution to creditors.  Because of the nature of the administrative and other services required in receiverships, the benefit a receiver confers on receivership property cannot be determined based solely on the increase or decrease in the value of property in the receiver's possession. As the Court explained in *Securities and Exchange Commission v. Elliott*, 953 F. 2d 1560, 1577 (11th Cir. 1992):

> [I]t is sometimes difficult to ascertain what type of benefits a receiver has bestowed on receivership property . . . . . [A] benefit to a secured party may take more subtle forms than a bare increase in monetary value. Even though a receiver may not have

> increased, or prevented a decrease in, the value of the collateral, if
>
> a receiver reasonably and diligently discharges his duties, he is
>
> entitled to compensation. [Citations omitted.]

*Securities and Exchange Commission v. Elliott*, 953 F. 2d at 1577.

The Court has broad discretion in determining the reasonableness of fees to be awarded a receiver. *See In re San Vicente Medical Partners Ltd.*, 962 F. 2d 1402, 1409-1410 (9th Cir. 1992). The Court may evaluate the time and effort expended by the Receiver with respect to specific projects and aspects of the administration of the estate, and may look to a number of different factors under the case law in approving receiver's and counsel's fees. *In re San Vicente Medical Partners Ltd.*, 962 F. 2d at 1409-1410.

This Motion establishes that during the First Expense Period, the Receiver, its deputies and professionals rendered reasonable, necessary and valuable services for the receivership estate that were beneficial to the estate and the parties in interest.  As demonstrated herein and in the supporting declarations and exhibits, the Receiver, its deputies and professionals have performed substantial and wide-ranging tasks that were beneficial to the estate, including directly bringing funds into the estate so that these funds could not be diverted, misused or concealed, as well as taking possession and control of numerous parcels of real property and laying the groundwork for the subsequent sale of that property for the benefit of the estate.  *See Federal Trade Commission v. Capital Acquisitions & Management Corp.*, 2005 U.S. Dist. LEXIS 18504 (N.D. Ill. August 26, 2005). The Receiver submits the fees are reasonable in light of the services rendered, and that the fees and expenses requested should be awarded in their entirety.

 The Receiver has on hand sufficient funds to pay all of the requested fees and costs that have been incurred through December 31, 2020.  As set forth in the Financial Summary, the

estate has $6,950,920.78 on hand through December 31, 2020, net of all fees and costs requested herein.  Since that time, the Receiver has collected an additional $1,741,037.38, which means that the estate's cash on hand has gone up significantly since the end of the First Expense Period.

## V.    **CONCLUSION**

The Receiver respectfully requests that the Court grant this motion in its entirety, authorize and approve for payment all of the fees incurred by the Receiver and its professionals as set forth herein, and enter the proposed order submitted concurrently herewith.

DATED:  February 26, 2021

*/s/  Gary Owen Caris*
Gary Owen Caris, Calif. Bar No. 088918
BARNES & THORNBURG LLP
2029 Century Park East, Suite 300
Los Angeles, CA  90067
Telephone: (310) 248-3880
Facsimile: (310) 248-3894
Email: gcaris@btlaw.com

Attorneys for Brick Kane of Robb Evans & Associates LLC, Receiver

19126740v2

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of February, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to parties or counsel registered through ECF.  In addition, I hereby certify that I have mailed or served the foregoing document or paper to the following non-CM/ECF participants in the manner indicated by the non-participant's name:

> Aaron Stewart
> 23800 North 73rd Place
> Scottsdale, AZ 85255

*/s/ Stephanie L. Moore*