**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 19-cv-02594-RPM

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

MEDIATRIX CAPITAL INC., BLUE ISLE MARKETS INC. (St. Vincent & the Grenadines), BLUE ISLE MARKETS LTD., MICHAEL S. YOUNG, MICHAEL S. STEWART, and BRYANT E. SEWALL,

Defendants,

and

MEDIATRIX CAPITAL FUND LTD., ISLAND TECHNOLOGIES LLC, VICTORIA M. STEWART, MARIA C. YOUNG, HANNA OHONKOVA SEWALL, MICHAEL C. BAKER, WALTER C. YOUNG III, ARUAL LP, WEST BEACH LLC, SALVE REGINA TRUST, TF ALLIANCE, LLC, CASA CONEJO LLC, HASE HAUS, LLC, DCC ISLANDS FOUNDATION, KEYSTONE BUSINESS TRUST, WEINZEL, LLC, THE 1989 FOUNDATION, MEDIATRIX CAPITAL PR LLC, MEDIATRIX CAPITAL, LLC, and BLUE ISLE MARKETS INC. (Cayman Islands),

Relief Defendants.

---

**RENEWED MOTION FOR A PARTIAL STAY OF DISCOVERY AGAINST THE INDIVIDUAL DEFENDANTS MICHAEL S. STEWART AND BRYANT E. SEWALL, RENEWED MOTION TO PERMIT THE UNFREEZING OF CERTAIN ASSETS FOR THE PAYMENT OF ATTORNEY'S FEES AND REQUEST FOR HEARING**

---

Drohan Lee LLP
Vivian R. Drohan
5 Penn Plaza, 19th Floor
New York, NY 10019
Telephone: 202-710-0004
E-Mail: vdrohan@dlkny.com

*Attorneys for Defendants Mediatrix Capital Inc., Blue Isle Markets Inc. (St. Vincent & the Grenadines), Blue Isle Markets Ltd., Michael S. Stewart, and Bryant E. Sewall.*

## Table of Contents

CERTIFICATE OF CONFERRAL ................................................................................................ 4

INTRODUCTION AND PROCEDURAL BACKGROUND ....................................................... 4

I. A STAY OF THIS ACTION AND/OR DISCOVERY IS APPROPRIATE ................. 10

1. The Criminal Investigation and Civil Proceedings Involve the Same Subject Matter. ..... 12

2. Now that Defendants have been indicted, the Defendants' Fifth Amendment Rights Will Need to be Invoked During Discovery. .......................................................... 12

3. A Stay Will Not Prejudice Plaintiff's Rights. ................................................................ 12

4. Plaintiff Will Suffer Substantial Prejudice Without a Stay ........................................... 13

5. The Court's Interests Strongly Favor a Stay. ................................................................ 13

6. The Criminal Proceedings Protect the Public Interest. .................................................. 13

II. IT IS REQUESTED THAT THIS COURT EXERCISEIT'S DISCRETION TO RELEASE FROZEN ASSETS TO PROVIDE FOR REASONABLE ATTORNEY FEES AND DEFENSE COSTS .......................................................................................... 14

CONCLUSION ...................................................................................................................... 17

## Table of Authorities

**Cases**

*SEC v. Dresser Industries Inc*., 628 F.2d 1368, 1375, 202 U.S. App. D.C. 345 (D.C. Cir. 1980)10

*Baxter v. Palmigiano,* 425 U.S. 308, 317-19, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976)) ............. 10

*CFTC v. Gramalegui*, 2016 U.S. Dist. LEXIS 19001 at 5-6 (D. Colo. Feb. 17, 2016)................ 15

*DeAtley v. Allard,* 2014 U.S. Dist. LEXIS 41037 (USDC 2014) .................................................. 10

*Dominguez v. Hartford Fin. Servs. Group, Inc.,* 530 F. Supp. 2d 902, 906 (S.D. Tex. 2008) ..... 11

*Duclaud Gonzales de Castilla*, 170 F.Supp.2d 427 (SD 2001) ..................................................... 14

*Gramalegui*, 2016 U.S. Dist. LEXIS 19001 at 5-6 (D. Colo. Feb. 17, 2016).............................. 15

*In re CFS-Related Sec. Fraud*, 256 F. Supp. 2d 1227, 1236-37 (N.D. Okla. 2003).................... 11

*Mid-America's Process Serv. v. Ellison*, 767 F.2d 684, 687 (10th Cir. 1985) ............................ 10

*S.E.C. v. Trujillo,* 2010 WL 2232388, at *2 (D. Colo. June 1, 2010).......................................... 11

*SEC v. Dowdell*, 175 F. Supp. 2d 850, 855–56 (W.D. Va. 2001).................................................. 13

*SEC v. Int'l Loan Network, Inc.*, 770 F. Supp. 678, 680 (D.D.C. 1991) ...................................... 13

*SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993)......................................................................... 13

*Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc*. 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995) ......................................................................................... 12

*United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) .................................................................. 10

Zuppardo v. Serv. Cab Co., 2017 U.S.  Dist LEXIS 31126, 2017 WL 877318 ( ED LA 2017) .. 11

**Statutes**

F.R.C.P. 65...................................................................................................................................... 4

Defendants, Michael Stewart ("Stewart") and Bryant Sewall ("Sewall") (collectively "Defendants"), along with Relief Defendants Victoria Stewart and Hanna Sewall (collectively "Relief Defendants"), by and through undersigned counsel, hereby submit this Motion for Order granting a Partial Stay of this Action until the pending criminal action is completed and permitting the unfreezing of certain assets in the amount of Seven Hundred Sixty Thousand [$760,000], as not all assets were not derived from the alleged fraud and/or the corporate Defendants, for the payment of attorney's fees and living expenses.  Defendants also request a hearing to support their need for release of the funds.

In support thereof, Defendants and Relief Defendants state as follows:

## CERTIFICATE OF CONFERRAL

1. Pursuant to D.C.COLO.LCiv R 7.1, counsel for Defendants and Relief Defendants has conferred with counsel for Plaintiff, the US Securities and Exchange Commission (the "SEC") and the Receiver, Brick Kane of Robert Evans & Associates (the "Receiver"), who are expected to oppose the requested relief.

## INTRODUCTION AND PROCEDURAL BACKGROUND

2. Plaintiff filed this emergency action under seal on September 12, 2019, alleging that Defendants operated a fraudulent currency and precious metals trading program. At the same time, Plaintiff filed an emergency motion for an *ex parte* asset freeze, a temporary restraining order, expedited discovery, and other emergency relief, which this Court granted. On October 23, 2019 the Court "So Ordered" the Stipulation between the parties

permitting the asset freeze and agreeing to a preliminary injunction. [Dckt #34 and 38].  On September 11, 2020 an Order appointing a Receiver was issued [Dckt 153].

3.  A prior request to stay the action was made in conjunction with a motion to dismiss on December 18, 2019 [Dckt 86].  The stay was denied by this Court partially on the basis that a criminal case was not yet pending  [Dckt. 133].

4.  A prior motion to unfreeze certain assets was made in April of 2016 on behalf of Bryant Sewall and Michael Young [Dckt. 111].  This motion was denied by Order of this Court dated June 25, 2020 [Dckt. 133] on the basis Defendants had not demonstrated that certain assets were obtained outside the alleged fraud or were otherwise untainted.  In addition, there was no proof that funds could not be obtained through alternate means. A second motion for limited release of frozen assets was made on behalf of Bryant Sewall and Michael Stewart on  November 16, 2020 and November 25, 2020, respectively.  These motions were denied on January 25, 2021 on the basis that because certain assets were acquired prior to the creation of the company alleged to be fraudulent was insufficient reason to establish that they should be released.  In addition, the Court held that the motion had not been sufficiently established "what basic living expenses" were not being met.

5.  It is respectfully submitted that the motion currently made on behalf of Stewart and Sewall is based on substantially changed circumstances, further proof that certain frozen assets are in fact untainted,  and that without release of certain funds, each of these Defendants will be materially harmed in their defense and likely need to be publicly defended.  There is also a substantial risk that they will become public charges.  Therefore, pursuant to F.R.C.P. 65,

Defendants move this Court for an order modifying preliminary injunctive relief to release certain frozen assets.

6. Mediatrix was not incorporated nor in business prior 2016.  Blue Isle Markets Limited was incorporated in New Zealand on September 11, 2017 as AMG Consultancy Limited.  Its name was changed to Blue Isle Markets Limited on December 6, 2018.  Blue Isle Markets Inc. was incorporated on December 5, 2015.  (Attached as Exhibit A are copies of the corporate documents).  Mr. Stewart was an original shareholder and beneficial owner of the corporate entities but did not receive immediate payments from the corporate Defendants.  Sewall was not an original beneficial or direct owner of any corporate entity until late 2016.

*Bryant Sewall and Hanna Ohonkova*

7. As noted in the Second Motion seeking relief from the asset freeze, and further contained in his current affidavit, Sewall had assets that are untainted as they were obtained and paid for with monies not associated with the alleged fraud.

8. Defendant, Sewall voluntarily left the Ukraine with his family and arrived in Texas on February 22, 2021 to prepare for the appearance before the Court on March 3, 2021.  His family was able to come with him, as his wife had finally obtained a VISA allowing her to travel with him to the US.  She is a named Relief Defendant.

9. Due to the fact that he had lived outside the US, the Department of Justice rather than allowing for a virtual appearance in Texas at the Courthouse, required Sewall to fly to Denver, Colorado on March 2, 2021 to appear on March 3, 2021 for arrest and processing a release bond.  He is scheduled to appear on March 12, 2021 for arraignment.  Sewall did not have employment while in the Ukraine and was forced to have his family pay for a flight to Denver to simply appear virtually. A bond of $70,000 was required which his mother

signed subject to her personal liability.   Annexed as Exhibit B is the relevant indictment. Annexed as Exhibit C is a copy of the bond paperwork.

10. Sewall has a family that has arrived with him and although seeking employment in Texas, he requires a car to be able to drive to any place of employment or to do any work, including contracting work.  Insurance will have to be paid for health benefits.  His family currently resides with his mother.  He cannot pay for food, clothes or doctors visit which will most definitely be needed by his one-year-old child.  He has requested from the receiver permission to obtain certain personal items from his prior home 1201 Lloyd's Road and while he has been given permission to retrieve some clothes and baby toys there are still many personal items in the home that are useful or otherwise valuable to him but have no value to the Receiver.   The Receiver has permitted the use of a Dodge Ram truck for work; however, Sewall is required to maintain insurance for the vehicle and make the monthly payments. These are among the living expenses required by Sewall.

11. In addition, now that he has been indicted, Sewall requires criminal counsel that is familiar with the facts of the matter and can properly defend him in a complex action.  Ken Harmon of Springer & Spielberg[1] has been involved in representing Sewall and is fully familiar with the facts and complexity of the foreign exchange trading alleged to have caused the fraud. He has represented  Sewall at a discounted cost but requires payment to continue.

12. As previously noted in the prior Motion to Unfreeze, Sewall started with a balance at a USAA bank account of $11,433 and at Service CU of $19,237 in January of 2016.  This totaled $30,670 in the bank. None of this amount originated from any of the Corporate

---

[1] Ken Harmon of Springer & Steinberg can be seen at https://www.springersteinberg.com/firm-overview/attorneys/kenneth-m-harmon/

Relief Defendants or Relief Defendants or investors.  At the time he owned home furniture which was purchased primarily in February and March of 2016,and a few in April before any wire any amounts were received from the Corporate Relief Defendants.  The furniture items were bought with savings from an Active military duty in Germany, and none were expensive. Attached as Exhibit D are copies of Sewall's previous affidavit and bank statements.

13. Assets purchased in 2016 without contribution from the Corporate or Relief Defendants included:

- 2014 Dodge Ram- $23,650, 100% Financed August 2016 (payments are 400.53 per month/4806 per year) Current value about 15k
- 2012 Jeep-$30,900, 100% Financed August 2016 (payments are 612.89 per month/7345 per year) current value about 12k.
- 2012 power jet boat purchased in September 2016- $13500, current value about 10k

In 2017 Sewall had $46,349 worth of bank deposits not related to the Corporate and/or Relief Defendants which include proceeds the sale of the 2010 Camaro for $18,000 and 2008 Suzuki for $8300.

14. In total, Sewall has asset of approximately $122,782.  Unfreezing this amount would allow Sewall to support his family which includes a year-old baby as well as help pay for counsel of his choice. That includes Drohan Lee LLP as well as Ken Harmon of Springer & Spielberg.

**Michael Stewart and Victoria Stewart**

15. Stewart has now been formally indicted as well pursuant to a Criminal Complaint, Case Number 21-cr-34-WJM.   He appeared virtually on February 12, 2021 in Arizona to plead not guilty to all charges.   He was released on a $50,000 bond. He was represented by

Michael Lavelle of Lavelle & Lavelle allegations[2], who is now also fully familiar with the facts and circumstances of the allegations which led to the indictment.  Mr. Stewart has been rendered disabled and will have difficulty with primary living expenses.   Attached as Exhibit E is a copy of the bond paperwork.

16. Prior to 2016, Mr. Stewart was a construction contractor.  Prior to March 2016 Mr. Stewart can show untainted funds in the amount of over $100,000.  As noted in Mr. Stewart's prior affidavit to the Second Motion to Unfreeze, he owned and operated a thriving and highly profitable Oil Field Construction & Drilling Firm in West Texas (Big Star Energy Services, LLC), additionally he owned and operated a Disabled Veteran registered Oilfield Sand & Gravel, Pad & Road Access Company (Patriot Contracting LLC), as well as an Oil Well Production Company (IT Black Crude LLC) and earned income as an oilfield construction contractor, Oilfield Drilling and Well Production.  In the fall 2015, Big Star Energy had an average monthly cashflow of $150,000 as you can see in the attached statements and where he collected personal payroll of $12,500 per month. He had cashflow deposits of $50,772.59 in  September 2015, $104,360 in October 2015, $4,000 in November 2015 and $33,287.47 in  December 2015 via Patriot Contracting.  Moreover, his Oil Production Company was paying him $40,000 quarterly, as shown on the October 2015 Bank Statement. This totaled over $100,000 at three separate banks. None of this amount was from any of the corporate or Relief Defendants.  Attached as Exhibit F is Stewart's prior affidavit together with various bank statements.

17. Plaintiff has essentially removed any ability for either Defendant to support himself or be represented by counsel of his choice by freezing any asset that was in the name of the

---

[2] Michael Lavelle's background can be found at https://lavelle-lavelle.com/

Defendants at the time the action was commenced inconclusive assets that are not a part of the alleged fraud.  This has been done prior to proving the civil or criminal allegations and without any proof that disgorgement of the full amount of the alleged loss would be awarded in any event. *Liu v. SEC, Liu v. Sec. & Exch. Comm'n,* 140 S. Ct. 1936, 1946, 207 L. Ed. 2d 401 (2020),  can be argued to affect the amount of disgorgement that can be obtained from the Relief Defendants if they had no part in the wrongdoing.

18. It is clear from the procedural history that Defendants need representation and that the present legal action cannot be legitimately tried or resolved without the assistance of both civil and criminal defense counsel. They have exhausted their means to timely pay for the legal representation without the unfreezing of certain funds, and Defendants do not have other means to continue to pay for a defense. Additionally, they will need expert witnesses based on the financial fraud alleged. The allegations herein involve significant complex law and facts—Defendants do not have the training or expertise to go to trial nor are they even in a position to understand how to resolve this matter short of trial.  And, as explained more fully below, to force the individual Defendants to litigate *pro se* against the massive machine of the federal government is patently unfair and disregards the presumption of innocence intrinsic in our judicial system. Without funds to defend themselves, Defendants will be denied due process, including their right to counsel.

## ARGUMENT

## I.     A STAY OF THIS ACTION AND/OR DISCOVERY IS APPROPRIATE

Federal courts have ample discretion to stay discovery and civil proceedings pending the completion of related criminal proceedings. *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *Mid-America's Process Serv. v. Ellison*, 767 F.2d 684, 687 (10th Cir.

1985).  In *DeAtley v. Allard,* 2014 U.S. Dist. LEXIS 41037 (DC Col 2014), the Court noted, "when considering a stay in a matter involving parallel criminal and civil proceedings, the primary debate centers on the criminal Defendant's potential waiver or invocation of his Fifth Amendment rights. 'The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *SEC v. Dresser Industries Inc.,* 628 F.2d 1368, 1375, 202 U.S. App. D.C. 345 (D.C. Cir. 1980) (citing *Baxter v. Palmigiano,* 425 U.S. 308, 317-19, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976)). Nevertheless, "a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions when the interests of justice seem to require such action." *Id. at 1375* (internal quotation omitted).

Defendants are seeking a partial stay to include the prevention of any testimony of the individual Defendants, Stewart and Sewall in any form, including depositions, interrogatories, requests to admit and trial testimony. The Courts have stated six factors when evaluating whether to determine a stay in a civil case and if a party's Fifth Amendment rights are substantially prejudiced: (1) the extent to which issues in the criminal case overlap with those in the civil case; (2) the status of the case, including whether Defendant has been indicted; (3) the private interests of plaintiff in proceeding expeditiously versus the prejudice to plaintiff caused by delay; (4) the private interests of, and burden on, Defendant; (5) the interests of the Court; and (6) the interests of the public. *DeAtley v. Allard,* 2014 U.S. Dist. LEXIS 41037 (DC Col 2014); *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical*, 886 F. Supp. 1134 at 1139 (DCNY 1995); *In re CFS-Related Sec. Fraud*, 256 F. Supp. 2d 1227, 1236-37 (N.D. Okla. 2003); *S.E.C. v. Trujillo,* 2010 WL 2232388 (D. Colo. June 1, 2010).

1.      **The Criminal Investigation and Civil Proceedings Involve the Same Subject Matter.**

Where the cases involve the same subject matter, self-incrimination is highly likely and justifies a stay. *In re CFS*, 256 F. Supp. 2d at 1237. Courts have found facts to be interrelated where the same events triggered both the civil and criminal litigation. *Dominguez v. Hartford Fin. Servs. Group, Inc.,* 530 F. Supp. 2d 902, 906 (S.D. Tex. 2008).  Some courts have found that "the similarity of the issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay." *Zuppardo v. Serv. Cab Co*., 2017 U.S.  Dist LEXIS 31126, 2017 WL 877318 (ED LA 2017). Such is the case here.  Although the criminal indictment does not contain an allegation of securities fraud, the facts are those of the securities action and the basis of the criminal complaint arise from the same actions as that in the SEC civil action.

2.      **Now that Defendants have been indicted, the Defendants' Fifth Amendment Rights Will Need to be Invoked During Discovery.**

Courts give the greatest level of deference to a civil party's Fifth Amendment rights after she or he has been criminally indicted for a serious offense.  *S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980).  However, Courts have also granted stays of civil proceedings where a criminal investigation has clearly been undertaken and/or is ongoing.  *SEC v. Stanley*, 2012 (DC Cal. 2012); *SEC v. Downe*, 1993 U.S.Dist LEXIS 753; 1993 WL 22126 (SD NY 1993).

3.      **A Stay Will Not Prejudice Plaintiff's Rights.**

The potential harm to the individual Defendants, however, from an unfavorable inference if the Fifth Amendment is invoked are far more significant than any harm the Plaintiff will suffer.  The injunctive relief has been agreed to and Defendants are prevented

from continuing business.  In addition, available assets will remain frozen, even following

any granting by this Court of this motion. There is no significant harm in delaying the action.

**4.      Plaintiff Will Suffer Substantial Prejudice Without a Stay.**

A defendant has a significant interest in "avoiding the quandary of choosing

between waiving their Fifth Amendment rights or effectively forfeiting the civil case."

*Transworld Mech., Inc*. 886 F. Supp. 1134 at 1140 (S.D.N.Y. 1995).  Defendants who

invoke the Fifth Amendment privilege in civil cases may be subject to an adverse inference.

*Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).  Defendants who waive this privilege to

defend the civil case subject themselves to broader civil discovery rules that may allow the

prosecution to obtain additional information for use during the criminal case, and the

Defendants may also be forced to expose their criminal defenses to the prosecution.

*Dresser*, 628 F.2d at 1375-76.

**5.      The Court's Interests Strongly Favor a Stay.**

Courts have noted that in general considerations of judicial economy weigh most

strongly in favor of staying a civil proceeding or aspects of the civil proceeding when a

parallel criminal proceeding is pending at the same time and involves overlapping issues.

*SEC v. Nicholas*, 569 F. Supp 2d 1065, 1071 (C.D. Cal 2008); *SEC v. Stanley*, 2012 U.S.

Dist. LEXIS 20059 (CD Cal. 2012).

**6.      The Criminal Proceedings Protect the Public Interest.**

When the same subject matter gives rise to civil and criminal cases, the latter

protects the public's interests. *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v.*

*Transworld Mechanical*, 886 F. Supp. 1134 at 1140 (DCNY 1995).  See also, United States

SEC v. Trujillo, 2011 U.S.Dist. LEXIS 6832 (DC Col. 2011); SEC v. Stanley, supra, where

the Court noted, "[i]n cases in which the civil defendant, not the government seeks the stay of civil discovery, the Defendant's ability to adequately assert his Fifth Amendment privilege is often a key consideration in determining the propriety of a stay."

It is submitted that the Court has a sufficient basis in which to use its discretion to partially stay civil proceedings to the extent of preventing any and all testimony by the individual Defendants in any form and impose protective orders and conditions in the interest of justice seem to require such action.

## II.   IT IS REQUESTED THAT THIS COURT EXERCISE IT'S DISCRETION TO RELEASE FROZEN ASSETS TO PROVIDE FOR REASONABLE ATTORNEY FEES AND DEFENSE COSTS

There is ample precedent of federal district courts releasing frozen assets for the purpose of paying for attorney fees. *See SEC v. Dowdell*, 175 F. Supp. 2d 850, 855–56 (W.D. Va. 2001); *SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993); In *SEC v. Int'l Loan Network, Inc.*, 770 F. Supp. 678, 680 (D.D.C. 1991), a district court indicated, notwithstanding Ponzi scheme allegations and a prior asset freeze, that it had granted a "modification of the asset freeze to permit Defendants to retain counsel on their behalf." See also, *Duclaud Gonzales de Castilla*, 170 F.Supp.2d 427 (SD 2001).

As previously noted by counsel for Michael Young [Dkt.#185], the U.S. Supreme Court, set hard limits on the SEC's disgorgement remedy. "Over the years, however, courts have occasionally awarded disgorgement in three main ways that test the bounds of equity practice: by ordering the proceeds of fraud to be deposited in Treasury fund instead of disbursing them to victims, imposing joint-and-several disgorgement liability, and declining to deduct even legitimate expenses from the   receipts of fraud. The SEC's

disgorgement remedy in such incarnations is in considerable tension with equity practices." *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. at 1946.

What is now clear is that there is a pending criminal action which the individual Defendants need to defend. To date there has been no proof that the amount alleged by the SEC to constitute the loss is accurate and no evidence has been provided as to the actual amounts subject to disgorgement. An asset freeze—prior to any adjudication of wrongdoing—implicates the procedural protections mandated by the Due Process Clause of the Fifth Amendment. *See, e.g.*, *Connecticut v. Doehr*, 501 U.S. 11 (1991) at 11–12, (where the Court noted that due process protection is merited when there is deprivation of property and deprivation need not be "complete, physical, or permanent" to merit protection but that "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protections"). The reputation and resumes of the defense criminal counsel the individual Defendants seek to pay are well established.

A Defendants' Sixth Amendment right to select counsel of his or her choice attaches more forcefully post indictment. See *U.S. v. Bonventre*, 720 F.3d 126, 130 (2d Cir. 2013); *U.S. v. Monsanto*, 924 F.2d 1186, 1203 (2d 1991); *U.S. v. Stein*, 541 F.3d 130, 155-56 (2nd Cir. 2008). The Tenth Circuit has provided caselaw that favors the requirement of an adversarial hearing in post-restraint situations. See *United States v. Jones, 160 F.3d 641, 643, 1998 U.S. App. LEXIS 28623, *1, 1998 Colo. J. C.A.R. 5858.* At this time the SEC – at a minimum can and should be put to the test of showing that the assets are forfeitable (or disgorgable), as it is clear that the defendants cannot afford counsel of their choice without the use of the assets under restraint.

Due Process is critical here as it should provide a meaningful opportunity to be heard before "grievous loss" is inflicted. There can hardly be a more grievous a loss, at least in a civil case, than that which the individual Defendants are facing. To deprive them of virtually any real opportunity to continue to present a defense and to force them to proceed on such unequal footing with the SEC and possible the DOJ is to deprive them of their opportunity to be heard.

The amounts sought in attorney's fees are reasonable in amount. Federal Courts will release previously frozen assets after balancing "[t]he defendant's interest in having access to funds needed to pay ordinary and necessary living expenses… against the government's interest in preventing the depletion of potentially forfeitable assets." (citations omitted) *CFTC v. Gramalegui*, 2016 U.S. Dist. LEXIS 19001 at 5-6 (D. Colo. Feb. 17, 2016).

When considering a request to release frozen assets, the courts may look at evidence of the Defendants' overall assets, and at whether the request by the Defendants is for necessary living expenses and not luxuries. "Courts will not approve the release of funds for living expenses that are found to be unnecessary or which, though necessary, are determined to be excessive. (citations omitted) *Id*. at 6. *See also Duclaud*, 170 F.Supp.2d at 430. Courts have also refused to release assets when Defendants have other sources of income. *See Dowdell*, 175 F. Supp. 2d at 854 (DC Virginia 2001). Defendants' circumstances could not be more contrary to the instant case

Here, denying the requested release of funds would utterly abandon the need to protect Defendants  right to counsel.

## **CONCLUSION**

It is respectfully submitted that the Court grant a stay of this action pending completion of the criminal investigation and unfreeze the amount of Seven Hundred Sixty Thousand [$760,000] from the asset freeze and such other and further relief as to this Court may seem just and proper.

Respectfully submitted this 9 day of March 2021.

/s/ Vivian R. Drohan
Drohan Lee LLP
680 Fifth Avenue
New York, New York 10019
Telephone:  212-710-0004
Fax:  212-710-0003
Email:  vdrohan@dlkny.com

Jeffrey R. Thomas
Thomas Law LLC
3773 Cherry Creek North Dr,
Suite 600
Denver, CO 80209
Telephone: 720-330-2805
E-Mail: jthomas@thomaslawllc.com
*Attorneys for Defendants Mediatrix Capital Inc., Blue Isle Markets Inc. (St. Vincent & the Grenadines), Blue Isle Markets Ltd., Michael S. Stewart, and Bryant Sewall and Relief Defendants Victoria M. Stewart, and Hanna Ohonkova*