IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02594-RM-SKC

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MEDIATRIX CAPITAL INC., et al.,

    Defendants,

And

MEDIATRIX CAPITAL FUND LTD., et al.,

    Relief Defendants.

**MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT OF RECEIVER'S AND PROFESSIONAL'S FEES AND COSTS FROM JANUARY 1, 2021 THROUGH MARCH 31, 2021**

**TO: ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Brick Kane of Robb Evans & Associates LLC, Receiver ("Receiver") hereby moves the Court for an order approving and authorizing for payment the receivership fees and costs incurred from January 1, 2021 through March 31, 2021 ("Second Expense Period"). The Receiver specifically moves the Court for an order: (1) approving the fees of the Receiver and his deputies, and reimbursement of costs, comprised of Receiver's fees, including the Receiver's deputies, of $42,537.60 and Receiver's costs of $270.11, **for a total of $42,807.71** and authorizing for payment 80% of said fees ($34,030.08) and 100% of said costs, with the balance of the unpaid fees payable through the final fee motion, unless otherwise ordered by the Court; (2) approving the fees of Receiver's lead counsel Barnes & Thornburg LLP's ("Barnes &

Thornburg") and reimbursement of costs, comprised of fees of $78,963.05 and costs of $356.60, **for a total of $79,319.65** and authorizing for payment 80% of said fees ($63,170.44) and 100% of said costs, with the balance of the unpaid fees payable through the final fee motion, unless otherwise ordered by the Court; and (3) approving the fees of Receiver's Arizona counsel Engelman Berger, P.C.'s ("Engelman") and reimbursement of costs, comprised of fees of $3,182.50 and costs of $114.25, **for a total of $3,296.75** and authorizing for payment 80% of said fees ($2,546.00) and 100% of said costs, with the balance of the unpaid fees payable through the final fee motion, unless otherwise ordered by the Court.

This motion is based on the accompanying memorandum of points and authorities and the Declarations of Brick Kane and Gary Owen Caris, filed concurrently herewith, upon the pleadings, records and files of the Court in this case of which the Receiver requests the Court to take judicial notice, including without limitation the Report of Receiver's Activities From September 11, 2020 Through December 31, 2020 (Doc. 215) ("Receiver's First Report"), Second Quarterly Report of Receiver's Activities Covering the Period From January 1, 2021 Through March 31, 2021 (Doc. 257) ("Receiver's Second Report") and such other and further evidence as may be provided by the Receiver in support of the motion. This motion is made pursuant to paragraphs 45-48 of the Order Appointing Receiver (Doc. 153) ("Receiver Order"). Paragraph 45 of the Receiver Order specifically provides for the Receiver to apply for compensation and expense reimbursement on a quarterly basis from Receivership Funds within 75 days after the end of each calendar quarter.

- 3 -

## STATEMENT REGARDING DUTY TO CONFER PURSUANT TO D.C. COLO. LCivR 7.1(a)

Pursuant to paragraph 45 of the Receiver Order, 30 days prior to the filing of this motion, the Receiver served upon counsel for the United States Securities and Exchange Commission ("SEC" or "Plaintiff") a complete copy of this motion, together with all exhibits and relevant billing information in a format approved by the SEC. Plaintiff requested a 20% holdback in the payment of the fees sought for the Second Expense Period as permitted by its Billing Instructions, but otherwise had no objection to the motion, and the instant motion was modified to reflect a 20% holdback in the payment of the fees sought. The Receiver has not conferred with any other parties because the relief sought by the Receiver cannot be resolved by the parties as the Court is required to rule on the motion for the payment of the Receiver's fees and expenses and those of its counsel under the Receiver Order and because the Receiver Order provides the specific procedures to be followed in connection with its application for approval and authorization for Receiver's compensation and expense reimbursement as generally described above and as set forth in detail at paragraphs 45-48 of the Receiver Order.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION AND STATEMENT OF FACTS**

On September 11, 2020, the Court entered the Receiver Order, appointing Brick Kane of Robb Evans & Associates LLC as Receiver over the (1) Entity Defendants; (2) the Receivership Assets of the Individual Defendants; and (3) the Recoverable Assets of the Receivership Relief Defendants, as those terms are defined therein. (*Id.* at p. 2.) The Receiver Order provides that "[t]he Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the Receivership Defendants and the Receivership Relief Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Federal Rule of Civil Procedure 66." (*Id.* at ¶ 1.)

The Receiver's duties and responsibilities under the Receiver Order require him to, among other things, identify, account for, and preserve and protect receivership assets. To that end, the Receiver Order allows him to "engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities [under the Receiver Order], including, but not limited to … attorneys…" (*Id.* at ¶ 4.F.)

Given the Receiver's need for assistance of counsel, on September 23, 2020, the Receiver filed a Motion for Order Authorizing Employment of Barnes & Thornburg LLP as Counsel for Receiver, which was granted on September 24, 2020 (Docs. 160 and 163).

In addition, in order to discharge his duties under the Receiver Order, the need arose for the Receiver to employ counsel in the State of Arizona. In early October 2020, the Receiver employed Engelman to assist in the preparation and recordation of two Notices of Lis Pendens in

- 5 -

connection with two pieces of real property in Scottsdale, Arizona on an urgent basis and to prevent dissipation of these assets. The Receiver also required the assistance of Engelman with respect to taking possession and control of these Arizona properties. The Receiver filed a motion seeking an order permitting the Receiver to retain Engelman *nunc pro tunc* as of October 1, 2020, which was granted on November 6, 2020 (Docs. 183 and 186).

Paragraph 45 of the Receiver Order provides for the Receiver to apply for compensation and expense reimbursement on a quarterly basis from Receivership Funds within 75 days after the end of each calendar quarter. Paragraph 45 of the Receiver Order further provides that 30 days prior to the filing of such motion, the Receiver is to serve upon counsel for the SEC a format approved by the SEC, which the Receiver has done. Paragraph 46 of the Receiver Order provides that all Quarterly Fee Applications will be interim and subject to cost benefit and final reviews at the close of the receivership. Paragraph 48 of the Receiver Order provides, among other things, that each Quarterly Fee Application comply with the terms of the Billing Instructions provided by the SEC to the Receiver and represent that the fees and expenses were incurred in the best interests of the receivership estate and, with the exception of the Billing Instructions, that the Receiver has not entered into any agreement concerning the amount of any compensation paid or to be paid from the receivership estate, or any sharing thereof. The requisite certifications are contained in the Declarations of Brick Kane ("Kane Declaration") and Gary Owen Caris ("Caris Declaration") which accompany this motion.

This is the second Quarterly Fee Application pursuant to the Receiver Order, and covers the Second Expense Period, from January 1, 2021 through March 31, 2021. The services of the Receiver and its counsel are summarized separately below and described in the detailed billing records attached as exhibits to the Kane and Caris Declarations.

II. **SUMMARY OF THE RECEIVER'S SERVICES AND ACTIVITIES DURING THE SECOND EXPENSE PERIOD**

The Receiver seeks approval and authorization for payment of the Receiver's fees and costs summarized in the Receivership Administrative Report spreadsheet ("Financial Summary") attached as Exhibit 1 to the Kane Declaration in support of this motion, together with the detailed billing records of the Receiver attached collectively to the Kane Declaration as Exhibit 2.[1] During the Second Expense Period, the Receiver has incurred fees for the Receiver and his deputies of $42,537.60. The Receiver's costs during the First Expense Period total $270.11 and are detailed in the Financial Summary.

During the Second Expense Period, the Receiver[2] spent the bulk of his time addressing the real property in the receivership estate. Early in the Second Expense Period, the Receiver entered into a sales contract for the property comprised of four, contiguous, unimproved lots commonly known as 12088 Tetzel Avenue, Port Charlotte, Florida ("Tetzel Property") owned by Defendant Michael Young and Relief Defendant Maria C. Young (the "Youngs"). The contract provided for an all-cash, full price offer of $48,000. In light of the modest value of the Tetzel Property and the fact that the offer equaled or exceeded all property valuations, the Receiver did not initially believe it to be cost effective or worthwhile to seek any formal overbids. After assisting his counsel in preparing a motion to approve the sale of the Tetzel Property without seeking a formal overbidding process, and shortly before the motion was filed, the Receiver and its counsel were advised by Michael Young and his attorney that another person was interested

---

[1] As explained in the Caris declaration, the bills have been redacted, where appropriate, to preserve confidential, sensitive, tactical, strategic, attorney-client privileged and/or attorney work-product information.

[2] Where appropriate, "Receiver" means the Receiver, Brick Kane, and his deputies who have assisted him in discharging his duties as Receiver.

in acquiring the Tetzel Property at an amount significantly more than the $48,000. Ultimately, the Receiver's counsel revised the sale motion and provided for overbidding by the other interested party starting with an overbid of $64,000. However, late in the Second Expense Period, the Receiver was advised that the SEC and the Youngs were negotiating an agreement which led to the Joint Motion (Doc. 242), whereby the Tetzel Property would remain titled to the Youngs, continue to be subject to the asset freeze, and the sale motion would be denied without prejudice. The Court entered an Order approving the Joint Motion with respect to the Tetzel Property (Doc. 249).

The Receiver marketed and entered escrow for the sale of two properties in Scottsdale, Arizona during the Second Expense Period: the property commonly known as 7439 E. Casitas Del Rio Drive, Scottsdale, Arizona ("Casitas Property") and the real property commonly known as 8221 East Sheridan Street, Scottsdale, Arizona ("Sheridan Property"). The Casitas Property is a two-story condominium, and the Sheridan Property is a one-story, single family residence in the midst of extensive renovation work.

After entering into a listing agreement in late December 2020, the Receiver obtained four written offers for the Casitas Property during the Second Expense Period. The Receiver developed and implemented strategies to maximize the purchase offers from the various offerors. One of the two full price offers fell out of escrow, and the other was withdrawn. The eventual successful buyer came forward with an all-cash offer for $540,000, which was 99% of the list price. The Receiver negotiated the terms of the purchase agreement and assisted the Receiver's counsel in preparing a sale motion for the Court.

After examining the various property valuations, the Receiver decided to market and sell the Sheridan Property on an "as is" basis without undertaking the expense and incurring the

delay to complete improvements, particularly since permits had not been pulled by Michael Stewart for the work which had begun.  After the Receiver entered into a listing agreement in December 2020, there were seven offers made on the Sheridan Property.  During the Second Expense Period, the Receiver implemented an informal overbidding process, requesting that each offeror come back with a "highest and best" offer on the property.  The eventual successful buyer submitted three different offers for the property and ultimately entered into a sales contract for $520,000.

Because buyers had been obtained nearly concurrently, the Receiver was able to present one sale motion for the Casitas Property and Sheridan Property.  The sale motion was unopposed.  It was presented shortly after the end of the Second Expense Period (Doc. 243) on April 6, 2021, and the Order granting the motion was entered shortly thereafter (Doc. 247) on April 12, 2021.  The sale closed on the Casitas Property on May 7, 2021, generating $159,549.94 in proceeds for the receivership estate.  Escrow is also scheduled to close on the Sheridan Property in May 2021.

Throughout the Second Expense Period, the Receiver has taken steps to market and sell the most valuable parcel of real estate in the Receiver's possession, custody and control, the real property commonly known as 1201 Lloyds Road, Little Elm, Texas ("1201 Lloyds Road Property"), comprised of two tracts and 19.5 acres, one tract containing a 2911 square foot single family residence and the other containing a much smaller residence.  During this period the Receiver also addressed a nearby one-acre parcel of land, at 1197 Lloyds Road, Little Elm, Texas ("1197 Lloyds Road Property" and collectively with the 1201 Lloyds Road Property referred to as the "Lloyds Properties").  The 1197 Lloyds Road Property is improved only with a metal storage facility, but without any residence, water service or operating septic system.

During the Second Expense Period, the Receiver completed his efforts to obtain valuation information necessary to enable him to determine the potential value of the Lloyds Properties. He entered into listing agreements for the sale of the Lloyds Properties, and he has entertained various offers for the purchase of both properties, individually and in tandem. The Receiver negotiated counteroffers with different prospective buyers of the Lloyds Properties, individually and in tandem. The Receiver communicated with title counsel to discuss various issues surrounding the Lloyds Properties, including easement, access and water issues. He also addressed delinquent property taxes on the properties, as well as various maintenance issues.

As a result of these efforts, the Receiver entered into escrow for the sale of the 1201 Lloyds Road Property shortly following the end of the Second Expense Period for $3,550,000. It is anticipated that a sale motion will be presented to the Court shortly.

In addition to the work done with respect to these various parcels of real property, the Receiver also addressed personal property issues, particularly as they related to Defendant Bryant Sewall and Relief Defendant Hanna Ohonkova Sewall (collectively, the "Sewalls") and the personal property located at the Lloyds Properties. Before the SEC and the Sewalls negotiated an agreement with respect to much of the personal property located at the Lloyds Properties, the Receiver negotiated a release of certain personal property at the 1201 Lloyds Road Property to Bryant Sewall believed to be of inconsequential value to the receivership estate. In coordination with the Receiver's broker and counsel, he had a general inspection and inventory conducted of the personal property in the house at the 1201 Lloyds Road Property. The Receiver further negotiated permission for the Sewalls and certain family members living nearby on Lloyds Road to store various vehicles at the 1197 Lloyds Road Property in the event of extreme weather conditions. The Receiver also negotiated for the return of over encumbered

farm equipment that was property of the receivership estate and was stored at the 1197 Lloyds Road Property. The Receiver also sold one vehicle, a Jeep Wrangler owned by Bryant Sewall, generating net proceeds of $9,266.62 for the receivership estate, after payment of an existing car loan on the vehicle.

Throughout the Second Expense Period, the Receiver had numerous communications with counsel for the SEC and counsel for the Defendants, particularly Vivian Drohan, who is counsel for the Sewalls and Defendant Michael Stewart and Relief Defendant Victoria M. Stewart (collectively, the "Stewarts") on a number of matters involving the receivership. In particular, the Receiver, along with his counsel, discussed with Drohan the need for Defendant Michael Stewart to cause the legal transfer of the Casitas Property and Sheridan Property from the A.L.A. Trust back to the Keystone Business Trust pursuant to the Court's Order (Doc. 174) and to cause Michael Stewart to release the mechanic's lien he improperly filed against the Sheridan Property. These actions were taken by Stewart without the need for further Court intervention.

The Receiver continued to take steps to have receivership funds turned over by UBS. With the assistance of his counsel, a total of $1,741,037.38 was brought into the estate from accounts held at UBS that had not been previously turned over.

During the Second Expense Period, the Receiver prepared its First Report and the financials attached to the First Report. The Receiver also assisted his counsel in the preparation of the initial fee motion at no charge to the estate. The Receiver also undertook forensic accounting work on certain accounts held by Receivership Defendants. Finally, the Receiver discharged all of the normal operational duties of a receiver, including maintaining and updating

accurate accounting records for the receivership estate and processing and paying ongoing administrative expenses of the receivership.

As a result of the work undertaken by the Receiver and his counsel, including the services described below in Section III, the Receiver brought an additional $1,756,515.18 into the estate during the Second Expense Period, for a total of $8,872,085.27 collected and monetized since the inception of the receivership estate. As of the end of the Second Expense Period, March 31, 2021, the Receiver holds $8,431,706.93 net of expenses incurred through that date, including the expenses for which approval is sought in this motion.

### III. SUMMARY OF THE SERVICES AND ACTIVITIES OF THE RECEIVER'S COUNSEL DURING THE FIRST EXPENSE PERIOD

The Receiver also seeks payment of its counsel's fees and expenses summarized in the Financial Summary, Exhibit 1 to the Kane Declaration, and set forth in the detailed billing records of Barnes & Thornburg, attached collectively as Exhibit 1 to the Caris Declaration and the detailed billing records of Engelman, attached collectively as Exhibit 2 to the Caris Declaration. During the Second Expense Period, the Receiver incurred fees to Barnes & Thornburg of $78,963.05 and costs of $356.60. During this period, the Receiver incurred fees to Engelman of $3,182.50 and costs of $114.25.

#### A. Barnes & Thornburg

Throughout the Second Expense Period, Barnes & Thornburg worked closely with the Receiver in connection with the various real property in the Receiver's possession, custody and control described above. It prepared the motion to approve the sale of the Tetzel Property and revised the motion after a serious overbidder was presented to the Receiver and his counsel by Michael Young and his lawyer. Subsequently, counsel for the Receiver communicated with the

SEC about the pending agreement with the Youngs to have the Tetzel Property remain in the estate and reviewed and revised the proposed Joint Motion which was presented to the Court to accomplish this.

Counsel assisted the Receiver in connection with the Casitas Property and Sheridan Property in Scottsdale, Arizona. Barnes & Thornburg had numerous communications with attorney Drohan about the need for those two properties to be deeded back to Keystone Business Trust as ordered by the Court. It worked with Engelman, Arizona counsel, to revise the transfer deeds that had been prepared on behalf of the Defendants so that they were in proper and recordable format. It also had numerous discussions with Drohan about the need for Michael Stewart to cause the mechanic's lien he recorded against the Sheridan Property to be released. Counsel consulted with the Receiver in connection with a code enforcement order which had been recorded against the Sheridan Property. Just before the end of the Second Expense Period, Barnes & Thornburg drafted the bulk of the motion and supporting papers to approve the sales of the Casitas Property and the Sheridan Property and communicated with counsel for all of the parties who did not object to the sales, thereby permitting the motion to be presented as unopposed.

The first trust deed holder on the Casitas Property asserted that late charges and default interest in excess of $60,000 had accrued on their loan. Barnes & Thornburg contended that the late charges and default interest were unenforceable in whole or in part. Engelman assisted in analyzing the validity of the charges under Arizona law. Barnes & Thornburg negotiated extensively with the lienholder and was able to reach an agreement whereby more than 80% of the late charges and default interest was removed, resulting in the receivership estate saving nearly $50,000.

Counsel for the Receiver was also heavily involved in the Receiver's work in connection with the Lloyds Properties and the personal property at the Lloyds Properties. It consulted with the Receiver over sale strategies for the Lloyds Properties. Barnes & Thornburg communicated with counsel for a potential purchaser of the 1201 Lloyds Road Property about sale terms and his development plans. It drafted proposed deed restriction language to be used in connection with any sale of the 1197 Lloyds Road Property in order to preserve the value of the neighboring 1201 Lloyds Road Property. Counsel assisted the Receiver in undertaking a general inventory of the personal property at the 1201 Lloyds Road Property.

Barnes & Thornburg also had numerous communications with Tracy Ashmore, counsel for the Youngs, during the Second Expense Period. These communications pertained to various matters, including the potential overbidder on the Tetzel Property, opposition to the Receiver's initial fee motion, and a dispute over whether the Receiver could be heard in the pending 10th Circuit appeal brought by counsel for all the individual Defendants of the order denying a renewed request for the release of receivership assets to pay for living expenses and legal fees. In connection with those appeals, the Receiver filed a notice of appearance and monitored the filings at the 10th Circuit.

As noted above, counsel followed up with UBS's counsel in an effort to obtain funds required to be turned over to the receivership estate by UBS. As a result of counsel's continued follow up, UBS turned over $1,741,037.38 to the Receiver during the Second Expense Period.

Counsel had numerous communications with counsel for plaintiffs (investors) in separate actions in the United States and the United Kingdom against Equiti US LLC, Equity Capital UK Limited, and/or Equity Armenia CJSC (collectively "Equiti"). The communications principally centered on discovery requests initiated by counsel for these plaintiffs in the United Kingdom

actions. Barnes & Thornburg and the Receiver also discussed various issues pertaining to Equiti with the SEC. These discussions related to frozen funds held by Equiti, some of which were subject to Equiti's disputed set off claim, discovery requests by counsel for the plaintiffs in the United Kingdom matters, and the possibility of litigation claims against Equiti in favor of the Receiver.

During the Second Expense Period, Barnes & Thornburg reviewed and made suggested revisions to the First Report. At no charge to the receivership estate, it prepared the Receiver's initial fee motion covering the period from the inception of the receivership through December 31, 2020. A wide ranging objection to the fee motion was filed on behalf of the Youngs. With the assistance of the Receiver, counsel responded to the Youngs' objection, addressing all of the points raised in the objection. The Court ruled in favor of the Receiver on the motion and granted the Receiver's request for allowance and payment of fees and costs in full (Doc. 248).

  **B.**  **<u>Engelman</u>**

Engelman continued to serve as Arizona counsel for the Receiver during the Second Expense Period, principally in connection with the Casitas Property and the Sheridan Property. It assisted Barnes & Thornburg in preparing and recording proper deeds transferring the Casitas Property and Sheridan Property back to Keystone Business Trust in accordance with the Court's Order. Engleman also prepared and recorded a release of mechanic's lien which was executed by Michael Stewart, in order to release the mechanic's lien improperly recorded on the Sheridan Property, which assisted in paving the way for a sale of that property. Engelman also assisted Barnes & Thornburg by researching Arizona law as it pertained to the late charges and default interest asserted to be owed on the first trust deed loan against the Casitas Property.

IV.     **THE FEES AND COSTS OF THE RECEIVER AND ITS COUNSEL ARE REASONABLE AND SHOULD BE ALLOWED FOR PAYMENT**

It is a fundamental tenet of receivership law that expenses of administration incurred by the receiver, including those of the receiver, his counsel and others employed by him, constitute priority expenses for which compensation should be paid from the assets of the receivership. As explained in the leading treatise *Clark on Receivers:*

> The obligations and expenses which the court creates in its administration of the property are necessarily burdens on the property taken possession of, and this, irrespective of the question who may be the ultimate owner, or who may have the preferred lien, or who may invoke the receivership. The appointing court pledges its good faith that all duly authorized obligations incurred during the receivership shall be paid.

2 Clark, Ralph Ewing, *A Treatise on the Law and Practice of Receivers* § 637, p. 1052 (3rd ed. Rev. 1992).

The Receiver is an officer of the Court charged with a myriad of duties under the Receiver Order. Many of those duties do not lead to the direct and immediate recovery of assets or increase in the funds available for distribution to creditors. Because of the nature of the administrative and other services required in receiverships, the benefit a Receiver confers on receivership property cannot be determined based solely on the increase or decrease in the value of property in the Receiver's possession. As the Court explained in *Securities and Exchange Commission v. Elliott*, 953 F. 2d 1560, 1577 (11th Cir. 1992):

> [I]t is sometimes difficult to ascertain what type of benefits a receiver has bestowed on receivership property . . . . . [A] benefit to a secured party may take more subtle forms than a bare increase in monetary value. Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation. [Citations omitted.]

*Securities and Exchange Commission v. Elliott*, 953 F. 2d at 1577.

The Court has broad discretion in determining the reasonableness of fees to be awarded a receiver. *See In re San Vicente Medical Partners Ltd.*, 962 F. 2d 1402, 1409-1410 (9th Cir. 1992). The Court may evaluate the time and effort expended by the receiver with respect to specific projects and aspects of the administration of the estate and may look to a number of different factors under the case law in approving receiver's and counsel's fees. *In re San Vicente Medical Partners Ltd.*, 962 F. 2d at 1409-1410.

This Motion establishes that during the Second Expense Period, the Receiver, its deputies and professionals rendered reasonable, necessary and valuable services for the receivership estate that were beneficial to the estate and the parties in interest. As demonstrated herein and in the supporting declarations and exhibits, the Receiver, its deputies and professionals have performed substantial and wide-ranging tasks that were beneficial to the estate, including taking steps to market and sell, at fair market value, numerous parcels of real property for the benefit of the estate and continuing to bring funds into the estate so that these funds could not be diverted, misused or concealed. *See Federal Trade Commission v. Capital Acquisitions & Management Corp.*, 2005 U.S. Dist. LEXIS 18504 (N.D. Ill. August 26, 2005). The Receiver submits the fees

are reasonable in light of the services rendered and that the fees and expenses requested should be approved in their entirety.

The Receiver has on hand sufficient funds to pay all of the requested fees and costs that have been incurred through March 31, 2021. As set forth in the Financial Summary, the estate has $8,431,706.93 on hand through March 31, 2021, net of all fees and costs requested herein. Since that time, the Receiver has collected an additional $159,549.94 on account of the sale of the Casitas Property and is expecting to receive additional funds soon from the sale of the Sheridan Property, which means that the estate's cash on hand has gone up since the end of the Second Expense Period.

## V.     CONCLUSION

The Receiver respectfully requests that the Court grant this motion in its entirety, approve all of the fees and costs incurred by the Receiver and its professionals as set forth herein, authorize the payment of 80% of said fees and 100% of said costs, and enter the proposed order submitted concurrently herewith.

DATED:  May 24, 2021

/s/ Gary Owen Caris
Gary Owen Caris, Calif. Bar No. 088918
BARNES & THORNBURG LLP
2029 Century Park East, Suite 300
Los Angeles, CA  90067
Telephone: (310) 248-3880
Facsimile:  (310) 248-3894
Email: gcaris@btlaw.com

Attorney for Brick Kane of Robb Evans & Associates LLC, Receiver

- 18 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to parties or counsel registered through ECF. In addition, I hereby certify that I have mailed or served the foregoing document or paper to the following non-CM/ECF participants in the manner indicated by the non-participant's name:

>Aaron Stewart
>23800 North 73rd Place
>Scottsdale, AZ 85255

>/s/ Sarah Akerson