## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02594-RM-SKC

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

MEDIATRIX CAPITAL INC., et al.,

      Defendants,

And

MEDIATRIX CAPITAL FUND LTD., et al.,

      Relief Defendants.

---

### THIRD QUARTERLY REPORT OF RECEIVER'S ACTIVITIES COVERING THE PERIOD FROM APRIL 1, 2021 THROUGH JUNE 30, 2021

---

      TO THE HONORABLE RAYMOND P. MOORE, UNITED STATES DISTRICT JUDGE:

      COMES NOW, Brick Kane of Robb Evans & Associates LLC, and submits his Third Quarterly Report of Receiver's Activities, for the period from April 1, 2021 through June 30, 2021, attached hereto as Exhibit 1.

                      Respectfully submitted,

DATED: August 5, 2021               */s/ Gary Owen Caris*
                              Gary Owen Caris, CA Bar No. 088918
                              BARNES & THORNBURG LLP
                              2029 Century Park East, Suite 300
                              Los Angeles, CA 90067
                              Telephone: (310) 248-3880
                              Facsimile:  (310) 248-3894
                              Email: gcaris@btlaw.com

                              Attorneys for Brick Kane of Robb Evans & Associates LLC, Receiver

# EXHIBIT 1

**Brick Kane of Robb Evans & Associates LLC**
**Receiver of**
**Mediatrix Capital Fund LTD., et al.**

**THIRD QUARTERLY REPORT OF RECEIVER'S ACTIVITIES**

**April 1, 2021 through June 30, 2021**

This report covers the activities of the Receiver[1] since the second report (Doc. 257). Section XI of the Order Appointing Receiver (Doc. 153) (Order) directs the Receiver to file a quarterly report and accounting of the Receiver's administration. This is the third report to the Court on the progress of the receivership. It does not constitute an audit of financial condition and is intended only to provide information for use by the Court in assessing the progress of the receivership.

The Order specifies that the Quarterly Status Report shall contain the following:

A.      A summary of the operations of the Receiver;

B.      The amount of cash on hand, the amount and nature of accrued administrative expenses and the amount of unencumbered funds in the estate;

C.      A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.      A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.      A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F.      A list of all known creditors with their addresses and the amounts of their claims; and,

G.      The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

---

[1] Reference to the Receiver in this report means the Receiver, the Receiver's deputies, the Receiver's staff, and his counsel.

## Summary of Operations

During this reporting period, the Receiver has concentrated on marketing the real properties set forth in the first quarterly report. There have been no additional real properties identified. The status of each property is discussed below. In addition, the Receiver has performed a partial forensic analysis and accounting reconstruction of assets and funds transferred in violation of this Court's Asset Freeze Order, also discussed below.

## The amount of cash on hand, the amount and nature of accrued administrative expenses and the amount of unencumbered funds in the estate

As of June 30, 2021, the Receiver was holding $8,669,600.58 net of $135,456.83 in accrued and unpaid fees and costs. As detailed on Exhibit A, accrued and unpaid fees and costs for this reporting period for the Receiver and his staff total $57,020.26 and accrued and unpaid fees and costs for the Receiver's counsel total $50,895.81. A motion for approval of fees and costs for this period of the receivership will be filed not later than August 15, 2021 as provided by the Order.

## Schedule of Receipts and Disbursements

Attached at Exhibit A is the Receivership's Administrative Report that details receipts and disbursements by month (pages 1-4). Exhibit A also details receipts and disbursements by defendant and the Receiver's fees and costs by billing codes required by the Securities and Exchange Commission.

## Description of all known Receivership Property

### *Real Property*

The descriptions of the following real properties were previously provided to the Court. The current status of each property is described below.

### 1201 Lloyd's Road Little Elm, TX

This property is under a sale contract for $3,550,000. Shortly before filing this report, the Receiver filed a motion seeking Court approval of the sale, subject to an overbid procedure.

### 1197 Lloyds Road Little Elm, TX

This property is being marketed for sale.

**8221 Sheridan St. Scottsdale, AZ**

As previously reported, the Court approved the Receiver's motion confirming the sale of this property (Doc 247). The sales transaction was completed and net proceeds of $118,755.42 were received.

**7349 Casitas Del Rio Scottsdale, AZ**

As previously reported, the Court approved the Receiver's motion confirming the sale of this property (Doc 247). The sales transaction was completed and net proceeds of $160,122.15 were received.

**Lots in Port Charlotte, Florida**

The status of this property has not changed since the second quarterly report.

## *Personal Property*

The description of personal property was previously provided to the Court.

## Liquidated and Unliquidated Claims

As previously reported, the Receiver was evaluating the potential liquidated and unliquidated claims pertaining to Equiti US LLC, Equiti Capital UK Limited and Equiti Armenia CJSC (collectively, "Equiti"). There have been no further developments as to Equiti.

The Plaintiff provided additional documents to the Receiver during the reporting period. Among those documents, information was provided as to commission payments totaling $2,819,035 made by the entity defendants to sales agents. Of the total commission payments, $1,588,504 appear to have been paid to domestic sales agents. The Receiver is analyzing whether to seek to recoup the commission payments and the most cost-effective means of doing so.

## Creditor List

There has been no new information since the first quarterly report.

## Forensic Analysis and Accounting Reconstruction

On September 13, 2019, the Court entered the Asset Freeze Order, thereby freezing the assets of certain named Defendants and Relief Defendants, which included Michael Stewart, Victoria Stewart, and the Keystone Business Trust. The Asset Freeze Order prohibited Defendants and Relief Defendants from "any disposition, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal whatsoever of any of their funds or other assets or things of value presently held by them, under their control or over which they exercise actual or apparent investment or other authority, in whatever form such assets may presently exist and wherever located."

On July 17, 2020, the SEC filed a Notice of Violation of Asset Freeze (Doc 137). The SEC's filing noted that Michael Stewart, Victoria Stewart, and the Keystone Business Trust, with assistance from family members and others, had transferred the ownership of several properties, drawn additional money from properties, and re-routed and diverted funds drawn from these properties.

In attempting to trace and claw back the monies obtained in violation of the Asset Freeze Order, the Receiver has reviewed and analyzed various documents and records obtained, as well as reconstructed financial transactions based on these documents and records. The Receiver has discovered that, subsequent to the Asset Freeze Order, at least $738,000 was obtained from properties owned or controlled by Michael Stewart, and diverted by Michael Stewart, in an apparent effort to conceal assets from the Court.

The funds were primarily from the proceeds generated by two properties, with involvement of various entities, a trust, family members and others as follows:

- 3821 N. 85th Place, Scottsdale, AZ 85251 (85th Street Property): Approximately $420,000 was obtained from a refinance and subsequent sale of this property;

- 7349 E. Casitas Del Rio, Scottsdale, AZ 85255 (Casitas Property): $318,547.50 was obtained from a refinance of this property;

- Wind River Jiroch LLC

- ALA Trust

- T Squared Contractors LLC

- Aaron Stewart

More information and details are discussed below.

*85th Street Property*

Subsequent to the Asset Freeze Order, the 85th Street Property was transferred by Defendant Michael Stewart and Relief Defendant Victoria Stewart to Wind River Jiroch LLC in September 2019.

Thereafter, approximately $420,000 was obtained from the 85th Street Property, including net proceeds of $284,347.50 through a refinance in October 2019 and $135,162.44 through a sale in January 2020.

The net refinance proceeds of $284,347.50 were initially deposited into Enterprise Bank & Trust, in an account ending in 3526 (Account 3526) on October 8, 2019 (Exhibit B), which is Jiroch Law PLC's account.  Jiroch Law PLC is James Roach II's (Roach) law firm.  Based on banking records from Enterprise Bank & Trust, this account was opened on April 13, 2018. A summary of receipts and disbursements for this account is under Exhibit C.  As shown, this account was dormant, having no transactions from June 2018 until $284,347.50 was received in October 2019.  There were no other receipts after October 2019.  Therefore, this account appears to have been used as a conduit to divert the proceeds from the refinance of the 85th Street Property.  Roach is an Arizona based attorney who has done legal work for Michael and Victoria Stewart since 2004.  He also assisted them by using Wind River Jiroch LLC and ALA Trust to draw money from properties and divert funds after the Asset Freeze Order, as discussed below[2].

$284,347.50 was immediately transferred to Enterprise Bank & Trust, to an account ending in 1747 (Account 1747) on the same day that the refinance was completed (Exhibit D). According to the banking records obtained from Enterprise Bank & Trust, Account 1747, in the name of Wind River Jiroch LLC, was opened on September 26, 2019, subsequent to the Asset Freeze Order, which appeared to be used to re-route and divert the funds associated with Michael Stewart and his assets.  More information about Wind River Jiroch LLC is provided below.

In addition to the refinance, the 85th Street Property was later sold for $465,000 on January 3, 2020, in further violation of the Asset Freeze Order.  The net sales proceeds of $135,162.44 were deposited into ALA Trust's bank account on January 6, 2020.

ALA Trust was also set up after the Asset Freeze Order.  This trust was used to further conceal and divert various assets and funds.  More information about the ALA Trust is provided below.

---

[2] Roach denies knowingly violating the Asset Freeze Order and the Receiver is not opining in this report on whether the steps taken by Roach as described herein were taken in knowing violation of the Asset Freeze Order.

## Casitas Property

Similar to the 85th Street Property, the Casitas Property was first transferred by Michael and Victoria Stewart to Wind River Jiroch LLC in September 2019 after the Asset Freeze Order. This property was further transferred from Wind River Jiroch LLC to ALA Trust in January 2020, and then finally transferred to Aaron Stewart in June 2020. These transfers were in violation of the Asset Freeze Order.

Based on the banking records and other documents that the Receiver has reviewed and analyzed, the Casitas Property was refinanced and net proceeds of $318,547.50 were received by Aaron Stewart on June 30, 2020. The funds were further transferred between ALA Trust, T Squared Contractors LLC and Aaron Stewart. More details about the movement and diversion of funds are provided below.

## Wind River Jiroch LLC

Wind River Jiroch LLC (Wind River) was incorporated in Wyoming on April 23, 2013. According to its amended and restated operating agreement dated September 25, 2019, this LLC is 100% owned and managed by Roach.

Wind River also acts as the trustee for ALA Trust, which was Michael Stewart's trust and set up by Roach after the Asset Freeze Order. More information about ALA Trust is discussed below.

Based on the records and documents that are currently available to the Receiver, Wind River had two bank accounts with Enterprise Bank & Trust. Both accounts were opened after the Asset Freeze Order. The Receiver reviewed and analyzed Wind River's banking records and other related documents and performed an accounting reconstruction based on these documents, as summarized below.

The primary funding for Wind River's accounts at Enterprise Bank & Trust was the net proceeds of $284,347.50 generated from the 85th Street Property, which was received on October 8, 2019, and re-routed through Jiroch Law PLC's Account 3526. Shortly thereafter, Wind River transferred $147,100 to Michael Stewart's brother, Shawn Stewart, $62,500 was sent to ALA Trust and $9,500 was withdrawn in cash on October 9, 2019, as shown in Exhibit D.

On the same day, Shawn Stewart sent out $76,000 to Drohan Lee LLP and $71,000 to Kaplan Hecker & Fink LLP for legal retainers (Exhibit E), as instructed by Michael Stewart (Exhibit F), in further violation of the Asset Freeze Order. The Receiver has been in communication with these attorneys. Kaplan Hecker & Flink LLP placed $100,000 into a segregated IOLTA escrow account. The entire $100,000 was turned over to the receivership estate on June 8, 2021, in response to the Receiver's request.

Wind River Jiroch LLC
Summary of Receipts & Disbursements
All transactions

|  | 10/7/2019~ 12/31/2019 | Year 2020 | 1/1/2021~ 3/31/2021 | TOTAL |
|---|---|---|---|---|
| Beginning Balance | 0.00 | 23,532.92 | 90.95 | 0.00 |
| Receipts |  |  |  |  |
| Jiroch Law PLC IOTA | 284,347.50 | 0.00 | 0.00 | 284,347.50 |
| Stephen P Sorensen (Rent) | 12,800.00 | 16,000.00 | 0.00 | 28,800.00 |
| JetClosing Inc. [1] | 0.00 | 5,571.00 | 0.00 | 5,571.00 |
| Total Receipts | 297,147.50 | 21,571.00 | 0.00 | 318,718.50 |
| | | | | |
| Disbursements |  |  |  |  |
| Shawn Stewart | 147,100.00 | 0.00 | 0.00 | 147,100.00 |
| ALA Trust | 62,500.00 | 14,300.00 | 0.00 | 76,800.00 |
| Transfers Per Request of Roach | 50,418.75 | 30,668.85 | 0.00 | 81,087.60 |
| Cash Withdrawals | 9,500.00 | 0.00 | 0.00 | 9,500.00 |
| Weststar Pacific Mortgage | 2,717.17 | (90.14) | 0.00 | 2,627.03 |
| Tiffany and Bosco P.A. | 1,312.50 | 0.00 | 0.00 | 1,312.50 |
| Bank Fees | 66.16 | 134.26 | 11.98 | 212.40 |
| Total Disbursements | 273,614.58 | 45,012.97 | 11.98 | 318,639.53 |
| | | | | |
| Net Receipts (Disbursements) | 23,532.92 | (23,441.97) | (11.98) | 78.97 |
| | | | | |
| End Balance | 23,532.92 | 90.95 | 78.97 | 78.97 |

[1] JetClosing Inc. was the escrow company used for the acquisition of 8221 Sheridan St., Scottsdale, Arizona (Sheridan Property).  The Sheridan Property was purchased by ALA Trust in July 2020. Funds used to acquire the Sheridan Property included $5,000 from Aaron Stewart and $92,722 from ALA Trust on June 30,2020 and July 1, 2020, respectively. A $5,571 refund was received from the escrow after closing.

As shown above, Wind River received approximately $313,000 from refinancing property and from rent, of which $147,100 was transferred to Shawn Stewart, $76,800 was transferred to ALA Trust, and approximately $81,000 was paid to unknown recipients per Roach's request, from October 8, 2019 to March 16, 2021.

### *ALA Trust*

ALA Trust was created on October 15, 2019 and a trust agreement was entered into between Shawn Stewart as Grantor and Wind River as Trustee.  The trust agreement was executed by Shawn Stewart and Roach on October 28, 2019 (Exhibit G). According to Shawn Stewart, Michael Stewart texted him on October 28, 2019 (Exhibit H), stating that "I need you to be a Grantor for my trust.  Basically you form it as the Grantor and assign it to my attorney as the Trust Protector and he then can assign assets to the trust."  Therefore, ALA Trust appears to have been created to divert Michael Stewart's assets.  It was set up by Roach, Michael Stewart's attorney, and Shawn Stewart was named Grantor at Michael Stewart's request.

The Receiver reviewed and analyzed ALA Trust's banking records and other documents, and reconstructed its financial transactions based on these documents.  Cash receipts and disbursements from October 29, 2019 to September 30, 2020 for ALA Trust are summarized under Exhibit I.

From October 2019 to September 2020, ALA Trust received approximately $518,000 primarily from two sources:

1. $76,800 from Wind River and $135,162.44 from the close of escrow in January 2020, generated from a refinance and sale of the 85th Street Property, respectively.

2. $300,000 received on June 30, 2020, which was re-routed through Aaron Stewart from the refinance of the Casitas Property in June 2020.

Based on ALA Trust's accounting reconstruction summary, these funds were re-routed from ALA Trust and further diverted to others from October 2019 to September 2020 as follows:

| Name of Payees | Amount | Relationship with Michael Stewart |
|---|---|---|
| T-Squared Constractors LLC | $  145,000.00 | Owned by Michael Stewart's daughter |
| JetClosing Inc. | 92,722.00 | Sheridan Property escrow |
| SWH Funding LLC | 7,294.10 | Sheridan Property lender |
| Jiroch Law PLC | 80,300.00 | Roach's law firm |
| Aaron Stewart | 74,850.00 | Michael Stewart's son |
| Victoria Stewart | 52,200.00 | Michael Stewart's wife |
| Arkonik Limited | 32,996.13 | Land Rover acqusition |
| | $  485,362.23 | |

The remaining balance of $24,730.41 in the ALA Trust bank account was turned over by Wells Fargo Clearing Services LLC to the receivership estate in November 2020.

As discussed above, Roach used Wind River and ALA Trust to assist Michael Stewart in various property transfers and the diversion of property proceeds after the Asset Freeze Order. As shown above, Roach also received $80,300 from ALA Trust from February to July 2020. Including $81,087.60 and $9,500 in cash paid by Wind River discussed above, more than $170,000 from these property proceeds generated after the Asset Freeze Order was paid to Roach and others at his request. The Receiver is still investigating the nature of these payments.

### T Squared Contractors LLC

T Squared Contractors LLC (T Squared) was formed on October 29, 2019 in Arizona, which is solely owned and managed by Michael Stewart's daughter, Kathleen Stewart. T Squared was formed after the Asset Freeze Order. As shown in its Articles of Organization in Exhibit J, Kathleen Stewart listed an email address, defender1989@protomail.com, which also was the email address for Michael Stewart, based on the text exchanges between Shawn Stewart and Michael Stewart in October 2019 (Exhibit F, page 9).

The Receiver reviewed and analyzed the banking records of T Squared, and reconstructed its financial transactions based on its banking records and documents that are currently available. The cash receipts and disbursements from November 18, 2019 to February 20, 2021 for T Squared are summarized under Exhibit K.

According to its banking records, the primary funding for T Squared was from ALA Trust. T Squared received $145,000 from ALA Trust between July and September 2020, which was diverted from the proceeds of the Casitas Property refinance. This money was primarily paid to Kathleen Stewart ($53,350), Aaron Stewart ($11,400), and for miscellaneous expenditures.

### Aaron Stewart

As discussed above, Aaron Stewart was involved in the diversion of funds and assets for Michael Stewart, in violation of the Asset Freeze Order.

On June 30, 2020, Aaron Stewart received $318,547.50 from the refinance of the Casitas Property. He immediately sent $300,000 to ALA Trust and $5,000 to JetClosing Inc., the escrow company used in the acquisition of the Sheridan Property. He also made a cash withdrawal of $10,000, on the same day (Exhibit L).

In addition, Aaron Stewart received $74,850 from ALA Trust between October 2019 and May 2020, from the proceeds generated by the 85th Street Property. He also received an additional $11,400 from T Squared between July and September 2020, which was first transferred from his account to ALA Trust, re-routed through T Squared, and then returned to him, from the proceeds of the Casitas Property refinance.

Therefore, Aaron Stewart received at least $96,250 from the funds generated by these properties in violation of the Asset Freeze Order as summarized below.

| Time Period | Amount | From | Fund Source |
|---|---|---|---|
| October 2019 to May 2020 | $ 74,850.00 | ALA Trust | 85th Street Property |
| June 2020 | 10,000.00 | Cash Withdrwal | Casitas Property |
| July to September 2020 | 11,400.00 | T Squared | Casitas Property |
| | $ 96,250.00 | | |

The Receiver reviewed and analyzed Aaron Stewart's banking records at JP Morgan Chase, which accounts were opened on October 7, 2019 after the Asset Freeze Order. The Receiver also reconstructed the financial transactions based on the bank records, which are summarized under Exhibit M.

## Receiver's Recommendation as to Continuation of Receivership

The Receiver recommends continuing the receivership in order to liquidate and maximize the value of the real property and tangible and intangible personal property assets that have value for the receivership estate and that are discussed in this and prior reports. In addition, the Receiver is analyzing certain pre-receivership transfers made by the defendants. Some of these payments may have been fraudulent conveyances and potentially subject to claw back. Also, as discussed above, some of these payments were made in violation of the Asset Freeze Order and should be returned to the receivership estate.

Respectfully Submitted,

        /s/

Brick Kane of Robb Evans & Associates LLC
Receiver

# Exhibit A

**SEC v. Mediatrix Capital Inc. et al. Receivership QSF**
# Receivership Administrative Report by Month
**From Inception (September 11, 2020) to June 30, 2021**

| | Previously Reported | Apr 21 | May 21 | Jun 21 | 4/1/21~ 6/30/21 | TOTAL |
|---|---|---|---|---|---|---|
| **Defendant & Corporate Funds** | | | | | | |
| A.L.A. Trust | | | | | | |
| Kaplan Hecker & Fink LLP | 0.00 | 0.00 | 0.00 | 100,000.00 | 100,000.00 | 100,000.00 |
| Wells Fargo Bank NA Clearing | 24,730.41 | 0.00 | 0.00 | 0.00 | 0.00 | 24,730.41 |
| Total A.L.A. Trust | 24,730.41 | 0.00 | 0.00 | 100,000.00 | 100,000.00 | 124,730.41 |
| | | | | | | |
| **BLUEISLE_WL** | | | | | | |
| Advanced Markets (UK) Ltd x1818 | 853,940.57 | 0.00 | 0.00 | 0.00 | 0.00 | 853,940.57 |
| Total BLUEISLE_WL | 853,940.57 | 0.00 | 0.00 | 0.00 | 0.00 | 853,940.57 |
| | | | | | | |
| **BLUEISLE2_WL** | | | | | | |
| Advanced Markets (UK) Ltd x1822 | 50,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,000.00 |
| Total BLUEISLE2_WL | 50,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,000.00 |
| | | | | | | |
| Bryant /Bev Sewall or Barb Yoss | | | | | | |
| USAA Federal Credit Union x0736 | 3.91 | 0.00 | 0.00 | 0.00 | 0.00 | 3.91 |
| Total Bryant /Bev Sewall or Barb Yoss | 3.91 | 0.00 | 0.00 | 0.00 | 0.00 | 3.91 |
| | | | | | | |
| Bryant E. Sewall | | | | | | |
| Banco Popular xxxx8741 | 112,188.44 | 0.00 | 0.00 | 0.00 | 0.00 | 112,188.44 |
| Navy Federal CU xxxx7026 | 5.02 | 0.00 | 0.00 | 0.00 | 0.00 | 5.02 |
| Navy Federal CU xxxx7165 | 452.20 | 0.00 | 0.00 | 0.00 | 0.00 | 452.20 |
| Sale of 2012 Jeep Wrangler | 9,266.62 | 0.00 | 0.00 | 0.00 | 0.00 | 9,266.62 |
| Service Credit Union xxx86 | 181.26 | 0.00 | 0.00 | 0.00 | 0.00 | 181.26 |
| USAA Federal Savings x5212 | 1,502.31 | 0.00 | 0.00 | 0.00 | 0.00 | 1,502.31 |
| Total Bryant E. Sewall | 123,595.85 | 0.00 | 0.00 | 0.00 | 0.00 | 123,595.85 |
| | | | | | | |
| Island Technologies LLC | | | | | | |
| Banco Popular xxxx0846 | 500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 500.00 |
| Banco Popular xxxx0862 | 500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 500.00 |
| Banco Popular xxx9027 | 61,564.52 | 0.00 | 0.00 | 0.00 | 0.00 | 61,564.52 |
| Banco Popular xxx9329 | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 |
| Total Island Technologies LLC | 62,579.52 | 0.00 | 0.00 | 0.00 | 0.00 | 62,579.52 |
| | | | | | | |
| Keystone Business Trust | | | | | | |
| BBVA Compass xxxx3827 | 1,359,337.46 | 0.00 | 0.00 | 0.00 | 0.00 | 1,359,337.46 |
| BBVA Compass xxxx3921 | 10,239.84 | 0.00 | 0.00 | 0.00 | 0.00 | 10,239.84 |
| Total Keystone Business Trust | 1,369,577.30 | 0.00 | 0.00 | 0.00 | 0.00 | 1,369,577.30 |
| | | | | | | |
| Michael & Victoria Stewart | | | | | | |
| MidFirst Bank xxxx8270 | 3,905.42 | 0.00 | 0.00 | 0.00 | 0.00 | 3,905.42 |
| USAA Federal Savings xxxx8132 | 1,717.03 | 0.00 | 0.00 | 0.00 | 0.00 | 1,717.03 |
| Total Michael & Victoria Stewart | 5,622.45 | 0.00 | 0.00 | 0.00 | 0.00 | 5,622.45 |
| | | | | | | |
| Michael Stewart | | | | | | |
| Banco Popular xxxx1784 | 30,050.66 | 0.00 | 0.00 | 0.00 | 0.00 | 30,050.66 |
| Hughes Federal CU xxx6503 | 68.64 | 0.00 | 0.00 | 0.00 | 0.00 | 68.64 |
| Wells Fargo Bank xxxx9286 | 450.91 | 0.00 | 0.00 | 0.00 | 0.00 | 450.91 |
| Total Michael Stewart | 30,570.21 | 0.00 | 0.00 | 0.00 | 0.00 | 30,570.21 |

**SEC v. Mediatrix Capital Inc. et al. Receivership QSF**
**Receivership Administrative Report by Month**
From Inception (September 11, 2020) to June 30, 2021

| | Previously Reported | Apr 21 | May 21 | Jun 21 | 4/1/21~ 6/30/21 | TOTAL |
|---|---|---|---|---|---|---|
| **Michael Young** | | | | | | |
| Banco Popular xxxx9843 | 262,773.38 | 0.00 | 0.00 | 0.00 | 0.00 | 262,773.38 |
| Key Bank xxxx6425 | 5,334.52 | 0.00 | 0.00 | 0.00 | 0.00 | 5,334.52 |
| Key Bank xxxx7726 | 25,934.98 | 0.00 | 0.00 | 0.00 | 0.00 | 25,934.98 |
| UBS Financial Services xxx7885 | 311,095.84 | 0.00 | 0.00 | 0.00 | 0.00 | 311,095.84 |
| **Total Michael Young** | 605,138.72 | 0.00 | 0.00 | 0.00 | 0.00 | 605,138.72 |
| | | | | | | |
| **Sale of PR Property** | | | | | | |
| Drohan Lee LLP | 1,870,674.53 | 0.00 | 0.00 | 0.00 | 0.00 | 1,870,674.53 |
| **Total Sale of PR Property** | 1,870,674.53 | 0.00 | 0.00 | 0.00 | 0.00 | 1,870,674.53 |
| | | | | | | |
| **Salve Regina Trust** | | | | | | |
| UBS Financial Services xxx7422 | 1,429,941.54 | 0.00 | 0.00 | 0.00 | 0.00 | 1,429,941.54 |
| **Total Salve Regina Trust** | 1,429,941.54 | 0.00 | 0.00 | 0.00 | 0.00 | 1,429,941.54 |
| | | | | | | |
| **Sandy Toes LLC** | | | | | | |
| Drohan Lee LLP | 2,434,590.35 | 0.00 | 0.00 | 0.00 | 0.00 | 2,434,590.35 |
| **Total Sandy Toes LLC** | 2,434,590.35 | 0.00 | 0.00 | 0.00 | 0.00 | 2,434,590.35 |
| | | | | | | |
| **Victoria Stewart** | | | | | | |
| Wells Fargo Bank xxxx9200 | 500.96 | 0.00 | 0.00 | 0.00 | 0.00 | 500.96 |
| **Total Victoria Stewart** | 500.96 | 0.00 | 0.00 | 0.00 | 0.00 | 500.96 |
| | | | | | | |
| **West Beach LLC** | | | | | | |
| Banco Popular xxxx5590 | 5,662.86 | 0.00 | 0.00 | 0.00 | 0.00 | 5,662.86 |
| **Total West Beach LLC** | 5,662.86 | 0.00 | 0.00 | 0.00 | 0.00 | 5,662.86 |
| | | | | | | |
| **Total Defendant & Corporate Funds** | 8,867,129.18 | 0.00 | 0.00 | 100,000.00 | 100,000.00 | 8,967,129.18 |
| Sale of 7349 E Casitas Del Rio | 0.00 | 0.00 | 159,549.94 | 572.21 | 160,122.15 | 160,122.15 |
| Sale of 8221 E. Sheridan | 0.00 | 0.00 | 0.00 | 118,755.42 | 118,755.42 | 118,755.42 |
| Interest Income | 4,956.09 | 1,050.85 | 1,097.25 | 1,082.19 | 3,230.29 | 8,186.38 |
| **Total Funds Collected** | 8,872,085.27 | 1,050.85 | 160,647.19 | 220,409.82 | 382,107.86 | 9,254,193.13 |
| | | | | | | |
| **Expenses** | | | | | | |
| **DCC Islands Foundation** | | | | | | |
| Annual Registration Fees BAH | 0.00 | 4,715.00 | 0.00 | 0.00 | 4,715.00 | 4,715.00 |
| **Total DCC Islands Foundation** | 0.00 | 4,715.00 | 0.00 | 0.00 | 4,715.00 | 4,715.00 |
| | | | | | | |
| **Real Property Expenses** | | | | | | |
| **1197 Lloyds Rd Little Elm, TX** | | | | | | |
| Appraisal | 2,400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,400.00 |
| Electricity | 74.04 | 17.86 | 18.50 | 23.26 | 59.62 | 133.66 |
| Lawn and Yard Maintenance | 0.00 | 0.00 | 0.00 | 1,550.00 | 1,550.00 | 1,550.00 |
| Property Taxes | 1,172.62 | 0.00 | 0.00 | 0.00 | 0.00 | 1,172.62 |
| **Total 1197 Lloyds Rd Little Elm, TX** | 3,646.66 | 17.86 | 18.50 | 1,573.26 | 1,609.62 | 5,256.28 |
| | | | | | | |
| **1201 Lloyds Rd. Little Elm, TX** | | | | | | |
| Appraisal Services | 3,500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,500.00 |

**SEC v. Mediatrix Capital Inc. et al. Receivership QSF**
## Receivership Administrative Report by Month
### From Inception (September 11, 2020) to June 30, 2021

| | Previously Reported | Apr 21 | May 21 | Jun 21 | 4/1/21~ 6/30/21 | TOTAL |
|---|---|---|---|---|---|---|
| Beehive Ag Services | 1,190.75 | 0.00 | 0.00 | 0.00 | 0.00 | 1,190.75 |
| Electricity | 1,812.84 | 229.43 | 191.38 | 128.74 | 549.55 | 2,362.39 |
| Hay Cultivation Services | 0.00 | 0.00 | 0.00 | 6,125.00 | 6,125.00 | 6,125.00 |
| Insurance | 6,048.06 | 1,163.22 | 1,202.00 | 1,163.22 | 3,528.44 | 9,576.50 |
| Lawn and Yard Maintenance | 1,236.00 | 0.00 | 0.00 | 1,648.38 | 1,648.38 | 2,884.38 |
| Locksmith Services | 418.32 | 0.00 | 0.00 | 0.00 | 0.00 | 418.32 |
| Maintenance | 285.00 | 180.10 | 0.00 | 925.00 | 1,105.10 | 1,390.10 |
| Property Taxes | 80,955.93 | 0.00 | 0.00 | 0.00 | 0.00 | 80,955.93 |
| **Total 1201 Lloyds Rd. Little Elm, TX** | 95,446.90 | 1,572.75 | 1,393.38 | 9,990.34 | 12,956.47 | 108,403.37 |
| | | | | | | |
| **5406 S. Cottonwood Ct.** | | | | | | |
| Property Insurance | 3,269.04 | 1,290.41 | 1,333.43 | 1,290.41 | 3,914.25 | 7,183.29 |
| Property Taxes | 22,598.32 | 0.00 | 0.00 | 0.00 | 0.00 | 22,598.32 |
| **Total 5406 S. Cottonwood Ct.** | 25,867.36 | 1,290.41 | 1,333.43 | 1,290.41 | 3,914.25 | 29,781.61 |
| | | | | | | |
| **7439 Casitas Del Rio Dr AZ** | | | | | | |
| Appraisal Services | 1,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,200.00 |
| Insurance | 1,950.66 | 372.74 | 111.82 | 0.00 | 484.56 | 2,435.22 |
| Locksmith Services | 369.72 | 0.00 | 0.00 | 0.00 | 0.00 | 369.72 |
| Mortgage/Heloc | 35,763.86 | 4,591.22 | 0.00 | 0.00 | 4,591.22 | 40,355.08 |
| **Total 7439 Casitas Del Rio Dr AZ** | 39,284.24 | 4,963.96 | 111.82 | 0.00 | 5,075.78 | 44,360.02 |
| | | | | | | |
| **8221 E Sheridan Scottsdale, AZ** | | | | | | |
| Appraisal Services | 1,725.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,725.00 |
| Insurance | 1,588.53 | 309.45 | 319.77 | 61.88 | 691.10 | 2,279.63 |
| Locksmith Services | 493.72 | 0.00 | 0.00 | 0.00 | 0.00 | 493.72 |
| Mortgage Payments | 25,529.00 | 3,647.00 | 0.00 | 3,647.00 | 7,294.00 | 32,823.00 |
| Property Taxes | 2,080.19 | 0.00 | 0.00 | 0.00 | 0.00 | 2,080.19 |
| **Total 8221 E Sheridan Scottsdale, AZ** | 31,416.44 | 3,956.45 | 319.77 | 3,708.88 | 7,985.10 | 39,401.54 |
| | | | | | | |
| **Port Charlotte, FL Lots** | | | | | | |
| Appraisal Fees | 550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 550.00 |
| Insurance | 65.41 | 13.82 | 14.28 | 13.82 | 41.92 | 107.33 |
| Property Taxes | 3,442.46 | 0.00 | 0.00 | 0.00 | 0.00 | 3,442.46 |
| **Total Port Charlotte, FL Lots** | 4,057.87 | 13.82 | 14.28 | 13.82 | 41.92 | 4,099.79 |
| | | | | | | |
| **Total Real Property Expenses** | 199,719.47 | 11,815.25 | 3,191.18 | 16,576.71 | 31,583.14 | 231,302.61 |
| | | | | | | |
| **Receiver Fees & Costs** | | | | | | |
| Fees | | | | | | |
| Receiver | | | | | | |
| B. Kane | 17,715.60 | 2,154.60 | 1,436.40 | 820.80 | 4,411.80 | 22,127.40 |
| **Total Receiver** | 17,715.60 | 2,154.60 | 1,436.40 | 820.80 | 4,411.80 | 22,127.40 |
| | | | | | | |
| Deputies | | | | | | |
| F. Jen | 301.50 | 4,221.00 | 1,658.25 | 0.00 | 5,879.25 | 6,180.75 |
| A. Jen | 10,704.60 | 1,265.40 | 0.00 | 34.20 | 1,299.60 | 12,004.20 |
| C. Callahan | 21,847.50 | 1,170.00 | 3,285.00 | 360.00 | 4,815.00 | 26,662.50 |
| C. DeCius | 3,511.35 | 729.00 | 364.50 | 704.70 | 1,798.20 | 5,309.55 |

**SEC v. Mediatrix Capital Inc. et al. Receivership QSF**
## Receivership Administrative Report by Month
From Inception (September 11, 2020) to June 30, 2021

| | Previously Reported | Apr 21 | May 21 | Jun 21 | 4/1/21~ 6/30/21 | TOTAL |
|---|---|---|---|---|---|---|
| H. Jen | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 |
| K. Johnson | 27,394.20 | 4,160.70 | 4,040.10 | 1,899.45 | 10,100.25 | 37,494.45 |
| T. Chung | 9,859.05 | 11,396.70 | 7,115.40 | 9,376.65 | 27,888.75 | 37,747.80 |
| Total Deputies | 73,633.20 | 22,942.80 | 16,463.25 | 12,375.00 | 51,781.05 | 125,414.25 |
| | | | | | | |
| Total Fees | 91,348.80 | 25,097.40 | 17,899.65 | 13,195.80 | 56,192.85 | 147,541.65 |
| | | | | | | |
| Receiver Costs | | | | | | |
| Bank Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Information Research Costs | 0.00 | 0.00 | 102.78 | 218.20 | 320.98 | 320.98 |
| Postage & Delivery | 61.61 | 4.08 | 79.75 | 3.57 | 87.40 | 149.01 |
| Website Support | 514.59 | 275.03 | 102.00 | 42.00 | 419.03 | 933.62 |
| Total Receiver Costs | 576.20 | 279.11 | 284.53 | 263.77 | 827.41 | 1,403.61 |
| | | | | | | |
| Legal Fees & Costs | | | | | | |
| Barnes & Thornburg LLP | | | | | | |
| Legal Fees | 135,896.95 | 16,988.90 | 21,151.10 | 10,912.35 | 49,052.35 | 184,949.30 |
| Legal Costs | 1,794.13 | 545.41 | 46.70 | 90.65 | 682.76 | 2,476.89 |
| Total Barnes & Thornburg LLP | 137,691.08 | 17,534.31 | 21,197.80 | 11,003.00 | 49,735.11 | 187,426.19 |
| | | | | | | |
| Engelman Berger, PC | | | | | | |
| Legal Costs | 212.79 | 0.00 | 39.70 | 0.00 | 39.70 | 252.49 |
| Legal Fees | 10,830.00 | 1,121.00 | 0.00 | 0.00 | 1,121.00 | 11,951.00 |
| Total Engelman Berger, PC | 11,042.79 | 1,121.00 | 39.70 | 0.00 | 1,160.70 | 12,203.49 |
| | | | | | | |
| Total Legal Fees & Costs | 148,733.87 | 18,655.31 | 21,237.50 | 11,003.00 | 50,895.81 | 199,629.68 |
| | | | | | | |
| Total Receiver Fees & Costs | 240,658.87 | 44,031.82 | 39,421.68 | 24,462.57 | 107,916.07 | 348,574.94 |
| | | | | | | |
| Total Expenses | 440,378.34 | 60,562.07 | 42,612.86 | 41,039.28 | 144,214.21 | 584,592.55 |
| | | | | | | |
| Fund Balance | 8,431,706.93 | (59,511.22) | 118,034.33 | 179,370.54 | 237,893.65 | 8,669,600.58 |

**SEC v. Mediatrix Capital Inc. et al. Receivership QSF**
**Receivership Administrative Report - by Class Quarterly**
From Inception (September 11, 2020) to June 30, 2021

| | Previously Reported | Sewall | Young | A.L.A. Trust | Asset Analysis & Recovery | Asset Disposition | Case Administration | Accounting /Auditing | Forensic Accounting | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| **Defendant & Corporate Funds** | | | | | | | | | | |
| **A.L.A. Trust** | | | | | | | | | | |
| Kaplan Hecker & Fink LLP | 0.00 | 0.00 | 0.00 | 100,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100,000.00 |
| Wells Fargo Bank NA Clearing | 24,730.41 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 24,730.41 |
| **Total A.L.A. Trust** | 24,730.41 | 0.00 | 0.00 | 100,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 124,730.41 |
| **BLUEISLE_WL** | | | | | | | | | | |
| Advanced Markets (UK) Ltd x1818 | 853,940.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 853,940.57 |
| **Total BLUEISLE_WL** | 853,940.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 853,940.57 |
| **BLUEISLE2_WL** | | | | | | | | | | |
| Advanced Markets (UK) Ltd x1822 | 50,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,000.00 |
| **Total BLUEISLE2_WL** | 50,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,000.00 |
| **Bryant / Bev Sewall or Barb Voss** | | | | | | | | | | |
| USAA Federal Credit Union x0736 | 3.91 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3.91 |
| **Total Bryant / Bev Sewall or Barb Voss** | 3.91 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3.91 |
| **Bryant E. Sewall** | | | | | | | | | | |
| Banco Popular xxxx8741 | 112,188.44 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 112,188.44 |
| Navy Federal CU xxxx7026 | 5.02 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5.02 |
| Navy Federal CU xxxx7165 | 452.20 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 452.20 |
| Sale of 2012 Jeep Wrangler | 9,266.62 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9,266.62 |
| Service Credit Union xxx86 | 181.26 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 181.26 |
| USAA Federal Savings x5212 | 1,502.31 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,502.31 |
| **Total Bryant E. Sewall** | 123,595.85 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 123,595.85 |
| **Island Technologies LLC** | | | | | | | | | | |
| Banco Popular xxxx0846 | 500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 500.00 |
| Banco Popular xxxx0862 | 500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 500.00 |
| Banco Popular xxx9027 | 61,564.52 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 61,564.52 |
| Banco Popular xxx9329 | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 |
| **Total Island Technologies LLC** | 62,579.52 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 62,579.52 |
| **Keystone Business Trust** | | | | | | | | | | |
| BBVA Compass xxxx3827 | 1,359,337.46 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,359,337.46 |
| BBVA Compass xxxx3921 | 10,239.84 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,239.84 |
| **Total Keystone Business Trust** | 1,369,577.30 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,369,577.30 |

SEC v. Mediatrix Capital Inc. et al. Receivership QSF
Receivership Administrative Report - by Class Quarterly
From Inception (September 11, 2020) to June 30, 2021

| | Previously Reported | Sewall | Young | A.L.A. Trust | Asset Analysis & Recovery | Asset Disposition | Case Administration | Accounting / Auditing | Forensic Accounting | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| **Michael & Victoria Stewart** | | | | | | | | | | |
| MidFirst Bank xxxx8270 | 3,905.42 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,905.42 |
| USAA Federal Savings xxxx8132 | 1,717.03 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,717.03 |
| **Total Michael & Victoria Stewart** | 5,622.45 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,622.45 |
| **Michael Stewart** | | | | | | | | | | |
| Banco Popular xxxx1784 | 30,050.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30,050.66 |
| Hughes Federal CU xxx6503 | 68.64 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 68.64 |
| Wells Fargo Bank xxxx9286 | 450.91 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 450.91 |
| **Total Michael Stewart** | 30,570.21 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30,570.21 |
| **Michael Young** | | | | | | | | | | |
| Banco Popular xxxx9843 | 262,773.38 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262,773.38 |
| Key Bank xxxx6425 | 5,334.52 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,334.52 |
| Key Bank xxxx7726 | 25,934.98 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25,934.98 |
| UBS Financial Services xxx7885 | 311,095.84 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 311,095.84 |
| **Total Michael Young** | 605,138.72 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 605,138.72 |
| **Sale of PR Property** | | | | | | | | | | |
| Drohan Lee LLP | 1,870,674.53 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,870,674.53 |
| **Total Sale of PR Property** | 1,870,674.53 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,870,674.53 |
| **Salve Regina Trust** | | | | | | | | | | |
| UBS Financial Services xxx7422 | 1,429,941.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,429,941.54 |
| **Total Salve Regina Trust** | 1,429,941.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,429,941.54 |
| **Sandy Toes LLC** | | | | | | | | | | |
| Drohan Lee LLP | 2,434,590.35 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,434,590.35 |
| **Total Sandy Toes LLC** | 2,434,590.35 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,434,590.35 |
| **Victoria Stewart** | | | | | | | | | | |
| Wells Fargo Bank xxxx9200 | 500.96 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 500.96 |
| **Total Victoria Stewart** | 500.96 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 500.96 |
| **West Beach LLC** | | | | | | | | | | |
| Banco Popular xxxx5590 | 5,662.86 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,662.86 |
| **Total West Beach LLC** | 5,662.86 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,662.86 |

**SEC v. Mediatrix Capital Inc. et al. Receivership QSF**
**Receivership Administrative Report - by Class Quarterly**
From Inception (September 11, 2020) to June 30, 2021

| | Previously Reported | Sewall | Young | A.L.A. Trust | Asset Analysis & Recovery | Asset Disposition | Case Administration | Accounting / Auditing | Forensic Accounting | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| Total Funds Collected | | | | | | | | | | |
| Total Defendant & Corporate Funds | 8,867,129.18 | 0.00 | 0.00 | 100,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,967,129.18 |
| Sale of 7349 E Casitas Del Rio | 0.00 | 0.00 | 0.00 | 160,122.15 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160,122.15 |
| Sale of 8221 E. Sheridan | 0.00 | 0.00 | 0.00 | 118,755.42 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 118,755.42 |
| Interest Income | 4,956.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,230.29 | 0.00 | 0.00 | 8,186.38 |
| Total Funds Collected | 8,872,085.27 | 0.00 | 0.00 | 378,877.57 | 0.00 | 0.00 | 3,230.29 | 0.00 | 0.00 | 9,254,193.13 |
| Expenses | | | | | | | | | | |
| DCC Islands Foundation | | | | | | | | | | |
| Annual Registration Fees BAH | 0.00 | 4,715.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,715.00 |
| Total DCC Islands Foundation | 0.00 | 4,715.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,715.00 |
| Real Property Expenses | | | | | | | | | | |
| 1197 Lloyds Rd Little Elm, TX | | | | | | | | | | |
| Appraisal | 2,400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,400.00 |
| Electricity | 74.04 | 59.62 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 133.66 |
| Lawn and Yard Maintenance | 0.00 | 1,550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,550.00 |
| Property Taxes | 1,172.62 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,172.62 |
| Total 1197 Lloyds Rd Little Elm, TX | 3,646.66 | 1,609.62 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,256.28 |
| 1201 Lloyds Rd. Little Elm, TX | | | | | | | | | | |
| Appraisal Services | 3,500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,500.00 |
| Beehive Ag Services | 1,190.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,190.75 |
| Electricity | 1,812.84 | 549.55 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,362.39 |
| Hay Cultivation Services | 0.00 | 6,125.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,125.00 |
| Insurance | 6,048.06 | 3,528.44 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9,576.50 |
| Lawn and Yard Maintenance | 1,236.00 | 1,648.38 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,884.38 |
| Locksmith Services | 418.32 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 418.32 |
| Maintenance | 285.00 | 1,105.10 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,390.10 |
| Property Taxes | 80,955.93 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 80,955.93 |
| Total 1201 Lloyds Rd. Little Elm, TX | 95,446.90 | 12,956.47 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 108,403.37 |
| 5406 S. Cottonwood Ct. | | | | | | | | | | |
| Property Insurance | 3,269.04 | 0.00 | 3,914.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7,183.29 |
| Property Taxes | 22,598.32 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 22,598.32 |
| Total 5406 S. Cottonwood Ct. | 25,867.36 | 0.00 | 3,914.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 29,781.61 |
| 7439 Casitas Del Rio Dr AZ | | | | | | | | | | |
| Appraisal Services | 1,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,200.00 |

**SEC v. Mediatrix Capital Inc. et al. Receivership QSF**
**Receivership Administrative Report - by Class Quarterly**
From Inception (September 11, 2020) to June 30, 2021

| | Previously Reported | Sewall | Young | A.L.A. Trust | Asset Analysis & Recovery | Asset Disposition | Case Administration | Accounting / Auditing | Forensic Accounting | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| Insurance | 1,950.66 | 0.00 | 0.00 | 484.56 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,435.22 |
| Locksmith Services | 369.72 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 369.72 |
| Mortgage/Heloc | 35,763.86 | 0.00 | 0.00 | 4,591.22 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40,355.08 |
| Total 7439 Casitas Del Rio Dr, AZ | 39,284.24 | 0.00 | 0.00 | 5,075.78 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 44,360.02 |
| **8221 E Sheridan Scottsdale, AZ** | | | | | | | | | | |
| Appraisal Services | 1,725.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,725.00 |
| Insurance | 1,588.53 | 0.00 | 0.00 | 691.10 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,279.63 |
| Locksmith Services | 493.72 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 493.72 |
| Mortgage Payments | 25,529.00 | 0.00 | 0.00 | 7,294.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 32,823.00 |
| Property Taxes | 2,080.19 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,080.19 |
| Total 8221 E Sheridan Scottsdale, AZ | 31,416.44 | 0.00 | 0.00 | 7,985.10 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 39,401.54 |
| **Port Charlotte, FL Lots** | | | | | | | | | | |
| Appraisal Fees | 550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 550.00 |
| Insurance | 65.41 | 0.00 | 41.92 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 107.33 |
| Property Taxes | 3,442.46 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,442.46 |
| Total Port Charlotte, FL Lots | 4,057.87 | 0.00 | 41.92 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,099.79 |
| **Total Real Property Expenses** | 199,719.47 | 14,566.09 | 3,956.17 | 13,060.88 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 231,302.61 |
| **Receiver Fees & Costs** | | | | | | | | | | |
| **Fees** | | | | | | | | | | |
| **Receiver** | | | | | | | | | | |
| B. Kane | 17,715.60 | 0.00 | 0.00 | 0.00 | 68.40 | 786.60 | 3,556.80 | 0.00 | 0.00 | 22,127.40 |
| Total Receiver | 17,715.60 | 0.00 | 0.00 | 0.00 | 68.40 | 786.60 | 3,556.80 | 0.00 | 0.00 | 22,127.40 |
| **Deputies** | | | | | | | | | | |
| F. Jen | 301.50 | 0.00 | 0.00 | 0.00 | 4,884.30 | 0.00 | 0.00 | 211.05 | 783.90 | 6,180.75 |
| A. Jen | 10,704.60 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 205.20 | 1,094.40 | 0.00 | 12,004.20 |
| C. Callahan | 21,847.50 | 0.00 | 0.00 | 0.00 | 0.00 | 4,815.00 | 0.00 | 0.00 | 0.00 | 26,662.50 |
| C. DeGus | 3,511.35 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,798.20 | 0.00 | 5,309.55 |
| H. Jen | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 |
| K. Johnson | 27,394.20 | 0.00 | 0.00 | 0.00 | 0.00 | 10,100.25 | 0.00 | 0.00 | 0.00 | 37,494.45 |
| T. Chung | 9,859.05 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 27,888.75 | 37,747.80 |
| Total Deputies | 73,633.20 | 0.00 | 0.00 | 0.00 | 4,884.30 | 14,915.25 | 205.20 | 3,103.65 | 28,672.65 | 125,414.25 |
| **Total Fees** | 91,348.80 | 0.00 | 0.00 | 0.00 | 4,952.70 | 15,701.85 | 3,762.00 | 3,103.65 | 28,672.65 | 147,541.65 |

**SEC v. Mediatrix Capital Inc. et al. Receivership QSF**
**Receivership Administrative Report - by Class Quarterly**
From Inception (September 11, 2020) to June 30, 2021

| | Previously Reported | Sewall | Young | A.L.A. Trust | Asset Analysis & Recovery | Asset Disposition | Case Administration | Accounting /Auditing | Forensic Accounting | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| **Receiver Costs** | | | | | | | | | | |
| Bank Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Information Research Costs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 320.98 | 0.00 | 0.00 | 320.98 |
| Postage & Delivery | 61.61 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 87.40 | 0.00 | 0.00 | 149.01 |
| Website Support | 514.59 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 419.03 | 0.00 | 0.00 | 933.62 |
| **Total Receiver Costs** | 576.20 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 827.41 | 0.00 | 0.00 | 1,403.61 |
| **Legal Fees & Costs** | | | | | | | | | | |
| **Barnes & Thornburg LLP** | | | | | | | | | | |
| Legal Fees | 135,896.95 | 0.00 | 0.00 | 0.00 | 18,036.80 | 27,849.35 | 3,166.20 | 0.00 | 0.00 | 184,949.30 |
| Legal Costs | 1,794.13 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 682.76 | 0.00 | 0.00 | 2,476.89 |
| **Total Barnes & Thornburg LLP** | 137,691.08 | 0.00 | 0.00 | 0.00 | 18,036.80 | 27,849.35 | 3,848.96 | 0.00 | 0.00 | 187,426.19 |
| **Engelman Berger, PC** | | | | | | | | | | |
| Legal Costs | 212.79 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 39.70 | 0.00 | 0.00 | 252.49 |
| Legal Fees | 10,830.00 | 0.00 | 0.00 | 0.00 | 741.00 | 380.00 | 0.00 | 0.00 | 0.00 | 11,951.00 |
| **Total Engelman Berger, PC** | 11,042.79 | 0.00 | 0.00 | 0.00 | 741.00 | 380.00 | 39.70 | 0.00 | 0.00 | 12,203.49 |
| **Total Legal Fees & Costs** | 148,733.87 | 0.00 | 0.00 | 0.00 | 18,777.80 | 28,229.35 | 3,888.66 | 0.00 | 0.00 | 199,629.68 |
| **Total Receiver Fees & Costs** | 240,658.87 | 0.00 | 0.00 | 0.00 | 23,730.50 | 43,931.20 | 8,478.07 | 3,103.65 | 28,672.65 | 348,574.94 |
| **Total Expenses** | 440,378.34 | 19,281.00 | 3,956.17 | 13,060.88 | 23,730.50 | 43,931.20 | 8,478.07 | 3,103.65 | 28,672.65 | 584,592.55 |
| **Fund Balance** | 8,431,706.93 | | | | | | | | | 8,669,000.58 |

# Exhibit B



ENTERPRISE
BANK&TRUST®

10/31/2019

3526

```
           JIROCH LAW PLC IOLTA FOR
           14582 W PASADENA AVENUE
           LITCHFIELD PARK AZ  85340
```

```
                                                        CYCLE-030
                                    *** CHECKING *** COMM ADVANTAGE
    PREVIOUS STATEMENT BALANCE AS OF 09/30/19 ......................     25.00
       PLUS    2  DEPOSITS AND OTHER CREDITS .....................  288,015.95
       LESS    1  CHECKS AND OTHER DEBITS .......................  284,347.50
    CURRENT STATEMENT BALANCE AS OF 10/31/19 .......................  3,693.45
    NUMBER OF DAYS IN THIS STATEMENT PERIOD   31
    -------------------- *** CHECKING ACCOUNT TRANSACTIONS *** ----------------------
      DATE        DESCRIPTION                 DEBITS          CREDITS
    10/08 WT MAGNUS TITLE AGENCY LLC                        284,347.50
    10/08 TRANS PER J ROACH -SP          284,347.50
    10/24 PHONE REQ TRANS PER J ROACH -                       3,668.45
       SP
    ------------------------------------------------------------------------------------
      *** BALANCE BY DATE ***
     09/30      25.00  10/24     3,693.45
```

```
                  PAYER FEDERAL ID NUMBER................  43-1472619
                  INTEREST PAID YEAR TO DATE..............       .00

          IF YOU HAVE QUESTIONS CONCERNING THIS STATEMENT, PLEASE
          CALL OUR CUSTOMER SERVICE CENTER AT 800-438-0378. THANK
          YOU FOR ALLOWING ENTERPRISE TO SERVE YOUR BANKING NEEDS.
```

EBT.000020

# Exhibit  C

**Jiroch Law PLC IOTA Account**
**Summary of Receipts & Disbursements**
All Transactions

| | May 18 | Jun 18 | Jul 18 | Aug 18 | Sep 18 | Oct 18 | Nov 18 | Dec 18 | Jan 19 | Feb 19 | Mar 19 | Apr 19 | May 19 | Jun 19 | Jul 19 | Aug 19 | Sep 19 | Oct 19 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| Magnus Title Agency LLC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 284,347.50 |
| Camico Mutual Insurance Company | 55,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Deposit to be identified | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,668.45 |
| Interest Income | 0.23 | 0.00 | (0.23) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Receipts | 55,000.23 | 0.00 | (0.23) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 288,015.95 |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| Wind River Jiroch LLC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 284,347.50 |
| Fireman | 41,369.58 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Payments made per request of Roach | 13,605.42 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Disbursements | 54,975.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 284,347.50 |
| Net Receipts (Disbursements) | 25.23 | 0.00 | (0.23) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,668.45 |

**Jiroch Law PLC IOTA Account**
**Summary of Receipts & Disbursements**
All Transactions

| | Nov 19 | Dec 19 | Jan 20 | Feb 20 | Mar 20 | Apr 20 | May 20 | Jun 20 | Jul 20 | Aug 20 | Sep 20 | Oct 20 | Nov 20 | Dec 20 | Jan 21 | Feb 21 | Mar 21 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| Magnus Title Agency LLC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 284,347.50 |
| Camico Mutual Insurance Company | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 55,000.00 |
| Deposit to be identified | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,668.45 |
| Interest Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Receipts** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 343,015.95 |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| Wind River Jiroch LLC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 284,347.50 |
| ▬ Fierman | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 41,369.58 |
| Payments made per request of Roach | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,600.00 | 0.00 | 0.00 | 17,205.42 |
| **Total Disbursements** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,600.00 | 0.00 | 0.00 | 342,922.50 |
| **Net Receipts (Disbursements)** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (3,600.00) | 0.00 | 0.00 | 93.45 |

# Exhibit  D



**ENTERPRISE**
**BANK&TRUST**®

10/31/2019

 1747

```
        WIND RIVER JIROCH LLC
        14582 E PASADENA AVE
        LITCHFIELD PARK AZ  85340
```

```
     2                                                      CYCLE-030
                              *** CHECKING *** BASIC SMALL BUSINESS
     PREVIOUS STATEMENT BALANCE AS OF 10/07/19 ........................        .00
        PLUS     2  DEPOSITS AND OTHER CREDITS .....................   290,747.50
        LESS     5  CHECKS AND OTHER DEBITS .......................   270,831.25
     CURRENT STATEMENT BALANCE AS OF 10/31/19 ........................    19,916.25
     NUMBER OF DAYS IN THIS STATEMENT PERIOD    24
     ------------------------ *** CHECK TRANSACTIONS *** --------------------------
            SERIAL   DATE         AMOUNT            SERIAL   DATE         AMOUNT
                     10/18      9,500.00
     ------------------------------------------------------------------------------
     *** CHECKING ACCOUNT TRANSACTIONS ***
       DATE         DESCRIPTION                    DEBITS           CREDITS
     10/08 TRANS PER J ROACH -SP                                 284,347.50
     10/09 WT TIFFANY AND BOSCO P.A.              1,312.50
     10/09 PER JAMES ROACH-RC                    50,418.75
     10/09 WT SHAWN A STEWART                   147,100.00
     10/17 DEPOSIT                                                  6,400.00
     10/30 WT WELLS FARGO CLEARING SERVIC        62,500.00
     ------------------------------------------------------------------------------
     *** BALANCE BY DATE ***
     10/07        .00  10/08   284,347.50  10/09   85,516.25  10/17   91,916.25
     10/18   82,416.25  10/30    19,916.25
```

```
            IF YOU HAVE QUESTIONS CONCERNING THIS STATEMENT, PLEASE
            CALL OUR CUSTOMER SERVICE CENTER AT 800-438-0378. THANK
            YOU FOR ALLOWING ENTERPRISE TO SERVE YOUR BANKING NEEDS.
```

EBT.000046



**CHECKING Deposit Ticket**

Virtual Document

Account: Checking █████ 1747
Name:      WIND RIVER JIROGH LLC

Description:                                          **$6,400.00**

Cash Drawer: 1       User:   SAMANTHA KATE PARAS
10/17/2019  1:42 PM   Branch: 36    Seq: 13

**10/17/2019     $6,400.00**



**10/18/2019     $9,500.00**

EBT.000047

# Exhibit  E



September 19, 2019 through October 17, 2019
Account Number: ████████2231

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 09/23 | ███████████████ | $8,500.00 |
| 10/01 | ███████████████ | 1,668.71 |
| 10/07 | Card Purchase Return | 120.44 |
| 10/09 | Fedwire Credit Via: Enterprise Bank & Trust/081006162 B/O: Wind River Jiroch LLC Litchfield Park, AZ 85340 Ref: Chase Nyc/Ctr/Bnf=Shawn A Stewart Kimberly Stewart New River AZ 85087- 6202 US/Ac-000000008098 Rfb=O/B Ent Rp Clayto Bbi=/Acc/DDA/██████2231 Sh Awn A Stewart Imad: 1009Mmqfmpc8000156 Tm: 2991609282Ff | 147,100.00 |
| 10/17 | Interest Payment | 0.03 |
| **Total Deposits and Additions** | | **$157,389.18** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 3416  ^ | | 10/01 | $13.90 |
| 3417  ^ | | 09/25 | 20.00 |
| **Total Checks Paid** | | | **$33.90** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.
^ An image of this check may be available for you to view on Chase.com.

## ATM & DEBIT CARD WITHDRAWALS



| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 09/19 | | $6.54 |
| 09/19 | | 24.34 |
| 09/19 | | 3.36 |
| 09/20 | | 10.68 |
| 09/23 | | 69.20 |
| 09/23 | | 5.79 |
| 09/23 | | 14.52 |
| 09/23 | | 153.38 |
| 09/23 | | 60.28 |
| 09/24 | | 7.28 |
| 09/24 | | 42.42 |
| 09/25 | | 90.06 |
| 09/30 | | 19.06 |
| 09/30 | | 33.09 |
| 09/30 | | 8.16 |
| 09/30 | | 18.97 |
| 09/30 | | 7.69 |
| 09/30 | | 6.54 |
| 09/30 | | 17.05 |
| 09/30 | | 29.18 |
| 09/30 | | 67.80 |
| 10/01 | | 20.76 |
| 10/01 | | 156.29 |
| 10/01 | | 87.45 |

Page 2 of 6

**CHASE ◻**

September 19, 2019 through October 17, 2019
Account Number:                    2231

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 09/19 | | $554.69 |
| 09/23 | | 65.00 |
| 09/24 | | 48.00 |
| 09/24 | | 350.34 |
| 09/25 | | 321.39 |
| 09/26 | | 134.77 |
| 09/30 | | 12.00 |
| 09/30 | | 2,180.53 |
| 09/30 | | 115.84 |
| 09/30 | | 91.08 |
| 09/30 | | 82.00 |
| 09/30 | | 82.00 |
| 10/01 | | 26.61 |
| 10/02 | | 205.55 |
| 10/02 | | 32.00 |
| 10/03 | | 30.00 |
| 10/04 | | 72.00 |
| 10/07 | | 485.98 |
| 10/07 | | 296.20 |
| 10/08 | | 181.00 |
| 10/09 | 10/09 Domestic Wire Transfer Via: Capital One NA/065000090 A/C: Drohan Lee Llp Ref: Michael Stewart Retainer/Time/12:52 Imad: 1009B1Qgc08C003997 Trn: 4512800282Es | 76,000.00 |
| 10/09 | 10/09 Domestic Wire Transfer A/C: Kaplan Hecker & Fink Llp New York NY 10118-7110 US Ref: Michael Stewart Trn: 4517600282Es | 71,000.00 |
| 10/10 | | 38.00 |
| 10/10 | | 35.00 |
| 10/11 | | 73.00 |
| 10/11 | | 35.99 |
| 10/15 | | 176.36 |
| 10/15 | | 50.00 |
| 10/15 | | 47.00 |
| 10/16 | | 65.00 |
| 10/16 | | 35.00 |
| **Total Electronic Withdrawals** | | **$152,922.33** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/09 | Domestic Wire Fee | $35.00 |
| 10/09 | Domestic Wire Fee | 35.00 |
| 10/09 | Domestic Incoming Wire Fee | 15.00 |
| **Total Fees** | | **$85.00** |

## OVERDRAFT AND RETURNED ITEM FEE SUMMARY

| | Total for This Period | Total Year-to-date |
|---|---|---|
| Total Overdraft Fees * | $.00 | $34.00 |
| Total Returned Item Fees | $.00 | $.00 |

* Total Overdraft Fees includes Insufficient Funds Fees, and Extended Overdraft Fees

Page 4 of 6

# Exhibit  F

(480) 261-0...
Mobile

10/3/19 5:12 PM

Hey Bro, its Mike. I had to get a new phone. I need to talk to you tomorrow when you have 5 mins.
480-261█████
It's a throw away phone so I'll be getting a new perminant phone this weekend.

Ok, just got back from surgery.  Just laying in bed. Let me know what time. Been worried about you!

Starting to feel the pain.  Going to have to dip into the morphine

Ok, sounds good. I love you!

How are you feeling?

STEWART_00026

(480) 261-0...

Mobile

Ok, sounds good. I love you!

How are you feeling?

Man I'm sorry. I'll fill you in tomorrow. Will text you and call when your up to it.

10/4/19 9:34 AM

Hey, let me know when you want to talk.

10/4/19 11:17 AM

Getting my new iPhone now. Will all after. Get WhatsApp. Secure phone app

10/4/19 2:24 PM

Did you get your phone yet

Type a message…

STEWART 000206



(480) 261-0...
Mobile

Did you get your phone yet

Yes

480-490-████

10/8/19 9:18 AM

Wire should hit your account in a bit

I'll let you know

Ok

Ok, I'll head over after I  shower

Just wait until I get confirmation

10/8/19 12:09 PM

Type a message...

STEWART_00007



Just wait until I get confirmation

10/8/19 12:09 PM

Will call in a few

Any word yet? I need to run some errands.

No

10/8/19 6:32 PM

Bro bank is requiring your home address

New River, AZ 85087

10/9/19 6:37 AM

Type a message...

STEWART_000008



**(480) 261-0...**
Mobile

10/9/19 6:37 AM

Wire should hit you early

10/9/19 7:03 AM

Place check and send around 10am if possible

Thx Bro

10/9/19 8:55 AM

Should have wire

10/9/19 9:07 AM

Just got it. I'm heading to the bank now

Thanks Bro

Type a message...

(480) 261-0...
Mobile

10/9/19 9:07 AM

Just got it. I'm heading to the bank now

Thanks Bro

10/9/19 9:15 AM

Here is the amounts and where it needs to go along with the note for the wire.

1st Wire

$76k

Escrow wire instructions:

To: Drohan Lee LLP

Capital One Bank

Type a message...

STEWART 000040



**(480) 261-0...**
Mobile

To: Drohan Lee LLP

Capital One Bank

Account # █████5080

ABA/Routing #065000090

Swift Code :HIBKUS44


Note: Michael Stewart Retainer


To:   Kaplan Hecker  & Fink LLP

Bank Name: Chase Bank

66 Main Street, East Hampton,
NY 11937

Routing Number: 021000021

Account Number: █████8101



Type a message...

STEWART 000041

(480) 261-0...
Mobile

Routing Number: 021000021

Account Number: ████8101

Bank Contact: Chris Heyen, (631) 907-████

$71k to Kaplan Hecker

Thx

10/9/19 9:57 AM

Send me a copy of re roots when done please

Thx

10/9/19 10:08 AM

Type a message...



(480) 261-0...
Mobile

Send me a copy of re roots when done please

Thx

10/9/19 10:08 AM

Just emailed receipts to you at the email address that you sent instructions from. If you want me to send them to a different email address,  let me know.

Shawn

defeder1989@protomail com

Thx Bro!

No worries,  I love you too! Let me know when it goes through.

STEWART_000043

  Type a message...  

# Exhibit  G

## A.L.A. TRUST AGREEMENT

This Agreement and Declaration of Trust is made and entered into this 15th day of October, 2019 between SHAWN A. STEWART, an individual resident of Anthem, Arizona, as Grantor (hereinafter called "Grantor"), and WIND RIVER JIROCH LLC, a Wyoming limited liability company, having its principal business office in Cheyenne, Wyoming ("Trustee").

## 1. CREATION & ESTABLISHMENT

1.1 *Creation by Grantor; Acceptance by Trustees.* Grantor hereby creates an irrevocable inter-vivos trust to be known as the A.L.A. TRUST to acquire, exchange, hold, and manage certain real and personal properties. The Grantor reserves no right or power to alter, amend, or revoke this Agreement, in whole or in part.  The Trustee accepts the trust created hereby and agree to hold, administer, and distribute the Trust Estate upon the terms herein set forth.

1.2 *Conveyance.* Grantor does hereby convey, assign, transfer, and deliver to the Trustee the property more particularly described upon Schedule "A" attached hereto and by this reference incorporated herein TO HAVE AND TO HOLD the same and any other property that Trustee may hereafter at any time hold or acquire from Grantor or otherwise (the "Trust Estate") IN TRUST for the uses and purposes and subject to the terms and conditions set forth hereinafter.  Grantor may make subsequent, periodic transfers constituting gifts of present interests for the benefit of the beneficiaries of this irrevocable trust.

1.3 *No Withdrawal or Alienation.*  Grantor may not withdraw any of the property deposited hereunder from the possession of Trustee, and may not pledge or assign the same, or elect to receive any dividends or other payments on account thereof.

## 2. DEFINITION OF TERMS

In the interpretation or construction of the provisions of this Trust Agreement, the following words and phrases shall have the meanings set forth below:

2.1 "Grantor" means SHAWN A. STEWART, whether such person is living or deceased.

2.2 "Beneficiary" means such individual or individuals designated annually by the Trust Protector from Grantor's family including Grantor's Siblings and/or Grantor's Siblings Children.

2.3 All references and directives to the "Trustee" shall be construed to refer to whatever person, persons, or legal entity shall be serving as Trustee of this Trust at the applicable time. The term "Trustee" also includes "Co-Trustees" if the office of Trustee is held by more than one person. Whenever the Successor Trustee, or Successor Co-Trustees, shall succeed to the office of Trustee, the word "Trustee" thereafter refers to such Successor Trustee, or Successor Co-Trustees.

2.4 The term "Trust Estate" refers to all property which, at any point in time, is held by Trustee subject to the provisions of this Trust Agreement. Unless expressly limited, the term "property" means and refers to all assets and things of value of every kind, including but not limited to real

1

STEWART 000002

estate and interests in real estate, and personal property whether tangible or intangible.

2.5 The term "separate Trust Estate" refers to a portion of the Trust Estate (sometimes referred to as a "sub-trust") that is separately administered and accounted for by the Trustee. A separate Trust Estate shall for all legal and tax purposes have the status of a separate trust that is being administered by Trustee under the provisions of this Trust Agreement for convenience. With respect to the administration of a separate Trust Estate, the Trustee shall have all of the duties, and all of the powers and authority, including discretionary powers and authority, which are herein imposed upon or granted to the Trustee of this Trust, unless expressly provided to the contrary elsewhere in this Trust Agreement.

2.6 The terms "child," "children," "descendant" and "descendants" shall include legally adopted persons who were adopted prior to attaining the age of majority, and the descendants of any such legally adopted persons, unless preceded by the word "biological," in which event the term shall not include legally adopted persons. Stepchildren who have not been adopted by the stepparent shall not under any circumstances be construed to be "descendants" of the stepparent. For purposes of this Trust Agreement, a biological child of a person who has been legally adopted by another person under circumstances terminating the relationship of parent and child between the biological parent and the biological child during the biological parent's lifetime shall not be deemed to be a "child" or "descendant" of such biological parent for inheritance purposes following the death of the biological parent, notwithstanding any provisions of law to the contrary, and the provisions of this Trust Agreement shall be interpreted and administered accordingly.

2.7 A person is deemed to be "incapacitated" or "incompetent" if such person is incapable of managing his or her own financial affairs because of such person's physical or mental condition, or both. If a person who is serving as Trustee or Co-Trustee hereunder at the time he or she becomes incapacitated or incompetent, such person shall be deemed to have resigned the office of Trustee or Co-Trustee. A Grantor shall be presumed to be incapacitated or incompetent if the Grantor's incapacity or incompetency is confirmed in a letter or other writing signed by all of the following persons who are then living, competent, and able to act in their own behalf: the physician then most recently regularly attending to Grantor.

2.8 The masculine gender when used herein shall be deemed, where appropriate, to include the feminine or neuter, and the singular the plural, and vice versa. References to a female person's surname shall be construed to include all other surnames of such person resulting from changes in her marital status from time to time.

2.9 Whenever provision is made herein for payment for the "education" of a beneficiary, the term "education" shall be construed to include without limitation college and post-graduate study, or any other course of study or instruction for specialized, vocational, or professional training, so long as pursued to advantage by the beneficiary, at an institution of the beneficiary's choice; and in determining payments to be made for education, Trustee shall take into consideration and deem to be a cost of "education" the beneficiary's related living and transportation expenses to the extent that they are reasonable.

2.10 If a beneficiary is not living at the time he or she becomes entitled to distribution of any part

2

STEWART  000003

of the Trust Estate, the provisions of this Trust Agreement shall be construed and administered in accordance with the following:

(A) Whenever a distribution is directed to be made to a person upon condition that such person "survives" any other person, it is Grantor's intention that any applicable "anti-lapse" statute or rule of construction shall not apply to such distribution, and the gift shall lapse if the beneficiary does not survive such other person.

(B) Lapsed gifts shall be distributed in accordance with any alternative distribution instructions contained in this Trust Agreement, and shall not pass to the deceased beneficiary's heirs, spouse, descendants, or estate unless expressly so provided in this Trust Agreement.

(C) Whenever this Trust Agreement directs that a distribution be made to a person or to a class (group of persons), "per stirpes," it is intended that in the event a beneficiary who is entitled to receive a distribution is no longer living at the time he or she becomes entitled to such distribution, the gift to the deceased beneficiary or class member shall not lapse if the deceased beneficiary or class member left descendants who are still living at the time the deceased beneficiary or class member would have become entitled to receive the distribution. The property to which the deceased beneficiary or class member would have been entitled, if living, shall instead be distributed to the surviving descendants of the deceased beneficiary or class member as directed in the following subparagraph. If there are no living descendants of the deceased beneficiary or class member to whom a distribution was to be made per stirpes, the gift to the deceased beneficiary or class member shall lapse.

(D) Whenever a distribution is directed to be made to the descendants of a designated person, per stirpes, the amount to be distributed shall be divided into a sufficient number of equal shares to create one share for each child of the designated person who is then living, and one share for each deceased child of the designated person who left descendants who are then living (with the share created for the deceased child to again be divided among his or her descendants in like manner). A per stirpes distribution shall be divided and made at the first generational level among the descendants of the designated person or deceased beneficiary at which someone is living.

2.11 The definitions set forth in this Paragraph shall govern the interpretation and administration of this Trust Agreement, notwithstanding any other or contrary meaning of the defined terms that may be provided by law or custom in any jurisdiction. Whenever the term "separate property" is used herein, such term means property owned by an unmarried person, or property owned by a married person in which such person's spouse has no legal interest. Whenever the term "jointly-held/community property" is used herein, such term means property that is co-owned by persons who are husband and wife. Property herein referred to as "jointly-held/community property" shall be deemed to be property that has the character of community property of husband and wife if the property is real estate located in a community property jurisdiction (or as "community property with right of survivorship" if such form of ownership is permitted in the applicable jurisdiction), or constitutes property held by husband and wife as joint tenants with right of survivorship (or as tenants by the entireties if such form of ownership is permitted in the applicable jurisdiction) if the property is real estate located in a non-community property jurisdiction, or if the property is personal property and the husband and wife reside in a

3

STEWART 000004

non-community property jurisdiction.

3.  DISTRIBUTIONS

3.1 *Distributions Prior to Death of Grantor*. So long as Grantor is living, Trustee shall hold, manage, invest and reinvest the Trust Estate, collect the income therefrom (if any), and shall pay over and distribute (a) the net income to the Beneficiary or Beneficiaries designated from time to time by the Trust Protector in monthly, quarterly, or annual installments as specified by the Trust Protector and (b) such amounts of the principal as Trust Protector shall determine from time to time.

3.2 *Distributions After Death of Grantor*. After the death of the Grantor, Trustee shall make distributions from the Trust Estate to the persons named by the Trust Protector and in such amounts as the Trust Protector shall then specify.

Trustee shall then divide the remaining Trust Estate, as then constituted (including any additions thereto by reason of the death of either Grantor), into such number of shares as the Trust Protector shall determine, whether outright or in trust, whether equal or unequal, for such of the Beneficiaries as the Trust Protector shall designate. Each such share shall constitute a separate Trust Estate ("Beneficiary's Separate Share").

3.3 *Beneficiaries Separate Shares.* Upon creation of the Beneficiaries Separate Shares, the Trustee shall either (A) pay over to the Beneficiary for whom the share was created, all of said separate Trust Estate as then constituted, free and clear of any trust; or (B) retain and administer the Separate Share Estate for a Beneficiary according to such terms and upon such conditions as the Trust Protector may specify upon creation and establishment of the Trust for the Beneficiary's Separate Share. With respect to the administration of any such Separate Share Trust, Trustee shall have all of the powers, authority and discretion vested in Trustee under the provisions of this Agreement.

Trustee shall invest and reinvest the principal of every Beneficiary's Separate Share Trust, collect the income therefrom, and apply so much of the net income or principal to the maintenance, education, support, and health of the Beneficiary as the Trust Protector periodically advises Trustee is necessary or advisable, without the intervention of any guardian or curator. Trustee shall accumulate, invest and reinvest the balance of undistributed income until final distribution from the Separate Share Trust.

Upon the death of any such Beneficiary after creation of the Trust Estate but before final distribution, Trustee shall pay over and distribute all of the principal and then undistributed net income of such Separate Share Trust Estate, as then constituted, to the then living descendants of such Beneficiary, per stirpes, or if none, to the Grantor's then living descendants, per stirpes.

3.4 *Disability of Beneficiary*. If at any time the Trust Protector shall, in his sole and absolute judgment and discretion, determine that any beneficiary entitled to a payment hereunder is for any reason unable to apply such payment to his or her own best advantage, or if any beneficiary entitled to a payment hereunder shall be under a legal disability, the Trustee may render payment(s) for

4

STEWART 000005

such Beneficiary in any one or more of the following manners as in the Trustee's sole discretion shall be appropriate under the circumstances:

(A) The Trustee may make part or all of such payment directly to such beneficiary notwithstanding the disability or other circumstances;

(B) The Trustee may make part or all of such payment to the guardian of his or her property, or to a person who is providing care for the beneficiary if the beneficiary resides with such person at the time of such payment (and the receipt of such guardian or person shall be a full and complete discharge to the Institutional Trustee with respect to any such payment);

(C) The Trustee may apply part or all of such payment for the benefit of the beneficiary and for the benefit of anyone dependent upon such beneficiary, in such manner as the Individual Trustee shall deem best, and all amounts so applied shall be deemed to have been paid to the beneficiary;

(D) The Trustee may withhold part or all of such payment to the extent that the Individual Trustee shall, in such Trustee's sole and absolute judgment and discretion, determine that the amount available for payment to the beneficiary exceeds the amount needed to provide for the suitable maintenance, education, support and health of such beneficiary, after taking into consideration the needs of anyone dependent upon the beneficiary and all other financial resources available to the beneficiary of which the Individual Trustee shall have knowledge (and any income so withheld shall be added to the principal of the Separate Share Trust Estate from which it was derived).

The decision of the Trustee in any such case shall be final and binding upon all beneficiaries hereunder. Distributions upon final termination of any trust hereunder shall not be deemed to constitute "payments" within the meaning of this Paragraph.

3.5 *Non-Alienation by Separate Share Beneficiaries.* The Trustee shall only make payments of income and distributions of principal from a Separate Share Trust to the Beneficiary upon the written receipt of the Beneficiary receiving such income or principal. The Beneficiary shall have no right to anticipate, to pledge, to encumber or hypothecate or in any other manner to alienate their interest in either the income or the principal of the Separate Share Trust estate and their interest shall not be liable for their debts, contracts, or engagements or subject to execution, attachment, sequestration, or other legal process. No portion of the Separate Share Trust estate in the hands of the Trustee, either principal or income, shall be (i) subject to the control, claim, or disposition of any Beneficiary or of any spouse of any Beneficiary, or of any other person, until such income or principal shall be actually paid or distributed to such Beneficiary, or (ii) deemed assets in favor of the creditors of any beneficiary, or the creditors of any spouse of any beneficiary. No creditor, assignee, or spouse of any Beneficiary shall ever be entitled to take, appropriate, have recourse to, obtain the benefit of, or otherwise obtain any of the Separate Share Trust estate, by way of judgment, execution, attachment, garnishment, or any other proceeding, either in law or in equity. This section constitutes a restriction on the transfer of a Beneficiary's beneficial interest in a Separate Share Trust estate that is enforceable under applicable non-bankruptcy laws within the meaning of Section 541(c)(2) of the Bankruptcy Code or any other similar or successor statute.

3.6 *Distribution at Termination if Trustee Then Holds Another Trust for Same Beneficiary*. If at

5

STEWART 000006

any time any part of the principal or undistributed net income of any Separate Share Trust estate created hereunder shall be distributable to a person for whose sole benefit Trustee is then holding another separate Trust Estate hereunder, Trustee shall add the distribution to such other separate Trust Estate, to be held, administered, and distributed according to the terms of such other separate Trust Estate.

3.7 *Disposition of Accrued Income at Death of Beneficiary*. Upon the death of any Beneficiary, any accrued, accumulated, or unpaid net income, which would have been payable to such Beneficiary had such Beneficiary lived, shall be paid as income to the Beneficiary next succeeding in interest, unless otherwise provided herein or unless such net income shall have been validly appointed pursuant to a power of appointment herein conferred.

3.8 *Early Termination if Continued Trust Administration Financially Uneconomical*. If at any time the value of the principal of the original Trust Estate or any Separate Share Trust estate ("such Trust Estate") being administered hereunder shall be of such a small amount that Trustee shall determine, in Trustee's sole and absolute discretion, that continued administration of such Trust Estate is financially uneconomical, Trustee shall have the power to terminate the administration of such Trust Estate if Trustee in Trustee's sole and absolute discretion deems it advisable to do so. In the event of termination under the provisions of this Paragraph, the Trustee shall pay over and distribute all of the undistributed net income and principal of the such Trust Estate so terminated to or for the benefit of the person or persons then entitled to receive the income therefrom, or if any such person is then a minor, Trustee may make the distribution to a custodian (selected by Trustee) under the Uniform Transfers to Minors Act or similar law of the jurisdiction in which such minor then resides. Trustee's decision to terminate, or not to terminate, the administration of any such Trust Estate under the provisions of this Paragraph shall be final and binding upon all persons interested in such Trust Estate.

4. TRUST PROTECTOR

4.1 *Appointment of Trust Protector*. There is hereby created the position of "Trust Protector" hereunder. JAMES ROACH II is hereby appointed to the office of Trust Protector. If at any time JAMES ROACH II shall be unable or unwilling to serve as Trust Protector and fails to designate a Successor as provided at Section 4.3, STEPHEN HATCHER shall serve as Trust Protector. The powers, duties, and authority of the Trust Protector shall be as specified in this Article 4, the sections hereafter following, and elsewhere in this Trust Agreement.

4.2 *Beneficiary Needs*. The Trust Protector shall at reasonable intervals inquire into the financial needs of each beneficiary of this Trust, and each beneficiary of any separate Trust Estate being administered hereunder, with respect to whom the Trustee has the present power (whether or not discretionary) to make distributions of income, or distributions of principal, or both. The Trust Protector shall from time to time provide, in the manner and with the force and effect set forth elsewhere in this Trust Agreement, directions to the Trustee with respect to the amounts and timing of distributions of income and principal to be made by Trustee to or for the benefit of each such beneficiary. The term "beneficiary" as used in this subparagraph includes a living Grantor who is incapacitated or incompetent.

6

4.3 *Successor.*  The Trust Protector may, by instrument in writing signed by him and delivered to the Trustee, appoint presently or designate for subsequent service a Successor Trust Protector. A Successor Trust Protector appointed or designated by his or her predecessor shall automatically succeed to the office of Trust Protector if the former Trust Protector dies, resigns, or for any other reason ceases or becomes unable to perform the duties of the Trust Protector. An appointed or designated Successor Trust Protector shall promptly notify the Trustee, in writing, that he or she has succeeded to the office of Trust Protector.  Under no circumstances may Grantor or any person related or subordinate to Grantor within the meaning of Section 672(c) of the Internal Revenue Code be appointed as Trust Protector hereunder.

4.4 *Amendment.*  The Trust Protector shall have the power to amend this Trust Agreement whenever, by reason of changes in applicable federal or state tax laws or regulations, or judicial or administrative rulings with respect thereto, the Trust Protector determines that an amendment is necessary or advisable to retain or accomplish the original tax planning objectives of this Trust. No amendment may be adopted pursuant to the authority hereby granted that in any material manner alters or modifies the definition of "beneficiary", the beneficial interest of any beneficiary, or the timing or amounts of the distributions from this Trust to which any beneficiary is or may be entitled.

4.5 *Special Holdings.*  From time to time, the Trust Protector may direct the Trustee to exchange assets of the Trust for interests in a limited liability company or limited partnership and thereafter to retain such interests in trust under the terms hereof.  All such interests acquired and retained at the direction of the Trust Protector are hereinafter referred to as "Special Holdings."

Except as otherwise provided herein, at any time that the Trust Estate includes any Special Holdings, the Trust Protector shall have the exclusive management responsibility for the operations of the Special Holdings and shall direct the Trustee in the exercise of all of the Trustee's powers with respect to such Special Holdings, including, but not limited to, the Trustee's powers in investing, reinvesting, voting and managing any such Special Holdings.

All directions of the Trust Protector to the Trustee shall be communicated to the Trustee in writing. The Trustee shall be entitled to rely conclusively on each such writing as a direction of the Trust Protector without further inquiry and shall have no liability hereunder and shall be indemnified from the Trust Estate for any action taken or omitted in accordance with any such writing.  At all times during which there is no Trust Protector in office, the Trustee acting alone shall exercise all powers theretofore exercised upon the written direction of the Trust Protector.

5. TRUSTEE

5.1 *Individual and Corporate Co-Trustee.*  If at any time the position of Trustee shall be held by Co-Trustees, of whom one is an individual *("Individual Trustee(s))*and the other is a corporate Trustee (bank or trust company) *("Institutional Trustee")*, the decision of the Individual Co-Trustee(s) shall be binding and controlling with respect to all matters requiring the exercise of discretion by the Trustee in connection with distributions of principal or income, and the *Institutional Co-Trustee* shall have no responsibility or liability whatsoever to any present or future beneficiary hereunder by reason of the manner in which such discretion is exercised.

7

STEWART 000008

No asset or investment which already comprised a part of the Trust Estate at the date the Institutional Co-Trustee assumed office shall be sold or otherwise disposed of without the consent of the Individual Co-Trustee(s), and if such Individual Co-Trustee(s) refuse(s) to grant such consent the Institutional Co-Trustee shall have no responsibility or liability whatsoever to any present or future beneficiary hereunder by reason of the consequences of continued retention of such asset or investment as a part of the Trust Estate.

5.2 Powers of Trustee. In addition to, and not in limitation of, any powers conferred upon fiduciaries by any statute or under general rules of law, Trustee is expressly authorized in Trustee's sole and absolute discretion to do and perform all of the acts and things that are more fully detailed and set forth upon Exhibit B to this Trust Agreement captioned "POWERS OF TRUSTEE," the provisions of which are by this reference incorporated herein and made a part hereof.

5.3 Exclusive Duties.  Notwithstanding the provisions of Section 4.5, the Trustee shall have and retain the following exclusive duties with respect to any Special Holdings and shall exercise its powers in performing each such duty in the Trustee's sole discretion, and not at the direction of the Trust Protector:

(A)  To maintain custody accounts, brokerage accounts, and other asset accounts to (i) provide custody and safekeeping of any Special Holdings; (ii) receive trust income from Special Holdings; (iii) make disbursements in payment of trust expenditures attributable to Special Holdings; and (iv) make distributions to, or for the benefit of, trust beneficiaries attributable to Special Holdings;

(B)  To maintain storage of certificates or other evidence of ownership of Special Holdings;

(C)  To maintain trust records pertaining to Special Holdings;

(D)  To prepare and file all tax returns, information returns and other governmental filings required with respect to each trust created hereunder and to include in each such return or filing all information required by applicable law concerning Special Holdings;

(E)  To maintain an office for Trustee meetings and other trust business pertaining to Special Holdings;

(F)  To originate, facilitate and review trust accounts, reports and other communications pertaining to Special Holdings with the Trust Protector, income beneficiaries and unrelated third parties;

(G)  To respond to inquiries concerning Special Holdings from the Trust Protector, income beneficiaries and unrelated third parties;

(H) To execute documents with respect to a trust's transactions concerning Special Holdings; and

(I)  To retain accountants, attorneys, agents and other advisors in connection with performance of the Trustee's duties concerning Special Holdings.

8

STEWART  000009

5.4 *Delegation of Powers*.  Whenever the office of Trustee shall be held by Co-Trustees, the Co-Trustees may by unanimous written agreement delegate the authority and responsibility for performance of specific actions, and the authority to execute specific documents (including but not limited to the signing of checks), to fewer than all of the Co-Trustees. All actions taken and documents executed by the delegatee Co-Trustee or Co-Trustees shall be binding upon this Trust, its beneficiaries and all Co-Trustees with the same force and effect as if all of the Co-Trustees had joined in such action, or all of the Co-Trustees had joined in execution of such document.

5.5 *Actions by a Majority of Co-Trustees*.  If at any time there shall be two or more Co-Trustees, and such Co-Trustees shall be unable to agree with respect to any matter relating to the administration of this Trust, the decision and actions of a majority of the Co-Trustees shall be controlling.  Any document executed by fewer than all of the Co-Trustees in conformity with the provisions of this Paragraph shall be binding upon this Trust, its Trustee, its Trust Estate, and all beneficiaries hereunder.

5.6 *Compensation to Trustee*.  Any party serving as an Individual Trustee hereunder shall be entitled to receive fair and reasonable compensation, and to reimbursement of expenses incurred, in the performance of such party's duties under the trusts hereby created.  The reasonable compensation of an Individual Trustee for his or her services as Trustee or Co-Trustee shall not exceed the customary charges of individual trustees in the same locality for similar services.

Any Institutional Trustee shall be entitled to receive compensation for its services under this trust instrument in accordance with its schedule of rates published from time to time and in effect at the time the compensation is paid, including minimum fees and additional compensation as stated therein. The Grantor intends this provision to authorize specific rates or amounts of commissions within the meaning of any applicable state statute requiring such a provision. The Grantor recognizes that such compensation may exceed the compensation for such services in effect from time to time under the laws of the State of Wyoming.

Except as required by law, compensation paid or payable to any Trustee shall not be reduced by the compensation paid or payable to another Trustee for providing any of the services authorized herein.

5.7 *Limitation of Liability of Trustee and Successor Trustee*. The original Trustee, and any successor Trustee who succeeds to the office of Trustee, shall be presumed conclusively to have accepted the office of Trustee in reliance upon the provisions contained in this Paragraph. Grantor promises and agrees that:

(A) Every Trustee shall be deemed to have acted within the scope of its authority, to have exercised reasonable care, diligence and prudence, and to have acted impartially as to all persons interested unless the contrary be proved by affirmative evidence, and in the absence of such proof shall not be liable for loss arising from depreciation or shrinkage in value of any property authorized to be held or acquired.

(B) No Trustee, Deputy Trustee, nor Successor Trustee shall be liable for the acts or defaults of any other predecessor, existing, or successor Trustee or Deputy Trustee, including any liability for any act or failure to act by an investment advisor, for acting on a direction of the investment advisor or

9

STEWART 000010

implementing any such direction, and nor shall any of them be liable for any loss resulting from any action taken by the investment advisor or taken by any of them in accordance with a direction of the investment advisor.  No Trustee, Deputy Trustee, or Successor Trustee shall have any obligation to investigate or confirm the authenticity of investment directions it receives or the authority of the person or persons conveying them.

(C) The Trustee and any Deputy or Successor Trustee serving as an investment advisor shall be deemed to have acted within the scope of their respective authority, to have exercised reasonable care, diligence and prudence, and to have acted impartially as to all persons interested unless the contrary be proved by affirmative evidence, and in the absence of such proof shall not be liable for loss arising from depreciation or shrinkage in value of any property authorized to be held or acquired.  .

(D) No Trustee, Deputy Trustee, or Successor Trustee shall incur any liability for any action or inaction taken without knowledge of the occurrence of an event affecting the beneficial interests in the Trust unless a Trustee has written notice of the occurrence of such event.

(E) The Trustee shall incur no liability for any act or failure to act by the Trust Protector or the Investment Advisor as defined in Section 7.1, or for acting on a direction of the Trust Protector or Investment Advisor with respect to its implementation of any such direction, and it shall not be liable for any loss resulting from any action taken by the Trust Protector or Investment Advisor, or taken by it in accordance with a direction of the Trust Protector or Investment Advisor.  Furthermore, the Trustee shall have no liability under this Agreement to any trust beneficiary or any other person whose interest arises under this Agreement for the Trustee's good faith reliance on the provisions of this Paragraph or any other provision of this Agreement concerning Special Holdings.

(E) Trustee shall have no liability to Grantor, or to any present or future beneficiary of this Trust, by reason of having, during Grantor's lifetime, elected to invest all or any portion of the cash and property of Trust Estate in the purchase of and payment of premiums upon one or more policies of life insurance upon the life of the Grantor, instead of investing such cash or property in any other type of investment.

(F) During Grantor's lifetime, Trustee shall have no obligation to independently investigate or take notice of any change in the financial condition, strength, or performance of any insurance company to whom premiums are paid from the Trust Estate, or from whom insurance contracts have been or are purchased by the Trustee, or to independently monitor or take notice of the adequacy of dividends paid with respect to any insurance contracts comprising a part of the Trust Estate, or to consider whether any changes should be made in option elections under any insurance contracts held in the Trust Estate, or to consider the advisability of effecting an exchange of any insurance contract held in the Trust Estate for another insurance contract under the provisions of Section 1035 of the Internal Revenue Code, or the advisability of modifying or surrendering for its cash value any insurance contract held in the Trust Estate, unless and until a Grantor shall expressly, in a writing delivered to Trustee, suggest that Trustee ought to so investigate or monitor a particular insurance company or insurance contract, or ought to consider changing, exchanging, modifying or surrendering a particular insurance contract, in which event Trustee's duty to act shall arise only with respect to the specific actions, and the specific insurance contracts or insurance companies, identified in a Grantor's said written suggestion. During any periods of time in which

10

STEWART  000011

a Grantor is unable to act in such Grantor's own behalf, the written suggestion contemplated by this paragraph may be given by any beneficiary entitled to distribution of any portion of the principal of the Trust Estate upon the death of Grantor.

(G) Trustee shall have no liability for mismanagement or negligence to Grantor, or to any present or future beneficiary hereunder, by reason of having continued in force, and continued to pay premiums upon, any insurance contract contributed to the Trust Estate by Grantor. If a new insurance contract is acquired by Trustee, Trustee shall promptly furnish a copy of such insurance contract to Grantor. If, subsequent to the date of Grantor's receipt of such copy of the new insurance contract, Grantor makes additional contributions of cash or property to this Trust, Trustee shall have no liability for mismanagement or negligence to Grantor, or to any present or future beneficiary hereunder, by reason of having acquired such insurance contract or by reason of having continued the same in force and having continued to pay premiums thereon.

5.8 *Resignation or Removal of Trustee*. Any trustee acting hereunder may resign at any time by delivering to the Trust Protector a separate acknowledged instrument and such resignation shall be effective upon a successor trustee, whether institutional or individual, being appointed. The remaining Trustee(s) may approve the accounts of and give a full and complete release and discharge to, any such resigned or removed Trustee without liability to any present or future beneficiary hereunder.

5.9 *Removal of Trustee*. The Trust Protector shall have the power to remove any institutional or individual Trustee or Co-Trustee without cause or for any reasons the Trust Protector deems to be sufficient by a written instrument delivered to the Trustee not less than thirty (30) days prior to the effective date of such removal.

5.10 *Successor Trustee Appointment*. If at any time a Trustee shall resign, shall be removed or shall, for any other reason cease to, or become unable to, act as Trustee hereunder and there shall exist a vacancy in the office of Trustee, such vacancy shall be filled by appointment made by the Trust Protector through a separate acknowledged instrument delivered to the Trustee so appointed. The Successor Trustee appointment shall be effective at such time as may be specified by the Trust Protector and, until such appointment becomes effective, the Trust Protector may revoke the appointment. A Successor Trustee shall qualify by filing its consent to act with the trust records.

The Trust Protector may not appoint any individual to serve as a Successor Individual Trustee who is disqualified from holding the position by law or pursuant to any other provisions of this Trust Agreement. Any party appointed as a Successor Institutional Trustee must be a bank or trust company having not less than two (2) full-time trust officers, unless after reasonable inquiry no bank or trust company can be found which is willing to serve as Trustee. Under no circumstances may the Grantor or any person related or subordinate to Grantor within the meaning of Section 672(c) of the Internal Revenue Code be appointed as Trustee hereunder.

If no Successor Trustee is appointed and accepts appointment within sixty (60) days after resignation by or removal of a Trustee, the resigned or removed Trustee may appoint a Successor Trustee or may bring an action in an appropriate tribunal for the appointment of such Successor Trustee. The costs and expenses of any such action, including without limitation the compensation

11

STEWART 000012

of attorneys and guardians, shall be paid from principal or income, or both of the Trust Estate, as the Trust Protector shall determine in his sole discretion.

5.11 *Successor Trustee Authority and Liability.* A Successor Individual or Institutional Trustee shall have, from and after its appointment or succession to office hereunder, and without any assignment or other act by any person, all the title, interest, rights and powers, including discretionary rights and powers, which are by the provisions of this Agreement created to vest in *such* Trustee herein. A Successor Trustee shall not be personally liable or responsible for any act or default of any predecessor Trustee or for any loss or expense resulting from or occasioned by anything done or neglected to be done in the administration of the Trust Estate prior to such successor Trustee becoming Trustee hereunder.

5.12 *No Bonding or Court Supervision.* No Trustee or successor Trustee shall be required in any jurisdiction: (1) to provide any bond as Trustee; or (2) to qualify before, be appointed by, or account to any court except in cases of breach of trust; or (3) to obtain the approval or order of any court in connection with the exercise of any power or discretion herein granted to the Trustee.

## 6. CONTRIBUTIONS TO TRUST ESTATE

6.1 *Contributions.* Grantor or any other person may, at any time and from time to time, transfer, deliver, bequeath or devise to Trustee additional cash or property acceptable to Trustee, which shall thereupon become a part of the Trust Estate and shall be held, managed, and paid over by Trustee, in accordance with and subject in all respects to the provisions of this Agreement. Trustee shall not, however, accept any gift of a life insurance policy unless Trustee already holds assets which, immediately prior to the gift, are not subject to the beneficiaries' right of withdrawal hereafter mentioned, and are readily convertible to cash in an amount at least equal to the value of the life insurance policy for federal gift tax purposes. Trustee may not make payment of insurance premiums at any time while any beneficiary holds unexpired rights of withdrawal with respect to a contribution to this Trust, unless Trustee, at the time of making such premium payment and continuously thereafter until expiration of all such rights of withdrawal with respect to such contribution, holds other assets that are readily convertible to cash in an amount sufficient to fully satisfy such withdrawal rights. Any property, whether originally or subsequently transferred to Trustee, may be commingled and treated as part of a single trust. All property contributed to this trust by an individual Grantor shall be conclusively presumed to have constituted the sole and separate property of such Grantor at the time of contribution thereof regardless of the source of such contribution.  All property contributed to this trust by both Grantor shall be conclusively presumed to have constituted the community property of such Grantor at the time of contribution thereof regardless of the source of such contribution.

6.2 *Accrued Income and Dividends.* Trustee shall be entitled to all income accrued and unpaid on any securities at the time of their receipt, and except as otherwise provided in the attached "Powers of Trustee," the same shall be income. No dividend, the record date of which is prior to the delivery to Trustee of the shares on which such dividend is declared, shall become property of the trust.

6.3 *Beneficiaries' Rights of Withdrawal.* Each contribution to the Trust Estate during any year by or on behalf of a Grantor, or by any other person (excluding gifts to the Trust Estate made by Will

12

STEWART 000013

and also excluding donations by a Grantor to the extent such Grantor shall have directed in writing at the time of such donation that all or any portion thereof shall not be subject to the rights of withdrawal contained herein) is hereafter referred to as a "Withdrawn Contribution." Each person who would, as of the date of a Withdrawn Contribution, be entitled to distribution of any portion of the principal of the Trust Estate in the event of the death of Grantor, shall have the right to withdraw from the Trust Estate all or a portion of such Withdrawn Contribution upon the following terms and conditions:

(A) *Individual Annual Limitation on Withdrawals.* The aggregate of all withdrawals from the Trust Estate by any one beneficiary during any one calendar year shall not exceed $5,000.00, or five percent (5%) of the value of the Trust Estate at the time the last withdrawal is made, whichever shall be the greater amount, PROVIDED, HOWEVER, if the Withdrawn Contribution consisted of an existing policy of life insurance having a cash value, the individual annual limitation on withdrawals by one beneficiary for the calendar year in which such Withdrawn Contribution was made shall be an amount equal to the annual federal gift tax exclusion amount provided by I.R.C. section 2503(b) in effect for such calendar year.

(B) *Aggregate Limitation on Withdrawals.* With respect to each Withdrawn Contribution, the aggregate amount that may be withdrawn from the Trust Estate by all beneficiaries combined shall not exceed the amount of such Withdrawn Contribution. If the total amount requested to be withdrawn by all beneficiaries with respect to a Withdrawn Contribution exceeds the said maximum aggregate withdrawn amount, the Trustee shall distribute the maximum aggregate withdrawn amount in equal shares among the beneficiaries requesting withdrawal, subject to the limitation on individual withdrawals stated in the preceding subparagraph. Any amount that cannot be distributed to one beneficiary by reason of the said individual limitation shall be added to the amount available for distribution to other beneficiaries with respect to such withdrawn Contribution.

(C) *Notification to Beneficiaries.* Each beneficiary designated herein as having a withdrawal right with respect to a Withdrawn Contribution, or his or her guardian if the said beneficiary is a minor or is under a legal disability, shall be kept reasonably informed by the Trustee of all Withdrawn Contributions that are made or expected to be made. Such information shall be in the form of written notice given promptly after a Withdrawn Contribution to the trust is received. Such notice shall be deemed to have been given on the date the same is personally delivered to the beneficiary or to the beneficiary's legal guardian, or on the date when the same is deposited in the United States Mail, postage fully prepaid, addressed to the beneficiary's last known mailing address as shown in the Trustee's records.

(D) *Time Allowed for Exercise of Withdrawal Rights.* The right of withdrawal granted herein with respect to each Withdrawn Contribution must be exercised by a beneficiary within thirty (30) days following the giving of the written notice described in the preceding subparagraph, and if not so exercised, such right of withdrawal shall lapse, except when such lapse would constitute a taxable gift, in which event the right of withdrawal shall continue until the lapse thereof will not constitute a taxable gift.

(E) *Manner of Making Requests for Withdrawals.* Withdrawals shall be by written request

13

STEWART  000014

delivered to the Trustee prior to the expiration of the period allowed for exercise of the beneficiary's withdrawal rights. If the beneficiary is a minor or is otherwise under a legal disability during a part or all of a withdrawal period, the guardian of the beneficiary's estate may exercise such withdrawal right on the beneficiary's behalf.

(F) *Satisfaction of Withdrawal Request.* The Trustee may satisfy the exercise of a beneficiary's withdrawal right by distributing cash or other property of the Trust Estate to the beneficiary requesting the withdrawal. Ownership interests in insurance policies may be distributed to beneficiaries in satisfaction of withdrawal rights only if Trustee is satisfied, based upon an analysis of then prevailing law, that Trustee's right to satisfy a withdrawal request by distribution of an ownership interest in an insurance policy would not defeat the tax planning objectives of this Trust.

## 7. INVESTMENT ADVISOR

7.1 *Appointment.* STEPHEN A. HATCHER, CFP, is hereby appointed Investment Advisor (the "Investment Advisor"), with full power to manage the investments of the trust, including power to purchase, sell, and retain all of the trust assets, and power to exercise voting, subscription, conversion, option and similar rights with respect to such property and to participate in or consent to any voting trust, reorganization, merger, dissolution or other action affecting any such property. The Institutional Trustee shall follow the directions of the Investment Advisor with respect to all matters relating to the management and investment of trust assets.

7.2 *Resignation and Removal of Investment Advisor and Successor Appointment.* An Investment Advisor may resign by a separate acknowledged instrument delivered to the Trust Protector, such resignation to be effective upon a successor Investment Advisor being appointed. Upon the resignation of the Investment Advisor, the Trust Protector may appoint a successor Investment Advisor. The Trust Protector may remove the Investment Advisor and appoint a successor Investment Advisor to act upon such terms and conditions as the Trust Protector may determine.

If no successor Investment Advisor has qualified within thirty (30) days after the resignation or removal of the Investment Advisor, then the Institutional Trustee shall become responsible for the investment of the trust assets (beginning with the 31st day following the resignation or removal of the Investment Advisor) and the provisions regarding the Investment Advisor shall not apply until and unless a successor Investment Advisor is properly designated and accepts its designation as such.

Any appointment of a successor Investment Advisor pursuant to this trust instrument shall be made by a separate acknowledged instrument delivered to both the Institutional Trustee and the Individual Trustee, and such appointment shall be effective at such time as may be specified in such instrument and, until such appointment becomes effective, the Trust Protector may revoke the appointment. A successor Investment Advisor shall qualify by filing its consent to act with the trust records.

7.3 *Investment in and Retention of Securities.* The Investment Advisor, is authorized to invest in or retain any securities or other property, real or personal (within or without the United States), including but not limited to any security as defined by the Securities Act of 1933, any contract of sale of a commodity for future delivery within the meaning of the Commodity Exchange Act, and any other investment ("investment"), including, without limitation, shares or interests in any

14

private investment fund, joint venture, or other general or limited partnership, limited liability company, or an open-end or closed-end management type investment company or unit investment trust, whether registered under the Investment Company Act of 1940 or unregistered; any money market instrument; precious metals; foreign exchange; structured products; and swaps, caps, collars and other derivative instruments of a financial nature (and any diversification requirement that would otherwise apply to such investment, including one imposed by a Prudent Investor Act, is negated).

The Trustee, at the direction of the Investment Advisor, is authorized to invest in or retain any securities or other property, real or personal (within or without the United States), including without limitation: any security as defined by the Securities Act of 1933, any contract of sale of a commodity for future delivery within the meaning of the Commodity Exchange Act, shares or interests in any private investment fund, private equity or venture capital fund, hedge fund, common trust fund, joint venture, general or limited partnership, limited liability company, statutory or common law business trust, statutory trust, real estate investment trust or an open-end (including any mutual fund) or closed-end management type investment company or unit investment trust, whether registered under the Investment Company Act of 1940 or unregistered, any money market instrument, bank deposit account (including but not limited to savings, time, certificate of deposit and transaction accounts), precious metal, foreign exchange, structured product, insurance contract, options, options on futures and variable forward contracts, swaps, caps, collars and other derivative instruments of a financial nature, notwithstanding the fact that the trustee, investment manager or custodian, its respective parent or any affiliate, provides services (whether as manager, issuer, underwriter, distributor, custodian, advisor, agent, or otherwise) with respect to any such investment and further notwithstanding that the trustee, investment manager, custodian or its respective parent or any affiliate may receive compensation with respect to any such investment (in addition to trustee's commissions), so long as the total compensation received is reasonable, and neither the Trustee nor the Investment Advisor shall have any duty to make further disclosure. To the extent permitted by local law, this provision is intended to be a specific override of any contrary provision of law prohibiting such additional fees or otherwise requiring either a reduction in Trustee's commissions or Investment Advisory fees or an election between such additional fees and such commissions or fees. Any diversification requirement that would otherwise apply, including one imposed by a Prudent Investor Act, is negated.

7.4 *Employment of Administrative Services, Including Affiliates.*  The Trustee is authorized, to employ such agents, advisors and other counsel, including but not limited to entities affiliated with the Trustee or Investment Advisor, and to pay out of income or principal or both the reasonable charges and fees of such agents, advisors and counsel, as it shall in its sole discretion determine, provided, however, that the Investment Advisor shall have the sole power to select brokers and dealers for the sale or purchase of any securities or other investment property in the trust. This authorization may include, but shall not be limited to, an affiliated broker acting in a principal or agency capacity for equity and fixed income securities, routing orders for over-the-counter (OTC) stocks to a market maker affiliated with any Trustee or Investment Advisor, routing listed stocks to specialists affiliated with any Trustee or Investment Advisor, routing listed options through a proprietary trading operation affiliated with any trustee, or routing after-hours orders to

15

STEWART 000016

a proprietary trading operation in which any or Investment Advisor or an affiliate owns an equity interest. In such case the Trustee, Investment Advisor or its respective affiliate may receive both monetary and non-monetary "payment for order flow," including, without limitation, an inter-company transfer of funds in connection with orders routed to an affiliated market maker; monetary compensation (including fee sharing) from, and participation in the profits of, certain affiliated and independent exchange specialists who execute orders; other compensation as part of reciprocal order routing arrangements with various exchange specialists and dealer firms; and rebates and credits against fees paid by various exchanges to member firms. Except as required by law, the Trustee's compensation shall not be reduced by any additional compensation received by the trustee, its parent, or any affiliate thereof, or any agent, principal, advisor, counsel, broker, dealer, market maker or specialist (including exchange specialist) affiliated with the trustee, its parent or any affiliate thereof, for providing any of the services authorized herein. Except as required by law, the Investment Advisor's compensation shall not be reduced by any additional compensation received by any affiliate thereof, or any agent, principal, advisor, counsel, broker, dealer, market maker or specialist (including exchange specialist) affiliated with the Investment Advisor or any affiliate thereof, for providing any of the services authorized herein.

## 8. ADMINISTRATIVE PROVISIONS

8.1 *Accountings.* Trustee shall render an accounting once each twelve (12) months to the Trust Protector. The account shall show the receipts, disbursements, and distributions of principal and income since the last accounting, and the assets on hand. If no objection shall be made to any account so rendered by the Trust Protector within ninety (90) days after a copy thereof has been delivered, the Trust Protector shall be conclusively presumed to have approved all actions reflected on the account so rendered. The approval of Trustee's accounts by the Trust Protector, shall be binding and conclusive upon all beneficiaries hereunder.

The Trustee shall not be required to render annual or other periodic accounts to any court. The Trustee shall take action for the approval of its accounts at such times and before such courts, or without court proceedings, as the Trustee, in its sole discretion, determines. The Trustee shall pay the costs and expenses of any such action, including but not limited to the compensation and expenses of attorneys and guardians, from principal or income, or both, of the trust as an Institutional Trustee, in its sole discretion, determines.

8.2 *Change of Trust Situs.* The Trust Protector shall have the power to remove all or part of the Trust Estate or to change the situs of administration of the Trust from one jurisdiction to another and to elect, by a separate acknowledged instrument filed with the trust records, that the law of such other jurisdiction shall govern the administration of the trust, provided that the Trust Protector shall not make any such election that would alter any beneficial interest under the trust.

8.3 *Filing or Registration of Trust.* The Trustee is hereby directed not to file this Trust instrument or any copy thereof in any Court, and not to register this Trust with any Court or governmental

16

STEWART  000017

agency, unless such filing or registration be requested by a beneficiary or be unconditionally required in order to avoid penalties imposed by law, or unless in the discretion of such Trustee the filing or registration shall be in the best interests of the beneficiaries hereunder.

8.4 *Administration of Separate Trust Estates*. If at any time after the death of Grantor Trustee is administering two or more separate Trust Estates hereunder and Trustee determines, in Trustee's discretion, that it would be good business practice to manage such separate Trust Estates in conjunction with one another, Trustee may allocate undivided interests in a common asset to each of such separate Trust Estates. If separate Trust Estates are managed in conjunction with one another, the properties and property interests contained in each separate Trust Estate, together with the income therefrom and the expenses attributable thereto, shall be separately accounted for by Trustee.

8.5 *Merger of Trusts*. If, after the death of Grantor, the Trustee is managing other trusts for any beneficiaries for whom trusts are being administered under the terms and provisions of this Agreement, then the Trustee is given the power to merge said trusts and manage them as a single trust for the same beneficiaries, if the provisions of such trusts before merger are substantially the same; or if the provisions of such trusts are not substantially the same, then the Trustee is given the power to administer such trusts together as nearly as is feasible.

8.6 *Deputy Trustees*. Trustee shall have the power to appoint one or more Deputy Trustees and to delegate thereto such power and authority as the Trustee shall elect, subject to the following terms and conditions:

(A) The appointment shall be made by written instrument, signed by the Trustee. No other formalities are required.

(B) A Deputy Trustee must exercise all delegated power and authority in a fiduciary capacity.

(B) A Deputy Trustee shall have the legal status of an agent of this Trust with respect to acts and conduct of the Deputy Trustee that are within the scope of the power and authority delegated by the Trustee.

(C) Unless appointed by Trustee with Trust Protector's consent, a Deputy Trustee must have the same qualifications as a successor Trustee appointed in event of vacancy in the office of Trustee, as provided elsewhere herein.

(D) A Deputy Trustee shall account solely to the Trustee for the income and principal of any assets entrusted to it.

(E) A Trustee may not delegate to a Deputy Trustee the responsibility or authority to determine whether discretionary distributions of principal or income shall be made to beneficiaries, or to determine the timing or amounts of any such discretionary distributions. Trustee's discretion relating to distributions to beneficiaries must be exercised solely by the Trustee.

(F) Trustee may appoint a bank trust department or a trust company as a Deputy Trustee, and may

17

delegate to such Deputy Trustee the power and authority to invest and reinvest cash or other liquid assets of the Trust Estate delivered to it by Trustee. Such a Deputy Trustee is expressly authorized and empowered to invest such cash or other liquid assets in, and to commingle the same with, common trust funds maintained by it for the investment of trust funds held by such corporate Trustee. Any other investments must be approved by Trustee.

(G) If at any time the Trust Estate includes real estate, or an ownership interest in a proprietorship business or closely-held corporation, which the Trustee is unwilling or legally unable to accept or hold in trust solely by reason of the location of the real estate, or the difficulty or inconvenience to the Trustee of managing a particular parcel of real estate, or business, or investment in a closely-held corporation, Trustee shall not liquidate such asset except with the consent of a majority in interest of the then-current beneficiaries entitled to receive the income of the Trust Estate. If such consent cannot be obtained, Trustee shall appoint one or more Deputy Trustees to hold and manage such specific asset or assets, and account to the Trustee at reasonable intervals to be determined by the Trustee for the income and principal thereof. Trustee shall have no liability to any beneficiary hereunder with respect to the consequences of maintaining such asset or assets as a part of the Trust Estate, or any losses occasioned thereby. Nothing herein contained shall, however, be construed to require that Trustee obtain the consent of beneficiaries before liquidating an asset or investment if the Trustee has determined that holding such asset or investment involves an unreasonable risk of loss and would be imprudent and not in the best interests of the beneficiaries. By way of illustration and not limitation, if Trustee for legal or policy reasons determines that it cannot hold and manage real property located in another State, the management of such property shall be entrusted to a Deputy Trustee unless a majority in interest of the income beneficiaries consent to sale and liquidation of the property; but if Trustee determines that a particular investment involves a high degree of risk and constitutes an imprudent investment of trust funds, Trustee may liquidate the investment without the consent of beneficiaries unless such liquidation has been expressly prohibited elsewhere in this Trust Agreement.

(H) Each Deputy Trustee shall, from and after its appointment and without any assignment or other act by any person, have all the title, interest, rights and powers with respect to the particular property to be held and managed by it, which are by the provisions of this Agreement created to vest in the Trustee named herein.

(I) No Deputy Trustee shall have any liability to any beneficiary of this Trust with respect to any act or omission of the Trustee that appointed such Deputy Trustee.

Trustee may terminate the appointment and authority of a Deputy Trustee at any time and for any reason deemed sufficient by Trustee. Trustee shall give written notice of such termination to all parties known to Trustee to have been dealing with the terminated Deputy Trustee, and if management of any real estate was entrusted to the terminated Deputy Trustee, Trustee shall cause a notice of termination of the appointment of the Deputy Trustee to be recorded in the public records of each jurisdiction in which such real estate is located. Nothing herein contained shall be construed to limit or contravene the provisions of the "Powers of Trustee" attachment to this Trust Agreement, relating to Trustee's general power to appoint and remove Deputy Trustees with respect to cash accounts and reserves.

18

STEWART  000019

8.7 *Tax Elections*. Unless the manner in which any such election shall be made is expressly directed herein, the Individual Trustee may make any elections under the tax laws applicable to the estates of Grantor and to the Trust Estate that the Individual Trustee determines to be appropriate. No compensating adjustments between principal and income nor with respect to any trust shall be made even though the elections made under the tax laws by the Trustee may affect the interests of the beneficiaries in any manner whatsoever. The action of the Trustee shall be binding upon all beneficiaries.

8.8 *Payment of Insurance Premiums*. The Trustee shall be under no duty to pay, or see to the payment of, premiums on any policies of insurance that shall at any time comprise a part of the Trust Estate hereunder, unless sufficient unencumbered funds are available in the Trust Estate for payment of such premiums, which Trustee is permitted under the provisions of this Trust Agreement to use for the purpose of paying such premiums. Trustee is expressly authorized, however, to borrow against any policy of insurance for the purpose of paying premiums on such policy, or upon any other policy of insurance comprising a part of the Trust Estate.

8.9 *Collection of Life Insurance Proceeds*. Upon the death of a Grantor, the Trustee shall collect the net proceeds of any policy on the life of such Grantor held by or known to and payable to the Trustee or may exercise any optional method of settlement thereunder. Payment to and the receipt of the Trustee shall be a full discharge of the liability of any insurance company, which need not take notice of this instrument or see to the application of any payment. If other assets of the Trust are insufficient to defray expenses, the Trustee need not engage in litigation to enforce payment of any policy without satisfactory indemnification for any resulting expense.

8.10 *Purchase of Assets at Request of Personal Representative*. Trustee shall at any time within a period of 15 months after the death of a Grantor purchase with trust funds, at the market value thereof at the time of purchase, any securities or other property that the Personal Representative of the estate of such Grantor requests that Trustee purchase, provided the property to be purchased is held in the probate estate of such Grantor or in the Trust Estate of a Trust established during the lifetime of such Grantor. In case of uncertainty as to the market value of any property, it shall be fixed by Trustee and the Personal Representative, if the property is held in the probate estate of a deceased Grantor or, in the case of property held in a Trust established during the lifetime of such Grantor, the Trustee of such Trust, and their determination as to such value shall be binding and conclusive upon all persons claiming under this Agreement. If they shall be unable to agree, such value shall be determined by an appraiser to be agreed upon and appointed by them and his determination shall be conclusive in like manner. The expenses of such appraisal shall be borne equally by this Trust and by the estate or Trust from which the property is to be purchased. Any such purchase transaction shall be consummated as soon as possible after request is made by the Personal Representative, and in no event more than thirty (30) days after such request is made to the Trustee.

8.11 *Copies of Trust Agreement for Beneficiaries*. After the death of Grantor, each beneficiary who is entitled to distribution of any part of the net income or principal of the Trust Estate shall be entitled to receive a copy of this Trust Agreement, and all amendments thereto. In the case of a

19

STEWART  000020

legal guardian shall be entitled to request and receive such copy. Each request for a copy of the Trust Agreement shall state the address to which the copy is to be mailed or delivered. Trustee's failure or refusal to provide a copy of the Trust Agreement to a party entitled to receive the same, within fifteen (15) days following Trustee's receipt of such party's written request that Trustee do so, shall constitute sufficient legal grounds for removal of the Trustee.

8.12 *Amendment of Administrative Provisions.*  Notwithstanding the preceding provisions of this instrument, the Trust Protector shall have the power, by a separate acknowledged instrument filed with the trust records, to amend the administrative provisions of this trust instrument (including the provisions relating to the Institutional Trustee).  The determination by the Trust Protector as to the provisions subject to amendment shall be conclusive upon all persons interested in the trust.  The Trust Protector may exercise this power from time to time and may release this power in whole or in part, provided that neither the Trust Protector shall amend the trust in any manner that would alter any beneficial interest under the trust.

## 9.  MISCELLANEOUS

9.1 *Legal Status of Beneficial Interests.* To the maximum extent permitted by law, no beneficiary shall have any right to anticipate, transfer, or encumber any part of any interest in the Trust Estate, nor shall any part of the beneficiary's interest be liable for his or her debts or obligations (including alimony) or be subject to attachment, process, and each beneficiary's interest in the Trust Estate shall constitute the separate property of the beneficiary and shall be free from any right, title, interest, or control of his or her spouse.

9.2 *Applicable Law.* This trust instrument shall be construed under, and the trusts created shall be governed by, the laws of the State of Wyoming.  Any action or proceeding relating to this trust shall be brought and enforced in any state or federal court of competent jurisdiction in the State of Wyoming.

9.3 *Severability.* If any provision of this Agreement is legally held to be unenforceable, the remaining provisions shall nevertheless be carried into effect.

9.4 *Costs of Unsuccessful Contest.* In the event any beneficiary commences any legal action to contest the validity of this Trust Agreement, or the validity or enforceability of any of its provisions, and does not prevail in such legal action, the reasonable attorney's fees and costs of suit incurred by Trustee in successfully defending the contest shall be charged against, and offset from, any amounts distributable to such beneficiary from the Trust Estate of this Trust.

9.5 *Parties Bound by Agreement.* This Agreement shall inure to the benefit of, and shall be binding upon, the heirs, estates, personal representatives, successors and assigns of Grantor and the Trustee.

This irrevocable trust agreement has been executed by the Grantor on October 28, 2019.

20

STEWART  000021

GRANTOR:

SHAWN A. STEWART

TRUSTEE:

WIND RIVER JIROCH LLC

By: _____

James Roach II, Member/Manager

STATE OF ARIZONA )
                 ) ss.
County of Maricopa )

On the 2-8 day of October, 2019, SHAWN A. STEWART, known to me, the undersigned Notary Public, acknowledged to me that he executed the foregoing A.L.A. Irrevocable Trust Agreement for the purposes therein contained.

IN WITNESS WHEREOF, I hereby set my hand and official seal.

My Commission Expires: 9/1/23        _____
                                              NOTARY PUBLIC

VICTOR FAVELA
Notary Public - Arizona
Maricopa County
Commission # 569386
My Comm. Expires Sep 1, 2023

ATTORNEY CERTIFICATION

The undersigned, JAMES ROACH II, acknowledges that he is a licensed attorney-at-law and has represented the Grantor identified herein in preparing this trust instrument.

_____
JAMES ROACH II, ESQ

21

STEWART 000022

SCHEDULE A

$1,000.00 CASH



22

STEWART 000023

## SCHEDULE B
## POWERS OF TRUSTEE

1.      *Life Insurance Policies.*  To acquire as an asset of the Trust Estate one or more life insurance policies on the life of the Grantor, or on the lift of any person who whom the income of the trust is then payable, or on the life of any person in whom such income beneficiary has an insurable interest, from such companies and in such amount as Trustee may deem advisable: to pay premiums on all policies of life insurance that comprise a part of the Trust Estate, from income or principal or both as Trustee may determine (subject to any express restrictions set forth in the Trust Agreement of which this document is made a part) and any such insurance shall be payable to:  and all incidents of ownership shall be vested in Trustee.

2.      *Insurance Proceeds; Options.*  To permit the proceeds of any insurance policy payable to Trustee, or any part of such proceeds, to remain with the company under any option available under the terms of each policy, and Trustee shall not be liable for any loss resulting to the Trust Estate by reason of having permitted such retention.

3.      *Retention of Existing Investment.*  To retain and hold in or as a part of the Trust Estate any investment or other property acquired from Grantor or Grantor's estate, with full power, nevertheless, to change and vary the forms of any investment from time to time as the Trustee shall deem best.

4.      *Operation of Business.*  To continue and operate, any business owned by Grantor and to do all things deemed advisable in connection therewith, including the power to incorporate or otherwise change the form of the business and to contribute additional capital, as Trustee may deem best.

5.      *Management and Operation of Real Estate.*  To manage, operate, repair and improve, and to rent or lease, regardless of the length of the term, any real estate forming a part of the Trust Estate.  Trustee shall have the power to do all things necessary or advisable in connection with the management and operation of any farm or ranch properties and any natural resource properties.

6.      *Investments.*  To open and maintain accounts with stock brokerage firms, to create and fund additional trusts or sub-trusts, and to execute all documents necessary for the establishment and maintenance thereof and, on behalf of the Trust, to invest the Trust Estate in, and to buy, sell, trade, and/or retain stocks, bonds, notes, options (including puts and calls and whether or not covered by like securities held in the brokerage account), and other securities of any nature (including short sales, and sales on margin), and for such purposes Trustee may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by Trustee to such brokers as security for loans and advancement made to the Trustee; and

To invest in, retain, or dispose of any securities managed, issued, underwritten or distributed by any Trustee or by any of its affiliates, and any participation in any investment company registered under the Investment Company Act of 1940 for which the Trustee or a Deputy Trustee (i.e. investment advisor) or any affiliate of either is an advisor or agent, notwithstanding the fact that such trustee or advisor or affiliate may receive separate fees, commissions or other costs directly from such security

23

STEWART 000024

or fund, and the Institutional Trustee shall have no duty to make further disclosure. No Institutional Trustee or Investment Advisor shall be liable for any failure to diversify trust assets.

To invest in, retain, or dispose of any other real or personal property including (but not limited to) precious metals or stones, commodities and commodity interests, interests in oil, gas, and mineral wells, mines, and leases, shares or interest in investment trusts and common trust funds, leaseholds or undivided fractional interests in real estate and interests in general or limited partnerships as Trustee may deem advisable, even though such investments may not be of the character generally deemed permissible for investments by fiduciaries. Investments need not be diversified and may be made or retained with a view to possible increase in value. Trustee may at any time hold cash or readily marketable securities of low yield for such period as Trustee may deem advisable.

7.      *Exercise of Conversion Rights*.   To exercise any rights and privileges to convert investments or other property into other investments or other property and to subscribe for additional securities, and to hold any assets so acquired as investments of the Trust Estate.

8.      *Voting on Securities*.  To vote in person or by proxy on any stocks or other securities held by Trustee.

9.      *Registration of Securities or Property*.  To cause to be registered in Trustee's name, individually or as Trustee, or in the name of a nominee, any securities or other property from time to time held by Trustee, or to take and keep them unregistered, and to retain them or any part thereof for such conditions that they will pass by delivery.

10.     *Corporate Transactions*.  To join in, or to dissent from and to oppose, the reorganization, recapitalization, consolidation sale or merger of corporations or properties in which Trustee may be interested as Trustee upon such terms and conditions as Trustee may deem wise, and to accept any securities that may be issued upon any such reorganization, recapitalization, consolidation sales or merger, and thereafter to hold the same.

11.     *Purchase, Sale, and Disposition of Property*. · To purchase, sell, exchange; convey or dispose of, or to acquire or grant options with respect to any property, real or personal, and any purchase or sale may be made by private contract or by public auction, and for cash or upon credit, or partly for cash and partly upon credit, as Trustee may deem best, and no person dealing with Trustee shall be bound to see to the application of any monies paid.

12.     *Right to Borrow and Provide Security*.  To borrow money from any financial institution or source of financing deemed appropriate by Trustee, for any purpose connected with the protection, preservation or improvement of the trustee estate whenever in Trustee's judgment advisable and as security therefor to mortgage or pledge any property forming a part of the Trust Estate upon such terms and conditions as Trustee may deem advisable.

13.     *Right to Make Conveyances and Encumbrances*.  To make, execute, acknowledge and

24

STEWART 000025

deliver any and all deeds, leases, and other legal instruments necessary or proper to carry out the provisions of the Agreement and to pledge mortgage and encumber any and all assets of the Trust Estate for any purpose, at any time, from time to time, on any terms and in any manner as the Trustee may in Trustee's sole discretion deem advisable and appropriate and to pledge or encumber assets of the Trust Estate to collateralize the loans and other obligations of any beneficiary hereunder other than a Grantor, and/or to act as guarantor on such loans and obligations of any such beneficiary hereunder other than a Grantor.

14.      *Loans or Grantor's Estate*.  To lend funds of the Trust Estate to Grantor's estate, upon such commercially reasonable terms and conditions as Trustee shall approve.

15.      *Establishment of Reserves*.  To establish, from rents, profits and other income, such reserve for taxes, assessments, insurance, repairs, improvements, depreciation and maintenance of buildings and other property, as Trustee shall deem advisable and consistent with the purpose of Grantor.

16.      *Distribution in Cash or Property*.  Except as otherwise expressly provided elsewhere herein, to make any division or distribution in cash or in kind, or partly in cash or partly in kind, on the basis of market values at the time of such division or distribution, or if there be no recognized market value at the fair value thereof.  Any determination of recognized market value or fair value of any security or property made by Trustee for the purposes hereof shall be deemed presumptively correct.

(A)      If the decedent by reason of whose death property is being transferred died prior to January 1, 2010, Trustee must, unless expressly directed otherwise in the Trust Agreement, distribute assets, including cash, fairly representative of appreciation or depreciation in all of the property available for distribution in satisfaction of such pecuniary gift or

(B)      If the decedent by reason of whose death property is being transferred died after December 31, 2009, Trustee shall not transfer property in satisfaction of a pecuniary gift if the carryover capital gains tax basis in that property, determined in the manner directed by Internal Revenue Code Section 1022 (after any adjustment in basis of the property made by the decedent's estate, as provided for in I.R.C. Sections 1022 and 6018), is less than the fair market value of the property at the date of the decedent's death, unless the recipient of the property makes arrangements satisfactory to Trustee to reimburse the Trust Estate for the income taxes Trustee will be required to pay because of gain the Trust will be required to recognize by reason of the property transfer.

17.      *Payment of Expenses*.  To pay any and all expenses, costs, fees (including Trustee's own fees), taxes, penalties or other charges and except as otherwise expressly provided herein to charge the same against principal or income or partly against the principal and partly against the income of the whole or any part of any trust.

18.      *Reliance on Furnished Information*.  To rely upon any information, affidavit, certificates, letter, notice, telegram, or other document, or upon any telephone conversation believed by Trustee to be genuine and sufficient.

25

STEWART 000026

19.   *Employment of Others.*  To employ agents, attorneys, investment advisors, and other persons whose services may be required or advisable in the administration of the Trust Estate, including but not limited to entities affiliated with any Trustee or Deputy Trustee, and to pay out of income or principal or both the reasonable charges and fees of such agents, attorneys, and/or investment advisors, as it shall in its sole discretion determine; provided, however, that an Investment Advisor shall have the sole power to select brokers and dealers for the sale or purchase of any securities or other investment property in the trust.  This may include, but shall not be limited to, routing orders for over-the-counter (OTC) stocks to a market maker affiliated with the Institutional Trustee, routing listed stocks to specialists affiliated with the Institutional Trustee, routing listed options through a proprietary trading operation affiliated with the Institutional Trustee, or routing after-hours orders to a proprietary trading operation in which the Institutional Trustee or an affiliate owns an equity interest.  In such case the Institutional Trustee or an affiliate may receive both monetary and non-monetary "payment for order flow", including, without limitation, an inter-company transfer of funds in connection with orders routed to an affiliated market maker; monetary compensation from, and participation in the profits of, certain affiliated and independent exchange specialists who execute orders; other compensation as part of reciprocal order routing arrangements with various exchange specialists and dealer firms; and to pay them reasonable compensation.

20.   *Arbitration of Differences.*  To submit to final arbitration any matter of difference with others.

21.   *Settlement and Enforcement of Claims.*  To compromise, compound and settle any obligation due to or from the Trust Estate (including Grantor's estate where appropriate); to reduce the rate of interest on and to extend or otherwise modify or to foreclose upon default or otherwise enforce, any such obligation to enforce as to abstain from the enforcement or any right, obligation or claim; and to abandon, if in Trustee's absolute discretion Trustee shall deem it advisable, any property, real or personal, which may at any time form a part of the Trust Estate and of the beneficiaries thereof, either before or after default.

22.   *Depositories and Investment of Cash.*  To create, maintain and invest in savings accounts, checking accounts, certificates of deposit, money market funds, and all other forms of cash reserves and deposits, including safety deposit boxes, whether or not interest bearing and to maintain said cash accounts and reserves with any institution or depository deemed appropriate by the Trustee.  If the office of Trustee is held by Co-Trustees and all Co-Trustees shall so instruct the depository checks and withdrawals may be signed and made by any one Co-Trustee without the co-signature of any other Co-Trustee.  Such accounts and deposits shall be titled in the name or names designated by the Trustee.  Trustee may appoint a Deputy Trustee or Deputy Trustees pursuant to the authority granted in Paragraph 23 below, to function as would the Trustee in connection with any cash accounts or reserves including the authority to make deposits to and withdrawals from such cash accounts and reserves.

23.   *Deputy Trustees.*  Trustee shall have the power to appoint one or more Deputy Trustees to assist Trustee in the administration of this Trust, and to perform any act of administration of this Trust on behalf of Trustee.  Trustee may delegate to a Deputy Trustee such power and authority as the Trustee shall elect, subject to the following terms and conditions:

26

STEWART  000027

(A)     The appointment shall be made by written instrument signed by the Trustee.  No other formalities are required.

(B)     A Deputy Trustee must exercise all delegated power and authority in a fiduciary capacity.

(C)     A Deputy Trustee shall have the legal status of an agent of this Trust with respect to acts to acts and conduct of the Deputy Trustee that are within the scope of the power and authority delegated by the Trustee.

(D)     Unless appointed by a Trustee who is also a Grantor, a Deputy Trustee must have the same qualifications as a successor Trustee appointed in event of vacancy in the office of Trustee, as provided elsewhere herein.

(E)     Trustee may not delegate to a Deputy Trustee the responsibility or authority to determine whether discretionary distributions of principal or income shall be made to beneficiaries, or to determine the timing or amount of any such discretionary distributions.  Trustee's discretion relating to distributions to beneficiaries must be exercised solely by the Trustee.

(F)     A Deputy Trustee shall account solely to the Trustee for the income and principal of any assets entrusted to it.

(G)     Trustee may appoint a bank trust department or a trust company as a Deputy Trustee, and may delegate to such Deputy Trustee the power and authority to invest and reinvest cash or other liquid assets of the Trust Estate delivered to it by Trustee.  Such a Deputy Trustee is expressly authorized and empowered to invest such cash or other liquid assets in, and to commingle the same with common trust funds maintained by it for the investment of trust funds held by such corporate Trustee.  Any other investments must be approved by Trustee.

(H)     If at any time the Trust Estate includes real estate, or any ownership interest in a proprietorship business or closely-held corporation, that the Trustee is unwilling or legally unable to accept or hold in trust solely by reason of the location of the real estate, or the difficulty or inconvenience to the Trustee of managing a particular parcel of real estate or business or investment in a closely-held corporation, Trustee shall not liquidate such asset except with the consent of a majority in interest of the then current beneficiaries entitled to receive the income of the Trust Estate.  If such consent cannot be obtained, Trustee shall appoint on or more Deputy Trustees to hold and manage such specific asset or assets, and account to the Trustee for the income and principal thereof at reasonable intervals determined by the Trustee.  A Deputy Trustee appointed under the provisions of this subparagraph shall from and after its appointment and without any assignment or other act by any person, have all the title, interest, rights and powers with respect to the particular asset or assets entrusted to it that are by the provisions of this Agreement vested in the Trustee.  Trustee shall have no liability to any beneficiary hereunder with respect to the consequences of maintaining such asset or assets as a part of the Trust Estate, or any losses occasioned thereby.  Nothing herein contained shall, however, be construed to require that Trustee obtain the consent of beneficiaries before liquidating an asset or investment if the Trustee has determined that holding such asset or investment involves an unreasonable risk of loss and would be impendent and not in the best interests of the beneficiaries.  By way of illustration and

27

no limitation, if Trustee for legal or policy reasons determines that it cannot hold and manage real property located in another State, the management of such property shall be entrusted to a Deputy Trustee unless a majority in interest of the income beneficiaries consent to sale and liquidation of the property; but if Trustee determines that a particular investment involves a high degree of risk and constitutes an imprudent investment of trust funds. Trustee may liquidate the investment without the consent of beneficiaries unless such liquidation has been expressly prohibited elsewhere in this Trust Agreement.

(I)     No Deputy Trustee shall have any liability to any beneficiary of this Trust with respect to any act or omission of the Trustee that appointed such Deputy Trustee.

All Deputy Trustees shall serve at the pleasure of the Trustee and Trustee may terminate the appointment and authority of a Deputy Trustee at any time and for any reason deemed sufficient by Trustee. Trustee shall give written notice of such termination to all parties known to Trustee to have been dealing with the terminated Deputy Trustee and if management of any real estate was entrusted to the terminated Deputy Trustee, Trustee shall cause a notice of termination of the appointment of the Deputy Trustee to be recorded in the public records of each jurisdiction in which such real estate is located. Nothing contained in this Paragraph 23 shall be construed to limit or contravene the express provisions of Paragraphs 4 and 22 above as the same relate to Deputy Trustee.

24.     *Estimates of Value of Trust Estate Assets.* Whenever Trustee is required to determine the value of the Trust Estate, or any portion thereof, for the purpose of dividing the same into shares for any purposes or for the purpose of determining thee amount of cash or property to be distributed to a beneficiary who is entitled to receive a certain fractional portion of the Trust Estate. Trustee may estimate the value of Trust Estate assets based upon such information as shall be available to, and deemed reliable by, the Trustee, unless the Trust Agreement expressly requires the valuation for federal estate tax purposes be utilized by Trustee. Unless Trustee deems such to be advisable, it shall not be necessary for Trustee to obtain independent appraisals of value. Trustee's estimate of value, so long as made in good faith, shall be conclusive and shall be binding upon all beneficiaries hereunder.

28

STEWART 000029

# Exhibit  H



**Mike Stewart**
Mobile - MUTED

10/28/19 4:33 AM

I need a favor. I need you to be a Grantor for my trust. Basically you form it as the Grantor and assign it to my attorney as the Trust Protector and he then can assign assets to the trust.

I just need someone I trust to do this and your the only one I trust. Will take 5 minutes to notarize and that's it.

Sorry for the long text

Buzz me when your heading out

Love you

10/28/19 4:40 AM

Type a message...

STEWART 000046



MS    **Mike Stewart**
Mobile - MUTED

10/28/19 4:40 AM

My attorney wrote this to explain it to you:

Generally, the grantor of an irrevocable trust is merely the person "sponsoring" or "establishing" the trust and retains few, if any, powers thereafter.  In the instant situation, the grantor (i.e. YOU) is retaining NO continuing powers to amend, modify, or otherwise change any provisions of the A.L.A. Trust.  The Trust Protector (i.e. ME) reserves the right to change trustees and retains the power to designate each year from the classes of beneficiaries (i.e. your siblings and/ or their children) the persons who will receive distributions, if any, declared by the trustee.

Without any retained or reserved

Type a message...

STEWART  000047



← MS **Mike Stewart**
Mobile - MUTED

declared by the trustee.

Without any retained or reserved powers to the grantor (i.e. YOU), the trust assets will NOT be included in your estate for taxation or probate purposes nor will they be available to satisfy claims of your creditors. Likewise, you will not be responsible for any claims of creditors of the trust or its beneficiaries. Thus, the grantor (i.e. YOU) is merely performing a ministerial function of creating the trust for the benefit of others. While you, as grantor, may make contributions to the trust assets, that is not contemplated nor expected. Without any further or broader powers or duties, your involvement will cease on the day and date of execution. After the initial account establishment at Wells Fargo Advisors in the name of the trust, there should be no further action necessary in which



  Type a message...  

STEWART 000048

MS  **Mike Stewart**
Mobile - MUTED

10/28/19 7:38 AM

No problem.  I'm at the dentist with the kids. I'll call you after I drop them at school.

10/28/19 10:10 AM

We're parked in front of Chase Bank when your done

10/28/19 10:56 AM

Text me your SS please

[Auto-Reply]  I'm driving right now - I'll get back to you later.

11/6/19 3:38 PM

When are you getting back from Puerto Rico

Type a message...

STEWART 000049

**Mike Stewart**
Mobile - MUTED

7/16/20 7:47 AM

Hey Bro, give me a call when you can. My attorney wants to talk about the trust and I need to tell you what to say

7/18/20 10:57 AM

Hope you guys are feeling better. Katie has hydroxycloriquin if you want some. They give it to her for her RA.

Just need zinc doses

7/21/20 10:16 AM

How are all you guys doing?

7/21/20 10:59 AM

Still waiting for results, but starting

Type a message...

# Exhibit  I

**A.L.A. Trust**
**Cash Receipts & Disbursements**
From October 29, 2019 to September 30, 2020

| | Oct 19 | Nov 19 | Dec 19 | Jan 20 | Feb 20 | Mar 20 | Apr 20 | May 20 | Jun 20 | Jul 20 | Aug 20 | Sep 20 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 0.00 | 45,000.17 | 39,942.43 | 14,943.93 | 135,261.35 | 63,877.36 | 16,051.78 | 15,951.91 | 9,014.52 | 303,514.57 | 85,181.20 | 48,967.46 | 0.00 |
| **Receipts** | | | | | | | | | | | | | |
| Aaron M Stewart | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 300,000.00 | 0.00 | 0.00 | 0.00 | 300,000.00 |
| Arizona Premier Title LLC | 0.00 | 0.00 | 0.00 | 135,162.44 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 135,162.44 |
| Wind River Jirsch LLC | 62,500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,400.00 | 7,900.00 | 0.00 | 0.00 | 0.00 | 0.00 | 76,800.00 |
| ▇ Sorensen | 0.00 | 0.00 | 0.00 | 0.00 | 3,200.00 | 0.00 | 0.00 | 0.00 | 3,200.00 | 0.00 | 0.00 | (550.00) | 5,850.00 |
| Interest & Dividend Income | 0.17 | 2.82 | 1.50 | 4.98 | 3.51 | 0.55 | 0.13 | 0.11 | 0.05 | 0.63 | 5.36 | 6.48 | 26.29 |
| Total Receipts | 62,500.17 | 2.82 | 1.50 | 135,167.42 | 3,203.51 | 0.55 | 6,400.13 | 7,900.11 | 303,200.05 | 0.63 | 5.36 | (543.52) | 517,838.73 |
| **Disbursements** | | | | | | | | | | | | | |
| Squared Constractors LLC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100,000.00 | 25,000.00 | 20,000.00 | 145,000.00 |
| **Sheridan Property** | | | | | | | | | | | | | |
| JetClosing Inc. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 92,722.00 | 0.00 | 0.00 | 92,722.00 |
| SWH Funding LLC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,647.10 | 3,647.00 | 7,294.10 |
| Total Sheridan Property | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 92,722.00 | 3,647.10 | 3,647.00 | 100,016.10 |
| **Legal Fees** | | | | | | | | | | | | | |
| Jirsch Law PLC | 0.00 | 0.00 | 0.00 | 0.00 | 46,887.50 | 0.00 | 0.00 | 7,837.50 | 0.00 | 25,575.00 | 0.00 | 0.00 | 80,300.00 |
| Bingham Trust | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7,500.00 | 0.00 | 7,500.00 |
| Total Legal Fees | 0.00 | 0.00 | 0.00 | 0.00 | 46,887.50 | 0.00 | 0.00 | 7,837.50 | 0.00 | 25,575.00 | 7,500.00 | 0.00 | 87,800.00 |
| Aaron M. Stewart | 17,500.00 | 5,000.00 | 21,000.00 | 0.00 | 17,850.00 | 0.00 | 6,500.00 | 7,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 74,850.00 |
| **Victoria Stewart** | | | | | | | | | | | | | |
| Payments | 0.00 | 0.00 | 4,000.00 | 14,850.00 | 9,850.00 | 5,000.00 | 0.00 | 0.00 | 4,000.00 | 0.00 | 0.00 | 0.00 | 37,700.00 |
| Withdrawals at Branch | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9,800.00 | 0.00 | 0.00 | 4,700.00 | 0.00 | 0.00 | 0.00 | 14,500.00 |
| Total Victoria Stewart | 0.00 | 0.00 | 4,000.00 | 14,850.00 | 9,850.00 | 14,800.00 | 0.00 | 0.00 | 8,700.00 | 0.00 | 0.00 | 0.00 | 52,200.00 |
| **Land Rover Related** | | | | | | | | | | | | | |
| Arkonik Limited | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 56,730.84 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 56,730.84 |
| Kelly J Smith | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (23,734.71) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (23,734.71) |
| Total Land Rover Related | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 32,996.13 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 32,996.13 |
| Total Disbursements | 17,500.00 | 5,000.00 | 25,000.00 | 14,850.00 | 74,587.50 | 47,796.13 | 6,500.00 | 14,837.50 | 8,700.00 | 218,297.00 | 36,147.10 | 23,647.00 | 492,862.23 |
| Bank Service Fees | 0.00 | 60.56 | 0.00 | 0.00 | 0.00 | 30.00 | 0.00 | 0.00 | 0.00 | 30.00 | 60.00 | 30.00 | 210.56 |
| Realized Loss | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.20 | 18.98 | 27.18 |
| Unrealized Loss | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7.00 | 3.80 | (0.04) | 10.76 |
| Total Disbursements | 17,500.00 | 5,060.56 | 25,000.00 | 14,850.00 | 74,587.50 | 47,826.13 | 6,500.00 | 14,837.50 | 8,700.00 | 218,334.00 | 36,219.10 | 23,695.94 | 493,110.73 |
| Net Receipts (Disbursements) | 45,000.17 | (5,057.74) | (24,998.50) | 120,317.42 | (71,383.99) | (47,825.58) | (99.87) | (6,937.39) | 294,500.05 | (218,333.37) | (36,213.74) | (24,239.46) | 24,728.00 |
| Ending Balance | 45,000.17 | 39,942.43 | 14,943.93 | 135,261.35 | 63,877.36 | 16,051.78 | 15,951.91 | 9,014.52 | 303,514.57 | 85,181.20 | 48,967.46 | 24,728.00 | 24,728.00 |

# Exhibit J

**Arizona Corporation Commission - RECEIVED: 10/29/2019**
**Arizona Corporation Commission - FILED: 10/29/2019**

19102913472158

# ARTICLES OF ORGANIZATION

## OF LIMITED LIABILITY COMPANY

## ENTITY INFORMATION

**ENTITY NAME:**            T Squared Contractors LLC

**ENTITY ID:**              23033170
**ENTITY TYPE:**            Domestic LLC
**EFFECTIVE DATE:**         10/29/2019
**CHARACTER OF BUSINESS:**  Construction
**MANAGEMENT STRUCTURE:**   Manager-Managed
**PERIOD OF DURATION:**     Perpetual
**PROFESSIONAL SERVICES:**  N/A

## STATUTORY AGENT INFORMATION

**STATUTORY AGENT NAME:**   Kathleen Stewart

**PHYSICAL ADDRESS:**       515 W 5th St, TEMPE, AZ 85281

**MAILING ADDRESS:**        515 W 5th St, TEMPE, AZ 85281

## KNOWN PLACE OF BUSINESS

Att: Kathleen, 515 W 5th St, TEMPE, AZ 85281

## PRINCIPALS

Member and Manager: Kathleen Stewart - 515 W 5th St, TEMPE, AZ, 85281, USA -
defender1989@protonmail.com - Date of Taking Office:

## ORGANIZERS

Kathleen Stewart: 515W 5th St, TEMPE, AZ, 85281, USA, defender1989@protonmail.com

## SIGNATURES

Organizer: Kathleen Stewart - 10/29/2019

# Exhibit  K

**T Squared Contractors LLC**
**Summary of Receipts & Disbursements**
All Transactions Based on Available Banking Records

| | Nov 19 | Dec 19 | Jan 20 | Feb 20 | Mar 20 | Apr 20 | May 20 | Jun 20 | Jul 20 | Aug 20 | Sep 20 | Oct 20 | Nov 20 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 0.00 | 180.00 | 2,485.86 | (61.09) | 7,344.99 | 6.18 | 2,953.62 | 5,052.63 | 147.44 | 51,480.91 | 19,897.99 | 301.72 | 133.98 | 0.00 |
| **Receipts** | | | | | | | | | | | | | | |
| ALA Trust | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100,000.00 | 25,000.00 | 20,000.00 | 0.00 | 0.00 | 145,000.00 |
| Cash Deposits | 180.00 | 0.00 | 2,000.00 | 61.69 | 2,225.00 | 1,450.00 | 1,100.00 | 0.00 | 0.00 | 0.00 | 4,100.00 | 0.00 | 200.00 | 11,316.69 |
| Arens | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,925.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,925.00 |
| Steiner | 0.00 | 0.00 | 0.00 | 4,000.00 | 0.00 | 2,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,000.00 |
| Jack | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 850.00 | 0.00 | 4,950.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,800.00 |
| Silverleaf | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,700.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,700.00 |
| Hastings | 0.00 | 4,755.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,755.50 |
| Weiss | 0.00 | 0.00 | 1,850.00 | 0.00 | 0.00 | 0.00 | 2,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,850.00 |
| Watkins & | 0.00 | 0.00 | 0.00 | 3,296.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,296.00 |
| Incentive and Groups Inc. | 0.00 | 0.00 | 49.14 | 3,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,049.14 |
| Cole | 0.00 | 406.23 | 0.00 | 0.00 | 0.00 | 275.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 681.23 |
| Steitz | 0.00 | 600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 600.00 |
| Forever Artistry Pro LLC | 0.00 | 0.00 | 0.00 | 350.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 350.00 |
| Robin | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 300.00 | 0.00 | 0.00 | 300.00 |
| Ellis III | 0.00 | 292.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 292.50 |
| Deimel | 0.00 | 0.00 | 0.00 | 223.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 223.50 |
| Katz | 0.00 | 0.00 | 0.00 | 0.00 | 65.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 141.38 | 0.00 | 0.00 | 206.38 |
| Winter | 0.00 | 0.00 | 175.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 175.00 |
| Christianson | 0.00 | 0.00 | 0.00 | 113.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 113.00 |
| Smith | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,000.00 |
| **Total Receipts** | 180.00 | 6,054.23 | 4,074.14 | 11,044.19 | 2,290.00 | 12,650.00 | 9,650.00 | 6,000.00 | 104,950.00 | 25,000.00 | 24,541.38 | 0.00 | 200.00 | 206,633.94 |
| **Disbursements** | | | | | | | | | | | | | | |
| **POS & Card Purchases** | | | | | | | | | | | | | | |
| Lowe's | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 34.00 | 0.00 | 3,339.61 | 16,570.69 | 2,483.93 | 0.00 | 0.00 | 22,428.23 |
| Other POS Purchases | 0.00 | 554.63 | 1,253.22 | 0.00 | 305.84 | 1,392.83 | 974.33 | 655.90 | 6,202.66 | 2,547.18 | 0.00 | 152.00 | 151.67 | 14,308.36 |
| Home Depot | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,660.49 | 1,136.05 | 27.23 | 4,129.91 | 444.48 | 1,904.13 | 0.00 | 0.00 | 9,456.01 |
| Scott Waste Service | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,542.50 | 1,146.00 | 501.00 | 0.00 | 0.00 | 4,189.50 |
| Safeway | 0.00 | 130.69 | 120.39 | 0.00 | 0.00 | 375.14 | 218.87 | 259.53 | 1,361.80 | 948.50 | 623.23 | 1.70 | 0.00 | 4,039.85 |
| J&J Liquidators LLC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,000.00 | 1,658.25 | 0.00 | 0.00 | 0.00 | 3,658.25 |
| Amazon | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 438.62 | 321.98 | 418.11 | 2,087.50 | 14.04 | (180.34) | 14.04 | 92.88 | 3,206.83 |
| Costco | 0.00 | 0.00 | 348.40 | 0.00 | 0.00 | 0.00 | 0.00 | 327.42 | 493.40 | 684.17 | 358.46 | 0.00 | 0.00 | 2,211.85 |
| Verizon Wireless | 0.00 | 0.00 | 445.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 447.50 | 449.40 | 444.00 | 0.00 | 0.00 | 1,785.91 |
| Paypal to Arkonik | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,500.00 | 0.00 | 0.00 | 0.00 | 1,500.00 |
| COX Communications | 0.00 | 0.00 | 441.50 | 0.00 | 0.00 | 181.86 | 0.00 | 290.40 | 0.00 | 0.00 | 465.60 | 0.00 | 0.00 | 1,379.36 |
| A to Z Equipment Rental | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 402.95 | 0.00 | 826.47 | 0.00 | 0.00 | 1,229.42 |
| Arizona Public Service | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,261.37 | 0.00 | 0.00 | 0.00 | 0.00 | 1,261.37 |
| GG&D Financial | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 28.99 | 0.00 | 1,052.46 | 0.00 | 0.00 | 0.00 | 1,081.45 |
| Sonoran News | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 263.68 | 263.68 | 263.68 | 263.68 | 0.00 | 0.00 | 1,054.72 |
| Moon Valley Inc. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,018.79 | 0.00 | 0.00 | 0.00 | 0.00 | 1,018.79 |

## T Squared Contractors LLC
### Summary of Receipts & Disbursements
All Transactions Based on Available Banking Records

| | Nov 19 | Dec 19 | Jan 20 | Feb 20 | Mar 20 | Apr 20 | May 20 | Jun 20 | Jul 20 | Aug 20 | Sep 20 | Oct 20 | Nov 20 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| American Family Mutual Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 733.10 | 0.00 | 0.00 | 0.00 | 0.00 | 733.10 |
| BOA#6984 | 0.00 | 467.43 | 182.41 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 649.84 |
| Travelers Pers Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 575.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 575.00 |
| Ace Hardware | 0.00 | 166.26 | 0.00 | 0.00 | 0.00 | 26.09 | 0.00 | 22.92 | 156.76 | 0.00 | 0.00 | 0.00 | 0.00 | 372.03 |
| BOA Checkcard#8842 | 0.00 | 309.88 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 309.88 |
| BOA#2432 | 0.00 | 241.19 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 241.19 |
| BOA#0959 | 0.00 | 0.00 | 71.31 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 71.31 |
| **Total POS & Card Purchases** | 0.00 | 1,184.76 | 253.72 | 0.00 | 0.00 | 601.09 | 0.00 | 22.92 | 889.86 | 0.00 | 0.00 | 0.00 | 0.00 | 2,952.35 |
| **Related Parties** | | | | | | | | | | | | | | |
| Kathleen Stewart | 0.00 | 640.00 | 0.00 | 0.00 | 2,707.00 | 0.00 | 0.00 | 1,500.00 | 5,000.00 | 4,400.00 | 4,650.00 | 0.00 | 0.00 | 18,897.00 |
| Aaron Stewart | 0.00 | 0.00 | 2,580.00 | 1,970.00 | 0.00 | 1,600.00 | 0.00 | 0.00 | 22,100.00 | 15,000.00 | 13,600.00 | 0.00 | 0.00 | 56,850.00 |
| **Total Related Parties** | 0.00 | 640.00 | 2,580.00 | 1,970.00 | 2,707.00 | 1,600.00 | 0.00 | 1,500.00 | 27,100.00 | 19,400.00 | 18,250.00 | 0.00 | 0.00 | 75,747.00 |
| Bernel | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,200.00 | 3,000.00 | 3,500.00 | 0.00 | 0.00 | 8,700.00 |
| Cerrea | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,800.00 | 0.00 | 0.00 | 0.00 | 5,800.00 |
| Cash Withdrawals | 0.00 | 0.00 | 1,500.00 | 0.00 | 0.00 | 4,198.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,698.00 |
| Florez | 0.00 | 0.00 | 0.00 | 1,500.00 | 0.00 | 0.00 | 0.00 | 900.00 | 2,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,400.00 |
| Arizona Flyer Service | 0.00 | 1,300.00 | 0.00 | 0.00 | 0.00 | 1,885.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,185.54 |
| G.E. Heating & Cooling | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,150.00 | 0.00 | 0.00 | 3,150.00 |
| Jose Diaz Marble & Granite LLC | 0.00 | 0.00 | 0.00 | 0.00 | 1,331.18 | 0.00 | 1,331.18 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,662.36 |
| Primero | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,600.00 |
| Segal | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,888.00 | 0.00 | 0.00 | 0.00 | 1,888.00 |
| Warrington | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,700.00 | 0.00 | 0.00 | 0.00 | 1,700.00 |
| Arizona Tile | 0.00 | 0.00 | 0.00 | 0.00 | 1,698.07 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,698.07 |
| Jimenez | 0.00 | 0.00 | 0.00 | 0.00 | 1,400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,400.00 |
| Cabinets To Go | 0.00 | 0.00 | 0.00 | 0.00 | 1,341.72 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,341.72 |
| Summerwinds Garden | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,276.32 | 0.00 | 0.00 | 0.00 | 1,276.32 |
| Black Mountain Pool Service LLC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 680.00 | 0.00 | 0.00 | 0.00 | 680.00 |
| A-Poolside Services LLC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,000.00 | 0.00 | 0.00 | 1,000.00 |
| Bank Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 437.74 | 0.00 | 0.00 | 0.00 | 0.00 | 437.74 |
| Preauthorized Debits | 0.00 | 0.00 | 0.00 | 167.51 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 167.51 |
| Quail Run Lanscapes LLC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 150.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 150.00 |
| Resto | 0.00 | 552.30 | 2,359.28 | 0.00 | 1,150.84 | 1,267.93 | 3,619.81 | 2,482.27 | 20,988.93 | 22,838.60 | 18,237.65 | 167.74 | 244.55 | 73,909.90 |
| **Total Disbursements** | 0.00 | 3,748.37 | 6,621.69 | 3,637.51 | 9,628.81 | 9,702.56 | 7,550.99 | 4,905.19 | 53,616.53 | 56,582.92 | 44,137.65 | 167.74 | 244.55 | 200,544.51 |
| **Net Balance** | 180.00 | 2,305.86 | (2,547.55) | 7,406.68 | (7,338.81) | 2,947.44 | 2,099.01 | (4,905.19) | 51,333.47 | (31,582.92) | (19,596.27) | (167.74) | (44.55) | 89.43 |
| **End Balance** | 180.00 | 2,485.86 | (61.69) | 7,344.99 | 6.18 | 2,953.62 | 5,052.63 | 147.44 | 51,480.91 | 19,897.99 | 301.72 | 133.98 | 89.43 | 89.43 |

# Exhibit  L



June 20, 2020 through July 21, 2020

Account Number:               0032

## TRANSACTION DETAIL   *(continued)*

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| 06/26 | | -170.00 | 665.75 |
| 06/29 | | -64.74 | 601.01 |
| 06/29 | | -119.00 | 482.01 |
| 06/29 | | -50.00 | 432.01 |
| 06/29 | | -21.60 | 410.41 |
| 06/29 | | -16.20 | 394.21 |
| 06/29 | | -3.23 | 390.98 |
| 06/30 | Fedwire Credit Via: Bank of America, N.A./026009593 B/O: Great American Title Agency Inc Es 85020 US AZ Ref: Chase Nyc/Ctr/Bnf=Aaron M Stewart Scottsdale AZ 85266-1519 US/Ac-00000 ■■■■■Rfb=580214 204 Obi=Borrower Refund 7349 E Casitas Del Rio Scot Tsdale AZ Bbi=/Ocmt/USD318547,50/Ac C/DDA ■■■■ Aa Imad: 0630B6B7Hu1R023238 Trn: 6580509182Ff | 318,547.50 | 318,938.48 |
| 06/30 | | -5.39 | 318,933.09 |
| 06/30 | | -15.99 | 318,917.10 |
| 06/30 | 06/30 Withdrawal | -5,000.00 | 313,917.10 |
| 06/30 | 06/30 Domestic Wire Transfer Via: Wells Fargo NA/121000248 A/C: Wells Fargo Clearing Services Ref: Further Credit: A.L.A Trust Account#: ■■■-2949/Time/15:25 Imad: 0630B1Qgc08C024727 Trn: 7310920182Es | -300,000.00 | 13,917.10 |
| 06/30 | 06/30 Withdrawal | -10,000.00 | 3,917.10 |
| 06/30 | | -64.82 | 3,852.28 |
| 06/30 | Domestic Wire Fee | -35.00 | 3,817.28 |
| 06/30 | Domestic Incoming Wire Fee | -15.00 | 3,802.28 |
| 06/30 | Official Checks Charge | -8.00 | 3,794.28 |
| 07/01 | | -64.39 | 3,729.89 |
| 07/01 | | -1,468.04 | 2,261.85 |
| 07/01 | | -20.00 | 2,241.85 |
| 07/01 | | -9.71 | 2,232.14 |
| 07/02 | | -154.85 | 2,077.29 |
| 07/03 | | -172.83 | 1,904.46 |
| 07/03 | | -44.60 | 1,859.86 |
| 07/03 | | -250.00 | 1,609.86 |
| 07/03 | | -8.99 | 1,600.87 |
| 07/03 | | -69.61 | 1,531.26 |
| 07/06 | | -375.00 | 1,156.26 |
| 07/06 | | -12.99 | 1,143.27 |
| 07/06 | | -4.31 | 1,138.96 |
| 07/06 | | -4.31 | 1,134.65 |
| 07/06 | | -53.07 | 1,081.58 |
| 07/06 | | -9.71 | 1,071.87 |
| 07/07 | | 1,000.00 | 2,071.87 |
| 07/07 | | -499.14 | 1,572.73 |
| 07/09 | | 4.31 | 1,577.04 |

Page 2 of 4



CHASE ◯   **WITHDRAWAL**

CHECKING ☑
SAVINGS ☐
CHASE LIQUID ☐

R/T 500001017

**WITHDRAWAL**

Today's Date    Customer Name *(Please Print)*
06/30/20   Aaron Stewart

If Purchasing a Cashier's Check Provide Payee Name
Jet Closing

NI3061-CH (Rev. 10/15)   90010546   01/19

Customer Signature
X

▼ Start your account number here

0032    **TOTAL $**    AMOUNT    5000.00

??31⁐ ⑆ 1017⑆



# Exhibit  M

## Aaron Stewart
### Summary of Receipts & Disbursements
From October 7, 2019 to October 22, 2020

| | Oct 19 | Nov 19 | Dec 19 | Jan 20 | Feb 20 | Mar 20 | Apr 20 | May 20 | Jun 20 | Jul 20 | Aug 20 | Sep 20 | 10/1/20–10/22/20 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Balance** | 0.00 | 576.72 | 23,407.04 | 11,733.49 | 3,841.13 | 3,820.25 | 2,717.30 | 363.95 | 93.11 | 3,794.28 | 1,209.26 | 455.18 | 52.99 | 0.00 |
| **Receipts** | | | | | | | | | | | | | | |
| Great American Title Agency Inc. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 318,547.50 | 0.00 | 0.00 | 0.00 | 0.00 | 318,547.50 |
| ALA Trust | 0.00 | 22,500.00 | 21,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,500.00 |
| ATM & Cash Deposits | 5,200.00 | 0.00 | 0.00 | 5,900.00 | 12,600.00 | 6,500.00 | 600.00 | 2,300.00 | 3,500.00 | 3,000.00 | 1,800.00 | 1,105.00 | 3,350.00 | 45,855.00 |
| ▆ Budzyn | 0.00 | 30,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30,000.00 |
| T Squared Contractors LLC | 0.00 | 0.00 | 0.00 | 1,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,000.00 |
| **Total Receipts** | 5,200.00 | 52,500.00 | 21,000.00 | 6,900.00 | 12,600.00 | 6,500.00 | 600.00 | 2,300.00 | 322,047.50 | 3,000.00 | 1,800.00 | 1,105.00 | 3,350.00 | 438,902.50 |
| **Disbursements** | | | | | | | | | | | | | | |
| ALA Trust | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 300,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 300,000.00 |
| Miscellaneous Card Purchases | 2,013.43 | 13,451.26 | 25,067.93 | 10,708.99 | 11,161.06 | 6,935.45 | 2,896.35 | 2,284.74 | 3,140.63 | 5,552.62 | 2,110.36 | 823.93 | 2,891.45 | 89,038.20 |
| Cash, ATM & Other Withdrawals | 0.00 | 1,800.00 | 770.00 | 0.00 | 300.00 | 200.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,070.00 |
| ABF Transportation | 0.00 | 5,783.34 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,783.34 |
| JetClosing Inc. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,000.00 |
| Puerto Rico Car Prcartrans | 0.00 | 4,590.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,590.00 |
| Whole Health Dentisry | 0.00 | 0.00 | 0.00 | 0.00 | 495.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 495.00 |
| Aaron Stewart | 0.00 | 0.00 | 949.05 | 3,101.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,050.05 |
| Kathleen Stewart | 0.00 | 0.00 | 2,920.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,920.00 |
| Qual Run Landscapes LLC | 0.00 | 1,675.00 | 400.00 | 300.00 | 200.00 | 150.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,725.00 |
| US Bank Payments | 0.00 | 0.00 | 2,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 123.71 | 101.29 | 0.00 | 0.00 | 0.00 | 0.00 | 2,225.00 |
| Brand Rep. | 1,495.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,495.00 |
| City of Scottsdale | 0.00 | 1,538.08 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,538.08 |
| ▆ Quesada | 232.50 | 0.00 | 220.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 295.30 | 324.71 | 0.00 | 1,073.08 |
| APS | 0.00 | 300.00 | 150.00 | 0.00 | 250.00 | 300.00 | 0.00 | 150.00 | 0.00 | 20.00 | 0.00 | 0.00 | 0.00 | 1,170.00 |
| Travelers | 878.35 | 0.00 | 0.00 | 0.00 | 202.82 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,081.17 |
| Fed Loan Servicing | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 346.13 | 351.13 | 697.26 |
| ▆ Quesada | 0.00 | 0.00 | 0.00 | 682.37 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 682.37 |
| Verizon Wireless | 0.00 | 500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 500.00 |
| Bank Fees | 4.00 | 32.00 | 16.00 | 0.00 | 12.00 | 17.50 | 12.00 | 12.39 | 104.41 | 12.40 | 148.42 | 12.42 | 12.42 | 395.96 |
| Cierra Stewart | 0.00 | 0.00 | 180.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 180.00 |
| Eternity Pool | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 45.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 45.00 |
| **Total Disbursements** | 4,623.28 | 29,669.68 | 32,673.55 | 14,792.36 | 12,620.88 | 7,602.95 | 2,953.35 | 2,570.84 | 318,346.33 | 5,585.02 | 2,554.08 | 1,507.19 | 3,255.00 | 438,754.51 |
| **Net Receipts (Disbursements)** | 576.72 | 22,830.32 | (11,673.55) | (7,892.36) | (20.88) | (1,102.95) | (2,353.35) | (270.84) | 3,701.17 | (2,585.02) | (754.08) | (402.19) | 95.00 | 147.99 |
| **Ending Balance** | 576.72 | 23,407.04 | 11,733.49 | 3,841.13 | 3,820.25 | 2,717.30 | 363.95 | 93.11 | 3,794.28 | 1,209.26 | 455.18 | 52.99 | 147.99 | 147.99 |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of August, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to parties or counsel registered through ECF.  In addition, I hereby certify that I have mailed or served the foregoing document or paper to the following non-CM/ECF participants in the manner indicated by the non-participant's name:

> Aaron Stewart
> 23800 North 73rd Place
> Scottsdale, AZ 85255

By: *Sarah Akerson*
Sarah Akerson