**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02594-RM-SKC

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

MEDIATRIX CAPITAL INC., et al.,

      Defendants,

And

MEDIATRIX CAPITAL FUND LTD., et al.,

      Relief Defendants.

---

**MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT OF
RECEIVER'S AND PROFESSIONAL'S FEES AND COSTS FROM APRIL 1, 2021
THROUGH JUNE 30, 2021**

---

**TO:  ALL PARTIES AND THEIR COUNSEL OF RECORD:**

      Brick Kane of Robb Evans & Associates LLC, Receiver ("Receiver") hereby moves the

Court for an order approving and authorizing for payment the receivership fees and costs

incurred from April 1, 2021 through June 30, 2021 ("Third Expense Period").  The Receiver

specifically moves the Court for an order: (1) approving the fees of the Receiver and his

deputies, and reimbursement of costs, comprised of Receiver's fees, including the Receiver's

deputies, of $56,192.85 and Receiver's costs of $827.41, **for a total of $57,020.26 and**

authorizing for payment 80% of said fees ($44,954.28) and 100% of said costs, with the balance

of the unpaid fees payable through the final fee motion, unless otherwise ordered by the Court;

(2) approving the fees of Receiver's lead counsel Barnes & Thornburg LLP ("Barnes &

Thornburg") and reimbursement of its costs, comprised of fees of $49,052.35 and costs of $682.76, **for a total of $49,735.11** and authorizing for payment 80% of said fees ($39,241.88) and 100% of said costs, with the balance of the unpaid fees payable through the final fee motion, unless otherwise ordered by the Court; and (3) approving the fees of Receiver's Arizona counsel Engelman Berger, P.C.("Engelman") and reimbursement of its costs, comprised of fees of $1,121.00 and costs of $39.70, **for a total of $1,160.70** and authorizing for payment 80% of said fees ($896.80) and 100% of said costs, with the balance of the unpaid fees payable through the final fee motion, unless otherwise ordered by the Court.

This motion is based on the accompanying memorandum of points and authorities and the Declarations of Brick Kane and Gary Owen Caris, filed concurrently herewith, upon the pleadings, records and files of the Court in this case of which the Receiver requests the Court to take judicial notice, including without limitation the Report of Receiver's Activities From September 11, 2020 Through December 31, 2020 (Doc. 215) ("Receiver's First Report"), Second Quarterly Report of Receiver's Activities Covering the Period From January 1, 2021 Through March 31, 2021 (Doc. 257) ("Receiver's Second Report"), Third Quarterly Report of Receiver's Activities Covering the Period From April 1, 2021 Through June 30, 2021 (Doc. 262) ("Receiver's Third Report") and such other and further evidence as may be provided by the Receiver in support of the motion.  This motion is made pursuant to paragraphs 45-48 of the Order Appointing Receiver (Doc. 153) ("Receiver Order").  Paragraph 45 of the Receiver Order specifically provides for the Receiver to apply for compensation and expense reimbursement on a quarterly basis from Receivership Funds within 75 days after the end of each calendar quarter.

**STATEMENT REGARDING DUTY TO CONFER PURSUANT TO D.C. COLO. LCivR**

**7.1(a)**

Pursuant to paragraph 45 of the Receiver Order, prior to the filing of this motion, the Receiver served upon counsel for the United States Securities and Exchange Commission ("SEC" or "Plaintiff") a complete copy of this motion, together with all exhibits and relevant billing information in a format approved by the SEC.  Plaintiff had no objection to the fees and costs requested to be approved and paid in this motion.  The Receiver has not conferred with any other parties because the relief sought by the Receiver cannot be resolved by the parties as the Court is required to rule on the motion for the payment of the Receiver's fees and expenses and those of its counsel under the Receiver Order and because the Receiver Order provides the specific procedures to be followed in connection with its application for approval and authorization for Receiver's compensation and expense reimbursement as generally described above and as set forth in detail at paragraphs 45-48 of the Receiver Order.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND STATEMENT OF FACTS

On September 11, 2020, the Court entered the Receiver Order, appointing Brick Kane of Robb Evans & Associates LLC as Receiver over the (1) Entity Defendants; (2) the Receivership Assets of the Individual Defendants; and (3) the Recoverable Assets of the Receivership Relief Defendants, as those terms are defined therein.  (*Id.* at p. 2.)  The Receiver Order provides that "[t]he Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the Receivership Defendants and the Receivership Relief Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Federal Rule of Civil Procedure 66." (*Id.* at ¶ 1.)

The Receiver's duties and responsibilities under the Receiver Order require him to, among other things, identify, account for, and preserve and protect receivership assets.  To that end, the Receiver Order allows him to "engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities [under the Receiver Order], including, but not limited to … attorneys…" (*Id.* at ¶ 4.F.)

Given the Receiver's need for assistance of counsel, on September 23, 2020, the Receiver filed a Motion for Order Authorizing Employment of Barnes & Thornburg LLP as Counsel for Receiver, which was granted on September 24, 2020 (Docs. 160 and 163).

In addition, in order to discharge his duties under the Receiver Order, the need arose for the Receiver to employ counsel in the State of Arizona.  In early October 2020, the Receiver employed Engelman to assist in the preparation and recordation of two Notices of Lis Pendens in

connection with two pieces of real property in Scottsdale, Arizona on an urgent basis and to prevent dissipation of these assets. The Receiver also required the assistance of Engelman with respect to taking possession and control of these Arizona properties. The Receiver filed a motion seeking an order permitting the Receiver to retain Engelman *nunc pro tunc* as of October 1, 2020, which was granted on November 6, 2020 (Docs. 183 and 186).

Paragraph 45 of the Receiver Order provides for the Receiver to apply for compensation and expense reimbursement on a quarterly basis from Receivership Funds within 75 days after the end of each calendar quarter. Paragraph 45 of the Receiver Order further provides that 30 days prior to the filing of such motion, the Receiver is to serve upon counsel for the SEC a proposed fee motion in a format approved by the SEC, which the Receiver has done. Paragraph 46 of the Receiver Order provides that all Quarterly Fee Applications will be interim and subject to cost benefit and final reviews at the close of the receivership. Paragraph 48 of the Receiver Order provides, among other things, that each Quarterly Fee Application comply with the terms of the Billing Instructions provided by the SEC to the Receiver and represent that the fees and expenses were incurred in the best interests of the receivership estate and, with the exception of the Billing Instructions, that the Receiver has not entered into any agreement concerning the amount of any compensation paid or to be paid from the receivership estate, or any sharing thereof. The requisite certifications are contained in the Declarations of Brick Kane ("Kane Declaration") and Gary Owen Caris ("Caris Declaration") which accompany this motion.

This is the third Quarterly Fee Application pursuant to the Receiver Order, and covers the Third Expense Period, from April 1, 2021 through June 30, 2021. The services of the Receiver and its counsel are summarized separately below and described in the detailed billing records attached as exhibits to the Kane and Caris Declarations.

II.   <u>**SUMMARY OF THE RECEIVER'S SERVICES AND ACTIVITIES DURING**</u>

**THE THIRD EXPENSE PERIOD**

The Receiver seeks approval and authorization for payment of the Receiver's fees and

costs summarized in the Receivership Administrative Report spreadsheet ("Financial Summary")

attached as Exhibit 1 to the Kane Declaration in support of this motion, together with the detailed

billing records of the Receiver attached collectively to the Kane Declaration as Exhibit 2.[1]

During the Third Expense Period, the Receiver has incurred fees for the Receiver and his

deputies of $56,192.85.  The Receiver's costs during the Third Expense Period total $827.41 and

are detailed in the Financial Summary.

During the Third Expense Period, the Receiver[2] spent the bulk of his time addressing the

real property in the receivership estate and undertaking a partial forensic analysis and accounting

reconstruction of assets and funds transferred in violation of the Court's asset freeze orders

(Docs. 10 and 38).

The Receiver marketed and entered escrow for the sale of two properties in Scottsdale,

Arizona during the prior expense period: the property commonly known as 7439 E. Casitas Del

Rio Drive, Scottsdale, Arizona ("Casitas Property") and the real property commonly known as

8221 East Sheridan Street, Scottsdale, Arizona  ("Sheridan Property").  The Casitas Property is a

two-story condominium, and the Sheridan Property is a one-story, single family residence in the

midst of extensive renovation work.

---

[1] As explained in the Caris declaration, the bills have been redacted, where appropriate, to preserve confidential, sensitive, tactical, strategic, attorney-client privileged and/or attorney work-product information.

[2] Where appropriate, "Receiver" means the Receiver, Brick Kane, and his deputies who have assisted him in discharging his duties as Receiver.

Because buyers had been obtained nearly concurrently, the Receiver was able to present one sale motion for the Casitas Property and Sheridan Property.  The sale motion was unopposed.  It was presented at the beginning of the Third Expense Period on April 6, 2021 (Doc. 243) and the Order granting the motion was entered shortly thereafter on April 12, 2021 (Doc. 247).  During the Third Expense Period, once the sale Order was entered, the Receiver took several actions to help facilitate the close of escrow on the Casitas Property.  These activities included working with the title company to update the preliminary title commitment; regularly communicating with the title underwriter to address title issues in order to close escrow; working with the Receiver's counsel in order to get a corrected payoff demand on an outstanding loan secured by the Casitas Property; and regularly communicating with the escrow company.  The sale on the Casitas Property closed on May 7, 2021, generating a total of $160,122.15  in proceeds for the receivership estate.

Closing escrow on the Sheridan Property proved to be more challenging.  As with the Casitas Property, the Receiver, in conjunction with his counsel, had to address a payoff demand from the property lender that was excessive and needed to be corrected.  In addition, the buyer on the Sheridan Property went into default by not timely funding the balance of the purchase price in order to close the transaction.  At the last minute, the buyer alleged that it had been misled by the absence of permits and other issues pertaining to the Sheridan Property, even though these issues had all been thoroughly disclosed, the buyer had waived any and all contingencies and objections and was made expressly aware of the absence of permits, and the buyer was expressly aware of the City of Scottsdale's actions against the property.  The Receiver had to prepare a "cure notice" requiring the buyer's performance.  In conjunction with his counsel, the Receiver addressed written counter-assertions from the buyer that the Receiver was

in default under the sale agreement and that the buyer would seek a return of its deposit.  The Receiver had numerous communications with the title company, escrow and his counsel in connection with these eleventh hour accusations.  Ultimately, the buyer withdraw all of its last-minute complaints and assertions, funded the escrow and acquired the property without the need for the Receiver to take further legal steps.  The sale on the Sheridan Property closed on June 3, 2021, generating a total of $118,755.42 in proceeds for the receivership estate.

Throughout the prior expense period, the Receiver took steps to market and sell the most valuable parcel of real estate in the Receiver's possession, custody and control, the real property commonly known as 1201 Lloyds Road, Little Elm, Texas ("1201 Lloyds Road Property"), comprised of two tracts and 19.5 acres, one tract containing a 2911 square foot single family residence and the other containing a much smaller residence.  During the Third Expense Period, the Receiver also continued to market a nearby one-acre parcel of land, commonly known as 1197 Lloyds Road, Little Elm, Texas ("1197 Lloyds Road Property" and together with the 1201 Lloyds Road Property, the "Lloyds Properties").  The 1197 Lloyds Road Property is improved only with a metal storage facility, but without any residence, water service or operating septic system.

 In the prior period, the Receiver entered into listing agreements for the sale of the Lloyds Properties, and entertained various offers for the purchase of both properties, individually and in tandem.  The Receiver negotiated counteroffers with different prospective buyers of the Lloyds Properties, individually and in tandem.  The Receiver communicated with title counsel to discuss various issues surrounding the Lloyds Properties, including easement, access and water issues. He also addressed delinquent property taxes on the properties, as well as various maintenance issues.

As a result of these efforts, the Receiver obtained multiple offers for the acquisition of the 1201 Lloyds Road Property, individually and together with the 1197 Lloyds Road Property. Early in the Third Expense Period, the Receiver analyzed multiple offers and negotiated with multiple offerors. This resulted in the Receiver entering into escrow for the sale of the 1201 Lloyds Road Property as a stand-alone transaction for $3,550,000. After a sales contract was entered into in April 2021, the Receiver undertook substantial work to ensure the property could be sold at or above that price. The Receiver had numerous communications with his title insurer, directly and through counsel. He analyzed the survey and title commitment on the 1201 Lloyds Road Property, and worked with his counsel to address and resolve title objections raised by the buyer. The Receiver assisted his counsel in preparation for a sale motion, providing counsel with the necessary information to prepare the motion and helping counsel to develop a set of procedures to be presented to the Court with respect to overbidding and sale confirmation, which were ultimately set out in the Receiver's unopposed sale motion, filed after the Third Expense Period on August 2, 2021 (Doc. 261) and approved by Order entered on August 6, 2021 (Doc. 264). Additionally, during the Third Expense Period, the Receiver negotiated modifications to a hay baling lease through a side letter agreement and communicated with a beekeeper that provided beekeeping services for the 1201 Lloyds Road Property, in order to preserve agricultural land tax exemptions. The sale of the 1201 Lloyds Road Property is expected to close sometime in September 2021.

During the Third Expense Period, the Receiver undertook a partial forensic analysis and accounting reconstruction of assets and funds transferred in violation of the Court's asset freeze orders, in attempting to trace and claw back money obtained in violation of those orders. This forensic analysis and reconstruction is set out in the Receiver's Third Report, identifying the

diversion of at least $738,000 from the sale and refinance of two properties owned or controlled by Michael Stewart.  Approximately $87,000 went to acquire the Sheridan Property and therefore was, in essence, recaptured when that property was sold by the Receiver.  Another $100,000 has been recouped from Kaplan, Hecker and Fink LLP, a law firm.

During the Third Expense Period, the Receiver also addressed personal property issues, particularly as they related to Defendant Bryant Sewall and Relief Defendant Hanna Ohonkova Sewall (collectively, the "Sewalls") and the personal property located at the Lloyds Properties. This included work undertaken both before and after the SEC and the Sewalls negotiated an agreement with respect to much of the personal property located at the Lloyds Properties.  The work before the agreement was entered into focused on the return of personal property that was not of any value to the receivership estate.  The work after the agreement was entered into ensured compliance with the agreement and the Court's Order approving that agreement.

Throughout the Third Expense Period, the Receiver and his counsel continued to have numerous communications with counsel for the SEC and counsel for the Defendants, particularly Vivian Drohan, who is counsel for the Sewalls and Defendant Michael Stewart and Relief Defendant Victoria M. Stewart (collectively, the "Stewarts") on a number of matters involving the receivership.  Communications with Drohan included discussions surrounding money and assets that had been transferred in violation of the Court's asset freeze orders and which were the subject of the forensic analysis and accounting reconstruction set forth in the Receiver's Third Report.

During the Third Expense Period, the Receiver prepared its Second Report and the financials attached to the Second Report.  The Receiver also assisted his counsel in the preparation of the second fee motion at no charge to the estate.  Finally, the Receiver discharged

all of the normal operational duties of a receiver, including maintaining and updating accurate accounting records for the receivership estate and processing and paying ongoing administrative expenses of the receivership.

As a result of the work undertaken by the Receiver and his counsel, including the services described below in Section III, the Receiver brought an additional $382,107.86 into the estate during the Third Expense Period, for a total of $9,254,193.13 collected and monetized since the inception of the receivership estate, not including an anticipated recovery in excess of $3.2 million in net proceeds in connection with the sale of the 1201 Lloyds Road Property.  As of the end of the Third Expense Period, June 30, 2021, the Receiver holds $8,669,600.58 net of expenses incurred through that date, including the expenses for which approval is sought in this motion.

III.    **SUMMARY OF THE SERVICES AND ACTIVITIES OF THE RECEIVER'S COUNSEL DURING THE THIRD EXPENSE PERIOD**

The Receiver also seeks payment of his counsel's fees and expenses summarized in the Financial Summary, Exhibit 1 to the Kane Declaration, and set forth in the detailed billing records of Barnes & Thornburg, attached collectively as Exhibit 1 to the Caris Declaration and the detailed billing records of Engelman, attached collectively as Exhibit 2 to the Caris Declaration.  During the Third Expense Period, the Receiver incurred fees to Barnes & Thornburg of $49,052.35 and costs of $682.76.  During this period, the Receiver incurred fees to Engelman of $1,121.00 and costs of $39.70.

A.    **Barnes & Thornburg**

Throughout the Third Expense Period, Barnes & Thornburg worked closely with the Receiver in connection with the various real property in the Receiver's possession, custody and

control described above.  It finished preparation of the motion and supporting papers to approve

the sales of the Casitas Property and Sheridan Property.  Once that sale motion was approved,

Barnes & Thornburg was closely involved in ensuring the properties successfully closed escrow.

As to the Casitas Property, it had numerous communications with the first trust deed

holder to correct multiple payoff demands that did not reflect the agreement which had been

reached between the Receiver and that lender, pursuant to which nearly $50,000 in late charges

and default interest were removed.  As to the Sheridan Property, it also had numerous

communications with the loan servicer for the lender on that property, whereby the Receiver's

counsel was able to obtain a waiver of all default interest originally demanded.  When the buyer

began to raise various claims and contentions and threatened to back out of the deal, Barnes &

Thornburg worked closed with the Receiver to develop tactics to compel its performance or

obtain a return of the non-refundable deposit.  Counsel exchanged numerous communications

with the buyer and, as set out above, the buyer ultimately withdrew all objections and performed

under the sales contract.

As to both the Casitas Property and Sheridan Property, the Engelman firm, with Barnes &

Thornburg's assistance, prepared and recorded releases of the Notices of Lis Pendens which had

been recorded by the Receiver at the outset of the receivership to prevent further improper

transfers.

Counsel for the Receiver was also heavily involved in the Receiver's work in connection

with the sale of the 1201 Lloyds Road Property.  It consulted with the Receiver over sale

strategies for the Lloyds Properties.  Once a sale agreement was entered into, Barnes &

Thornburg worked extensively throughout the Third Expense Period with the title insurer and

counsel for the buyer about numerous issues, including the buyer's title objection and resolution

of those objections, the survey of the property and the title commitment.  Counsel also prepared the side letter amending the hay baling agreement.  Barnes & Thornburg also began preparations for the motion to approve the sale of the 1201 Lloyds Road Property, including communicating with the Receiver about the documentation needed in support of the sale motion and reviewing the supporting documentation.  Counsel also discussed with the Receiver and took the lead in preparing overbidding procedures to be proposed in the sale motion.

Both before and after the SEC reached an agreement with Bryant Sewall concerning the return of personal property at the Lloyds Properties, counsel assisted the Receiver with respect to steps to be taken in connection with the return of various personal property located there.

Counsel communicated with the Receiver about the Receiver's forensic analysis and accounting reconstruction and analyzed documents related to the improper transfer of money and property in violation of the Court's asset freeze orders.  In conjunction with the Receiver, counsel has continued to develop strategies with respect to potential actions for recovery of misappropriated funds.  During the Third Expense Period, the Receiver, through counsel, successfully recovered $100,000 from Kaplan, Hecker and Fink, LLP, as discussed above. Counsel also discussed issues related to misappropriated funds with Drohan, as counsel for Michael Stewart.  The Receiver and his counsel continued to develop plans for recovery of other misappropriated funds.

Barnes & Thornburg prepared a successful opposition to renewed motions for the release of funds for legal fees brought by the defendants.  In addition, after previously filing a notice of appearance in the 10th Circuit in connection with the defendants' appeal of orders denying their request for the release of funds, counsel continued to monitor pleadings and orders filed in connection with those appeals.

During the Third Expense Period, the Receiver and his counsel developed preliminary strategies for steps to recover funds paid to brokers and charitable organizations with investor-victim funds.  After the Third Expense Period, demand letters have gone out to various brokers and charitable organizations seeking a return of funds.

Finally, during the Third Expense Period, Barnes & Thornburg reviewed and made suggested revisions to the Second Report.  At no charge to the receivership estate, it prepared the Receiver's successful second fee motion.

> ### B.   Engelman

Engelman continued to serve as Arizona counsel for the Receiver during the Third Expense Period, principally in connection with the Casitas Property and the Sheridan Property. It assisted Barnes & Thornburg in preparing and recording releases of the Notices of Lis Pendens in connection with the successful sale of those two properties.

## IV.   THE FEES AND COSTS OF THE RECEIVER AND ITS COUNSEL ARE REASONABLE AND SHOULD BE ALLOWED FOR PAYMENT

It is a fundamental tenet of receivership law that expenses of administration incurred by the receiver, including those of the receiver, his counsel and others employed by him, constitute priority expenses for which compensation should be paid from the assets of the receivership.  As explained in the leading treatise *Clark on Receivers:*

> The obligations and expenses which the court creates in its
>
> administration of the property are necessarily burdens on the
>
> property taken possession of, and this, irrespective of the question
>
> who may be the ultimate owner, or who may have the preferred
>
> lien, or who may invoke the receivership.  The appointing court

> pledges its good faith that all duly authorized obligations incurred
>
> during the receivership shall be paid.

2 Clark, Ralph Ewing, *A Treatise on the Law and Practice of Receivers* § 637, p. 1052 (3rd ed. Rev. 1992).

The Receiver is an officer of the Court charged with a myriad of duties under the Receiver Order.  Many of those duties do not lead to the direct and immediate recovery of assets or increase in the funds available for distribution to creditors.  Because of the nature of the administrative and other services required in receiverships, the benefit a Receiver confers on receivership property cannot be determined based solely on the increase or decrease in the value of property in the Receiver's possession.  As the Court explained in *Securities and Exchange Commission v. Elliott*, 953 F. 2d 1560, 1577 (11th Cir. 1992):

> [I]t is sometimes difficult to ascertain what type of benefits a
>
> receiver has bestowed on receivership property . . . . . [A] benefit
>
> to a secured party may take more subtle forms than a bare increase
>
> in monetary value.  Even though a receiver may not have
>
> increased, or prevented a decrease in, the value of the collateral, if
>
> a receiver reasonably and diligently discharges his duties, he is
>
> entitled to compensation. [Citations omitted.]

*Securities and Exchange Commission v. Elliott*, 953 F. 2d at 1577.

The Court has broad discretion in determining the reasonableness of fees to be awarded a receiver. *See In re San Vicente Medical Partners Ltd.*, 962 F. 2d 1402, 1409-1410 (9th Cir. 1992).  The Court may evaluate the time and effort expended by the receiver with respect to specific projects and aspects of the administration of the estate and may look to a number of

different factors under the case law in approving receiver's and counsel's fees. *In re San Vicente Medical Partners Ltd.*, 962 F. 2d at 1409-1410.

This Motion establishes that during the Third Expense Period, the Receiver, his deputies and professionals rendered reasonable, necessary and valuable services for the receivership estate that were beneficial to the estate and the parties in interest.  As demonstrated herein and in the supporting declarations and exhibits, the Receiver, his deputies and professionals have performed substantial and wide-ranging tasks that were beneficial to the estate, including concluding the sale of the Casitas Property and Sheridan Property, entering into a contract to sell the 1201 Lloyds Road Property, and recovering funds that had been improperly transferred in violation of the Court's asset freeze orders.  *See Federal Trade Commission v. Capital Acquisitions & Management Corp.*, 2005 U.S. Dist. LEXIS 18504 (N.D. Ill. August 26, 2005). The Receiver submits the fees are reasonable in light of the services rendered and that the fees and expenses requested should be approved in their entirety.

 The Receiver has on hand sufficient funds to pay all of the requested fees and costs that have been incurred through June 30, 2021.  As set forth in the Financial Summary, the estate has $8,669,600.58 on hand through June 30, 2021, net of all fees and costs requested herein, not including an anticipated recovery in excess of $3.2 million from the sale of the 1201 Lloyds Road Property in September.

## V.    **CONCLUSION**

The Receiver respectfully requests that the Court grant this motion in its entirety, approve all of the fees and costs incurred by the Receiver and his professionals as set forth herein,

authorize the payment of 80% of said fees and 100% of said costs, and enter the proposed order submitted concurrently herewith.

DATED:  August 25, 2021

Gary Owen Caris, Calif. Bar No. 088918
BARNES & THORNBURG LLP
2029 Century Park East, Suite 300
Los Angeles, CA  90067
Telephone: (310) 248-3880
Facsimile:  (310) 248-3894
Email: gcaris@btlaw.com

Attorneys for Brick Kane of Robb Evans & Associates LLC, Receiver

20779518v1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of August, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to parties or counsel registered through ECF.  In addition, I hereby certify that I have mailed or served the foregoing document or paper to the following non-CM/ECF participants in the manner indicated by the non-participant's name:

> Aaron Stewart
> 23800 North 73rd Place
> Scottsdale, AZ 85255

*/s/ Stephanie L. Moore*