**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore**

Civil Action No. 19-cv-02594-RM-SKC

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MEDIATRIX CAPITAL INC., et al.,

    Defendants,

and

MEDIATRIX CAPITAL FUND LTD., et al.,

    Relief Defendants.

---

## ORDER

---

Before the Court is the Verified Post-Remand Renewed Motion for Limited Relief from Asset Freeze and Request for Evidentiary Hearing by Defendant Michael S. Young and his wife, Relief Defendant Maria C. Young (ECF No. 400), seeking an Order releasing $510,000 to pay counsel and costs. The Motion has been briefed (ECF Nos. 412, 422) and is denied for the reasons below.

**I.  BACKGROUND**

This is a civil enforcement action in which Plaintiff alleges Defendants raised over $125 million through a fraudulent investment scheme. In September 2019, the Court issued an Order granting Plaintiff's Emergency Motion for an Ex Parte Asset Freeze, Temporary

Restraining Order, Order to Show Cause, and Other Emergency Relief.  (ECF No. 10.) Defendants subsequently consented to entry of an Order extending the asset freeze until final adjudication of this case on the merits, subject to Defendants' and Relief Defendants' right to move the Court for relief from the asset freeze and Plaintiff's right to oppose any such motion. (ECF No. 38.)  As of June 30, 2023, the Receiver in this case reported that the value of the assets in his control was about $24 million.  (ECF No. 434-1 at 4.)  This amount is less than one tenth of the $251 million in assets subject to the Court's Order, and significantly less than the $59 million Plaintiff attributes to trading losses and misappropriation.  (*See* ECF No. 1, ¶¶ 86, 93.)

In June 2022, the Court denied Defendants' first motion seeking the unfreezing of certain assets.  (ECF No. 133.)  Defendants' second round of motions seeking substantially similar relief was denied in January 2021.  (ECF No. 213.)  The Youngs and some Relief Defendants appealed the latter ruling to the United States Court of Appeals for the Tenth Circuit, where it was consolidated with two appeals by other Defendants.  (ECF Nos. 218, 224, 271.)  As pertinent here, the Tenth Circuit ruled that all the Youngs' arguments had been forfeited due to their failure to adequately preserve or develop them.  (ECF No. 400-1 at 10-12.)  The Tenth Circuit ultimately affirmed the Court's Orders denying relief from the asset freeze but remanded the matter for the Court to revisit whether to hold a hearing, as requested by some Defendants, not including Defendant Young.  (*Id.* at 15.)

The Youngs then filed their current Motion, once again seeking relief from the asset freeze, requesting a hearing to determine lawful disgorgement limitations, and seeking a ruling on five issues: (1) whether modification of the asset freeze to release funds to pay counsel

2

requires the Court to apply a multi-factor balancing test; (2) whether the Youngs have a Fifth Amendment right to retain counsel before the government deprives them of the funds necessary for a defense against that deprivation; (3) whether Plaintiff has congressional authority to seek prejudgment asset freezes; (4) whether, post-*Liu v. SEC*, 140 S. Ct. 1936 (2020), disgorgement can exceed investors' net losses; and (5) whether, in light of *Liu*, this Court must hold a hearing to determine how much disgorgement Plaintiff can reasonably hope to recover and then limit the asset freeze accordingly.  (ECF No. 400 at 2.)

## II.     LEGAL STANDARD

The primary purpose of freezing assets is to facilitate compensation of defrauded investors in the event Plaintiff establishes a violation of federal securities law.  *SEC v. End of the Rainbow Partners*, LLC, No. 17-cv-02670-MSK-NYW, 2019 WL 8348323, *4 (D. Colo. Nov. 25, 2019).  Parties seeking to carve out assets from an asset freeze must establish that (1) the funds they seek to release are untainted and (2) there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established at trial.  *Id.*  Investors on whose behalf the assets were frozen have a heightened interest in having those assets maintained where there is no likelihood that a surplus will exist if Plaintiff prevails.  *Id.*

## III.    ANALYSIS

Plaintiff first argues the Youngs' arguments are precluded by law of the case doctrine and that its Motion amounts to an improper request for reconsideration.  The Court agrees.

"Law of the case doctrine permits a court to decline the invitation to reconsider issues already resolved earlier in the life of a litigation."  *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1240 (10th Cir. 2016).  Thus, under Tenth Circuit precedent, "a legal decision

3

made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, generally becomes the law of the case." *Id.* at 1242 (quotation omitted).

Here, the Tenth Circuit ruled that the Youngs forfeited most, if not all, the arguments they attempt to raise in their Motion by failing to brief them adequately on appeal. The Youngs contend that the law of the case doctrine does not apply because "the Tenth Circuit did not actually decide the substantive issues" (ECF No. 422 at 2), but they do not deny they had the opportunity to present these issues on appeal. "The promotion of judicial economy—a primary concern underlying the law of the case doctrine—requires that litigants be encouraged to present all available claims and defenses at the earliest opportunity." *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1035 (10th Cir. 2000). The Youngs fail to explain why they could not have preserved and developed these arguments at an earlier stage of this litigation. *See Entek GRB*, 840 F.3d at 1241 (stating that law of the case doctrine bars "relitigation of issues either expressly or implicitly resolved in prior proceedings in the same court"). Thus, the Court finds the law of the case doctrine precludes further consideration of these issues.

The Youngs also contend that, in light of *Liu*, the factual and legal landscape has changed since they previously requested assets and that they "are entitled to a proper application of *Liu*." (ECF No. 422 at 3.) But even assuming *Liu* amounts to a change in the law warranting reconsideration of the Youngs' request, they have not adequately explained how the asset freeze in this case is at odds with that decision. They have not shown, for example, that the frozen assets exceed the amount necessary to award equitable relief in this case. *See United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489, 498 (4th Cir. 1999) ("That money damages are claimed along with equitable relief does not defeat the district court's equitable

4

powers."). Indeed, as Plaintiff points out, "*Liu* confirms this Court's authority to order disgorgement." (ECF No. 412 at 21 (citing *Liu*, 140 S. Ct. at 1943; 15 U.S.C. § 78u(d)(7)).)

Finally, the Court finds that fundamental aspects of this case have not changed. The preliminary injunction asset freeze was imposed after the Youngs and other Defendants and Relief Defendants waived their right to a preliminary injunction hearing and stipulated to the preliminary injunction. *Cf. Rahman*, 198 F.3d at 501 ("For strategic reasons, the defendants . . . elected not to proceed with a hearing but to leave the temporary restraining order in place indefinitely as a preliminary injunction."); *id.* at 501-02 ("[T]he defendants were not challenging . . . the absence of facts or factual findings by the district court because the defendants deliberately elected not to proceed with a preliminary injunction hearing.").

Moreover, the Youngs have had counsel throughout these proceedings, including during their three requests for assets and two appeals to the Tenth Circuit. As with the Youngs' previous requests for assets, there still is no dispute that the assets currently available will be insufficient to compensate the defrauded investors, and the Youngs have not shown that the assets requested are untainted by the alleged underlying fraud—regardless of whether Defendant Young personally participated in or was aware of it. The Youngs concede that Defendant Young's compensation was tied to the allegedly fraudulent investment scheme for which two other Defendants have now been indicted, and they do not deny that fraud occurred. Just as a robbery suspect has no right to use funds he has stolen to pay his attorney, "[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." *Caplin & Drysdale, Chartered, v. United States*, 491 U.S. 617, 626 (1989). Again,

5

because protecting the victims of fraud is the primary purpose of the asset freeze, the Court discerns no basis for granting the relief the Youngs seek. The Court further finds that on the current record, a hearing on these matters would not serve the interests of judicial economy.

## IV. CONCLUSION

Therefore, the Court DENIES the Motion (ECF No. 400) in its entirety.

DATED this 24th day of October, 2023.

BY THE COURT:

RAYMOND P. MOORE
Senior United States District Judge