IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 19-cv-02594-RM-STV

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MEDIATRIX CAPITAL INC., et al.,

    Defendants,

and

MEDIATRIX CAPITAL FUND LTD., et al.,

    Relief Defendants.

## ORDER

This Order resolves three Motions that are pending in this civil enforcement action:

(1)    the Motion to Unfreeze Assets by Defendant Stewart (ECF No. 480);

(2)    the Motion to Enjoin by the Receivership Estate of Blue Isle Inc. and Blue Isle Markets Limited ("Blue Isle Estate") (ECF No. 512); and

(3)    the Motion to Confirm and Approve by the Blue Isle Estate (ECF No. 537).

The Motions have been fully briefed and are ripe for review. (ECF Nos. 484, 487, 525, 534, 558, 569.)

**I.    BACKGROUND**

Plaintiff United States Securities and Exchange Commission ("SEC") brings this action

alleging that the individual Defendants (including Defendant Stewart) and the entity Defendants (including Defendants Blue Isle Markets Inc. and Blue Isle Markets Ltd. (collectively "Blue Isle")) raised over $125 million through a fraudulent investment scheme.  (ECF No. 1, ¶ 1.)  In September 2019, the Court granted the SEC's request for a temporary restraining order, freezing more than $250 million in assets of the Defendants and Relief Defendants.  (ECF No. 10.)  Defendants subsequently consented to entry of the Asset Freeze Order, which extended the asset freeze until final adjudication of this case on the merits, subject to the Defendants' and Relief Defendants' right to move the Court for relief from the asset freeze and the SEC's right to oppose any such motion.  (ECF No. 38.)

In June 2020, the Court ordered Blue Isle's brokers, non-parties Equiti Capital UK Limited ("Equiti UK") and Equiti Armenia CJSC ("Equity AM") (collectively "Equiti"), to liquidate the open trading positions in Blue Isle's accounts.  (ECF No. 134.)  Although the SEC did not oppose Defendants' request for an order, Equiti appeared specially and opposed it.  (ECF Nos. 44, 48, 53.)

In September 2020, the Court appointed a Receiver to marshal and preserve all Receivership Property, including Blue Isle's assets.  (ECF No. 153.)  In addition to giving this Court exclusive jurisdiction over the Receivership Estate, the Receivership Order also provides that

- all persons receiving notice of the Order are enjoined from interfering with the Receiver in the performance of his duties (*id.* at ¶ 21);

- all civil proceedings involving the Receiver, Receivership Property, Defendants, or Relief Defendants are stayed (*id.* at ¶¶ 24-26); and

- the Receiver and his agents shall not be liable to anyone for their good faith compliance with their duties (*id.* at ¶ 37).

Equiti complied with the June 2020 Order to close the open trading positions and liquidate Blue Isle's accounts and then asserted that it had a contractual right to offset the negative balance in Equiti AM's account (about $3.5 million) with the funds from Equiti UK's account (about $13 million).  To resolve this dispute, the SEC and Equiti reached an agreement—which Defendants opposed—whereby about $11.2 million would be transferred to the Receiver and about $1.8 million would be released from the asset freeze to Equiti.  The Court modified the asset freeze to allow the transfer.  (ECF No. 331.)

In April 2024, the Court lifted the stay of litigation to allow a group of forty-seven individual and entity investors in the Defendants' trading scheme ("Blue Isle Plaintiffs") to pursue a derivative action on behalf of the Receivership Estate against Equiti ("Blue Isle Action").  (ECF No. 467.)  In that case, which is also proceeding in this Court, the Blue Isle Estate, derivatively through the Blue Isle Plaintiffs, is asserting claims against Equiti for fraudulent transfer under the Colorado Uniform Fraudulent Transfer Act ("CUFTA") and unjust enrichment.[1]

In May 2024, Defendants Stewart and Sewell were found guilty of fifteen counts of fraud and conspiracy.  Defendant Stewart has not yet been sentenced; Defendant Sewell was sentenced to a 276-month term of imprisonment.

In August 2024, another group of individuals and entities that invested in Blue Isle ("English Claimants") filed a direct action in England against Equiti UK, asserting claims for

---

[1] Although the Blue Isle Estate is authorized to act on behalf of the Receivership Estate and is a component of it, the Court uses separate labels to help distinguish between events in this case and events in the Blue Isle Action.

3

dishonest assistance and knowing receipt. (ECF No. 512-1, ¶ 1.) Though the English Claimants and the Blue Isle Plaintiffs mostly overlap, the groups are not identical. In the English Action, the English Claimants assert that Equiti UK is liable to them *personally* for their individual losses stemming from the Blue Isle's trading scheme. (*See* ECF No. 512 at 12.)

In November 2024, Equiti UK filed a counterclaim in the English Action, seeking to hold the English Claimants who are also Blue Isle Plaintiffs *personally* liable for inducing the Blue Isle Estate to breach the forum selection clause in Blue Isle's agreement with Equiti UK by commencing and pursuing the Blue Isle Action. (ECF No. 512-2, ¶¶ 6, 55.) In its counterclaim, Equiti UK seeks to recover the costs and fees it incurs in the Blue Isle Action—including nearly $1.5 million as of October 2024.

In February 2025, the Court granted the unopposed Motion by the Blue Isle Plaintiffs to authorize the Select Creditor Committee ("SCC")—comprised of four Blue Isle Plaintiffs and five other creditors of Blue Isle—to direct and control the Blue Isle Action on behalf of the Blue Isle Estate. (ECF No. 509.)

## II. MOTION TO UNFREEZE ASSETS

Defendants' previous attempts to unfreeze assets have been unsuccessful.[2] Defendant

---

[2] In June 2020, the Court denied Defendants' first motion seeking the unfreezing of certain assets. (ECF No. 133.) Defendants' second round of motions seeking similar relief was denied in January 2021. (ECF No. 213.) The latter ruling was appealed to the United States Court of Appeals for the Tenth Circuit, where it was consolidated with two other appeals. (ECF Nos. 218, 224, 271.) The Tenth Circuit ultimately affirmed the Court's Orders denying relief from the asset freeze but remanded the matter for the Court to revisit whether to hold a hearing, as requested by some Defendants. (ECF No. 400-1 at 15.) Subsequently, the Court denied another motion seeking relief from the asset freeze and requesting a hearing to determine lawful disgorgement limitations. (ECF Nos. 400, 438.) The Tenth Circuit dismissed the appeal of that Order for lack of jurisdiction. (ECF No. 491.)

4

Stewart's current Motion follows his criminal conviction on fourteen counts of wire fraud and one count of conspiracy arising out of the same conduct at issue in this case. Proceeding pro se, he seeks an order unfreezing all assets previously frozen by the SEC, relying primarily on the United States Supreme Court's recent decision in *SEC v. Jarksey*, 603 U.S. 109 (2024).[3]

The Motion lacks merit for several reasons. First, Defendant Stewart, along with the other Defendants, stipulated to extending the asset freeze until final adjudication of this case on the merits. (*See* ECF No 38 at 3.) Second, *Jarksey* makes no mention of preliminary relief in the form of an asset freeze. Defendant Stewart has not shown that this case is inconsistent with *Jarksey*, which expressly affirms the SEC's ability to bring enforcement actions seeking civil penalties in federal court. *See Jarksey*, 603 U.S. at 116-18. Third, Defendant Stewart's conviction only increases the likelihood that the SEC will prevail at trial on the merits, which bolsters the rationale supporting the preliminary injunction when it was entered. And fourth, as of June 30, 2025, the Receiver reported that the value of the assets in his control was about $26 million (ECF No. 561-1 at 5), which is a fraction of the $251 million in assets subject to the Receivership Order and significantly less than the $59 million the SEC attributes to trading losses and misappropriation (ECF No. 1, ¶¶ 86, 93).

Therefore, the Motion is denied.

## III.   MOTION TO ENJOIN

The Blue Isle Estate (through the SCC) seeks an order (1) enjoining Equiti UK from

---

[3] Because Defendant Stewart proceeds pro se, the Court reviews his papers liberally and holds them to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007).

asserting its counterclaim in the English Action and (2) entering an international anti-suit injunction against Equiti UK.  The Court declines to grant either form of relief.

First, the English Action does not involve Receivership Property.  As pertinent here, the anti-interference provision of the Receivership Order prohibits actions which interfere with the Receiver in the performance of his duties or with this Court's exclusive jurisdiction over Receivership Property.  (ECF No. 153, ¶ 21.)  But in the English Action, the English Claimants assert that Equiti UK is liable to them *personally* for their individual losses stemming from the Blue Isle's trading scheme.  Conversely, Equiti UK's counterclaim seeks to hold the English Claimants *personally* liable for inducing the Blue Isle Estate to violate the forum selection clause in its agreement with Equiti UK.  The English Claimants' personal assets are not Receivership Property, and there is no indication that any damages obtained by either party in the English Action would affect the Receivership Estate.

Second, the English Claimants and the Blue Isle Plaintiffs are not one and the same.  Unlike the Blue Isle Plaintiffs, the English Claimants never sought or obtained the Court's authorization to pursue the English Action, and they are not authorized to act on behalf of the Receivership Estate.  Having elected to sue Equiti UK as private individuals, some of the English Claimants now face potential liability in their individual capacities on Equiti's counterclaim for their conduct in connection with the Blue Isle Action.  The Court notes that Equiti did not need the English court's permission to file its counterclaim, and its contours have yet to be established.  But in any event, to the extent the Blue Isle Plaintiffs contend the counterclaim imposes undue obligations on them, it appears they have brought this on themselves by pursuing parallel litigation.  In any event, given that the counterclaim has yet to interfere with the

6

Receivership Estate, the Court is disinclined to inject itself into the English Action by enjoining Equiti UK's counterclaim at this stage.

For similar reasons, the Court declines to impose an international anti-suit injunction. "[I]nternational injunctions should only be used sparingly and with care and great restraint." *SEC v. Pension Fund of Am., L.C.*, 613 F. Supp. 2d 1341, 1344 (S.D. Fla. 2009) (quotations omitted). As a threshold matter, courts consider "(1) whether the parties are the same in both the foreign and domestic lawsuits, and (2) whether resolution of the case before the enjoining court is dispositive of the action to be enjoined." *Id.* If that threshold is met, courts consider additional factors—including international comity—to determine whether an injunction should issue. *See id.* at 1345.

Here again, the Court notes that the English Claimants and the Blue Isle Plaintiffs are not congruent groups. Moreover, the English Action was filed after the Blue Isle Action was already underway, suggesting that the proceedings in the latter might not be dispositive of the former. Thus, the threshold requirements for an anti-suit injunction are lacking. But even if they were met, considerations of international comity counsel strongly against this Court interjecting itself into foreign fora under the circumstances, as already explained above.

Accordingly, the Court denies the Motion to Enjoin in its entirety.

### IV. MOTION TO CONFIRM AND APPROVE

The Blue Isle Estate (through the SCC) also seeks an order confirming and approving the Receiver's rejection of the General Terms Agreements between Blue Isle and Equiti, specifically the forum selection and indemnity provisions of the Agreements. (ECF Nos. 537, 537-1, 537-2.) The Blue Isle Estate's Motion is unopposed by the parties but opposed by Equiti.

The Blue Isle Estate's primary argument is that the Agreements were rejected as a matter of course because neither the current Receiver nor the initial Receiver (appointed five years ago) ever expressly adopted or affirmed them on behalf of the Receivership Estate.  "The mere inaction of receivers . . . is never of itself an adoption . . . .  In order to be bound, they must positively indicate their intention to take it over."  *Janvey v. Alguire*, 2014 WL 12654910, at *10 (N.D. Tex. July 30, 2014) (unpublished) (quotation and citation omitted); *see also Pac. W. Oil Co. v. McDuffie*, 69 F.2d 208, 213 (9th Cir. 1934) ("It is not the rule that the contract is binding on the receiver until renounced.  In order for a receiver to become bound by a contract, he must positively indicate his intention to adopt it; the receiver is not bound until he has affirmed it and assumed its burdens under the direction of the court.").  Notably in this case, the Court's Order lifting the stay and authorizing the filing of the Blue Isle Action—issued more than three years after the Receiver was appointed—contains no mention of the Agreements.  *See Janvey*, 2014 WL 12654910, at *10 (noting "the significant amount of time that has passed without any sort of affirmative action by the Receiver in attempting to adopt the . . . agreements (or even the underlying contracts) also indicates rejection").  By not opposing the Blue Isle Plaintiffs' motion to bring the ancillary action *or the current Motion*, the Receiver has indicated further that it has declined to adopt the Agreements.  Equiti has not shown these determinations were not made with sound business judgment.  *See Moran v. City of Central Falls*, 475 B.R. 323, 332-33 (D. R.I. 2012) (affirming the receiver's rejection of an executory contract under the business-judgment standard).

In response, Equiti contends the Receiver acted as though the Agreements were in effect when it negotiated Equiti's return of most of the funds from Blue Isle's trading accounts in

8

exchange for relinquishing $1.8 million.  (ECF No. 558 at 17.)  But the Court is not persuaded that the Receiver's acknowledgement of Equiti's contractual claim for purposes of resolving the dispute about those funds amounts to its adoption of the Agreements.

Drawing on analogous bankruptcy law and the broad powers of federal equity receivers, the Blue Isle Estate also contends that "Receivers may reject contracts of a receivership defendant that either: (1) are executory, or (2) would burden and deplete the receivership estate." (ECF No. 537 at 10 (citing *Janvey*, 2014 WL 12654910, at *8-10).)  Although the Receiver previously determined that it would not pursue litigation against Equiti (ECF No. 423-1 at 7), the Blue Isle Estate, with the authorization of this Court, is pursuing claims for fraudulent transfer and unjust enrichment on its behalf in the Blue Isle Action.

Setting aside the issue of whether the Agreements are executory, the Court finds that adopting the Agreements would risk multiplying the proceedings involving the assets of the Receivership Estate and increasing its costs by requiring it to pursue claims in multiple fora. Even if some of those costs are advanced by counsel, they would ultimately burden and deplete the Receivership Estate.

Finally, Equiti also contends the Motion should be denied because the Blue Isle Estate failed to confer before filing it.  (ECF NO. 558 at 6-7.)  However, Equiti is not a party to this case, so conferral was not required in this Court.  More importantly, Equiti had notice of the Motion and availed itself of the opportunity to respond to it.  On the current record, there is no indication that conferral would have refined or narrowed the issues in the Motion.  Thus, the Court declines to reject the Motion on this basis.

Therefore, the Court finds that, for purposes of this proceeding and the Blue Isle Action,

9

the Receiver has rejected the Agreements, and no further performance is due from any party to the Agreements.

## V.  CONCLUSION

Based on the foregoing, the Court ORDERS that

(1)  the Motion to Unfreeze Assets (ECF No. 480) is DENIED;

(2)  the Motion to Enjoin (ECF No. 512) is DENIED; and

(3)  the Motion to Confirm (ECF No. 537) is GRANTED, as set forth in this Order.

DATED this 29th day of September, 2025.

BY THE COURT:

RAYMOND P. MOORE
Senior United States District Judge